# EXHIBIT B
# Part 2 of 2

COUNTY
SHERIFF'S DEPARTMENT
REGIONAL FORENSIC SCIENCE LABORATORY

**REPORT ON THE EXAMINATION
OF CONTROLLED SUBSTANCES**

(LAST NAME FIRST)

1 Sanders, Gregory

2 _____

3 _____

4 _____

5 _____

6 _____

7 _____

BUY-COUNT NO._____

LAB NO. 16022 (FOR LAB USE ONLY)

AGENCY SFSD/Homicide (SUBMITTING)

CASE NO. 88007009-09

OFFENSE PC 187

DATE OF OFFENSE 2-1-88

TIME OF OFFENSE 1:56

OFFICER _____

LOCATION_____

| CHAIN OF CUSTODY | | DELIVERED TO THE LABORATORY |
|---|---|---|
| RECEIVED FROM_____ | RECEIVED FROM_____ | _____ date & time |
| BY_____ | BY_____ | by: _____ (SIGN AT TIME OF DELIVERY) |
| DATE_____ TIME_____ | DATE_____ TIME_____ | |

| ITEM NO. | DETAILED DESCRIPTION OF EACH ITEM OF EVIDENCE |
|---|---|
| A | Coin envelope containing small square black plastic box containing suspected marijuana, and a small plastic baggie, knotted, containing suspected marijuana |
| | |
| | |
| | |
| | |

**FOR LABORATORY USE ONLY**
DATE AND TIME LOGGED 2-8-88  1:12

ANALYSIS:

Item A:  The black box contains marijuana (0.31 gram).

~~DISITION OF EVIDENCE: ALL EVIDENCE WILL BE DESTROYED ONE YEAR FROM THE DATE OF RECEIPT, UNLESS THE LABORATORY IS OTHERWISE NOTIFIED.~~

REQUESTOR
DISTRICT ATTORNEY   Mor
LABORATORY

DATE ANALYSIS COMPLETED 2-9-88

SIGNATURE OF ANALYST _____

88

SHERIFF'S DEPARTMENT

County of San Bernardino

California

CA 03600

DR 88007009-09
H 30-88
REPORT AREA

| CODE SECTION | CRIME | CLASSIFICATION |
|---|---|---|
| PC 187/664 187 | MURDER/ATTEMPT MURDER | GUNSHOT |

| VICTIM'S NAME — LAST NAME | FIRST NAME | MIDDLE NAME | (FIRM NAME IF BUSINESS) |
|---|---|---|---|
| STEINBRING/SANDERS | | | |

| ADDRESS | RESIDENCE | BUSINESS | PHONE ( ) |
|---|---|---|---|

### VICTIM #1:

STEINBRING, LARRY J.
WMA, 39 years, DOB: 2-28-48

### VICTIM #2:

SANDERS, SHAWNEE LEA
WFA, 28 years, DOB: 9-7-59

### SUSPECT:

SANDERS, GREGORY L.
WMA, 36 years, DOB: 11-3-51

### INTERVIEW OF VICTIM:

SHAWNEE LEA SANDERS
WFA, 28 years, DOB: 9-7-59
1919 Yucca Mesa
Landers, CA 92284

This interview was conducted at the High Desert Medical Center, 6601
White Feather Road, Joshua Tree, CA 92252, on 2-4-88, at approximately
1515 hours and terminated at approximately 1800 hours, same date.
This information was tape recorded and this is a synopsis of that
taped interview.

SHAWNEE said she was in her bed, lying on her back watching cartoons.
She stated she had her robe on and GREG, her husband, walked in the
bedroom; LARRY had been sitting on the left side of the bed, she was
on the right side of the bed. LARRY had one leg on the bed and the
other leg was draped over the side of the bed, his back was up against
the headboard. SHAWNEE said that GREG, her husband, walked in the
bedroom through the bathroom way. He then pulled a gun from his
waistband and pointed the piece at her boyfriend, STYMIE, of eight
months (LARRY STEINBRING). She said at the time she jumped up and
went towards GREG, who was holding the gun. Thinking that this was
some sort of bluff, she grabbed at the gun and then heard the gun go

| REPORTING OFFICERS | DATE | REVIEWED BY | TYPED BY | ROUTED BY | DATE |
|---|---|---|---|---|---|
| H.D. AUSTIN, Det. A1021 | 2-8-88 | NOer | CF F1191 | | |

| FURTHER ACTION: | COPIES TO: | | REMARKS |
|---|---|---|---|
| ☐ YES  ☐ NO | ☐ Detective  ☐ SD/PD  ☐ Other | ☐ CII  ☐ Other | |
| | ☐ Dist. Atty.  ☐ Patrol | | |

15 15184-401 Rev 1/83

89

SH  FF'S DEPARTMENT

County of San Bernardino

California

CA 03600

| | |
|---|---|
| DR 88007009-09 | |
| H 30-88 | |
| REPORT AREA | |

| ODE SECTION | CRIME | CLASSIFICATION |
|---|---|---|
| PC 187/664 187 | MURDER/ATTEMPT MURDER | GUNSHOT |

| ICTIM'S NAME — LAST NAME | FIRST NAME | ''IDDLE NAME    (FIRM NAME IF BUSINESS) |
|---|---|---|
| STEINBRING/SANDERS | | |

| /DRESS | RESIDENCE | BUSINESS | PHONE ( ) |
|---|---|---|---|

Page 2
INTERVIEW:                    (SANDERS, SHAWNEE)          (Continued)

off and she felt pain in her stomach. She said at this time, she did not know where LARRY was at, but she heard him pleading with GREG, saying "No GREG no. GREG don't." She said as he shot her the first time, she let go of the gun and he then shot her again. During this time, she tried to make her way out of the room and GREG seemed to be following her. She said that GREG kept screaming, "You're dying, you're dying as he was firing off the gun at STYMIE."

I asked her what the gun looked like that GREG had pointed at her, and she told me that it was brown and it was a six-piece. At this time, I was not sure what type of gun this was and I asked her to look at my revolver. At this time, she said she was not sure if this was the same type of gun or not.

SHAWNEE told me that GREG was supposed to have gone to the Welfare Department that morning. When she awakened that morning, she was in bed and LARRY was already dressed and had brought in a cup of coffee for her. She said that she noticed GREG's car pull up in the front yard having seen a reflection of his car through her window. She said she then made the comment to LARRY that he must have gotten an appointment rather quickly. She told me that she later found out through ALEX that they never went to the Welfare Department but had gone to McDonald's and had breakfast.

I again asked her what had happened to LARRY during this incident and she told me that all she knew is that she tried to grab the gun away from GREG, and as she did this she got hit in the stomach. She then said that GREG was following her out of the room. She stated that as she was leaving the room, GREG was yelling at LARRY to shut up and she kept hearing the gun go off. She estimated that GREG was about three feet away when she got hit in the stomach. She said that she kind of got kicked back from the shot and landed in the middle of the bed. She said she got up and went out of the room screaming for her mom, telling her to get the kid out of the house. She said that she didn't know where ALEX was and she didn't want GREG going berserk and killing his own son.

| R RTING OFFICERS | DATE | REVIEWED BY | TYPED BY | ROUTED BY | DATE |
|---|---|---|---|---|---|
| .. D. AUSTIN, Det. A1021 | 2-8-88 | 7\ /O<i>l</i> | CF F1191 | | |

| FURTHER ACTION: | COPIES TO: | | REMARKS |
|---|---|---|---|
| ☐ YES  ☐ NO | ☐ Detective  ☐ Dist. Atty. | ☐ SD/PD  ☐ CII  ☐ Patrol | ☐ Other  ☐ Other |

*90*

15-15184-401 Rev. 1/83

SI  .IFF'S DEPARTMENT

County of San Bernardino

California

CA 03600

| | |
|---|---|
| DR 88007009-09 | |
| H 30-88 | |
| REPORT AREA | |

| CODE SECTION | CRIME | CLASSIFICATION |
|---|---|---|
| PC 187/664 187 | MURDER/ATTEMPT MURDER | GUNSHOT |

| VICTIM'S NAME — LAST NAME | FIRST NAME | MIDDLE NAME | (FIRM NAME IF BUSINESS) |
|---|---|---|---|
| STEINBRING/SANDERS | | | |

ADDRESS ☐ RESIDENCE ☐ BUSINESS   PHONE ( )

Page 3
INTERVIEW:                          (SANDERS, SHAWNEE)          (Continued)

She said the next thing she knew, she collapsed on the floor in the
next room and her mom had someone cover her up. She thought at the
time that it might have been BELVEDERE.

SHAWNEE told me that she married GREG in September, 1986, and left him
in May of 1987. I asked her why they became separated, and she told
me that there were a lot of reasons, no communication, and she would
always catch him lying.

She was asked if she ever purchased him any gifts while they were
married. She said yes, that she purchased him a saw, a jigsaw, and a
battery charger, and other things like that. I asked her if she had
ever purchased him any type of plastic tub animals, and she told me
she cannot remember ever giving him anything like that. I asked her
specifically if she had ever given him a rubber duck, and she told me
no. I told her that GREG had explained that he spent a lot of time in
the bathtub and he said that you (SHAWNEE) had purchased him a duck so
it would remind him not to spend so much time in the tub. She said
that he did use to spend a lot of time to calm himself down, but she
never purchased him that duck. She said it may have been one of his
other wives, KATHY or SYLVIA, who may have bought him something like
that.

She said that KATHY CLEMINS, GREG's ex-wife, was crazy and at one time
tried to shoot ALEX in a hostage situation. GREG told her that she
ended up in jail at the time that they were splitting up.

I asked SHAWNEE why GREG came out to stay at her place, and she told
me that he had a fight with his mother, GRACE, back in Tennessee and
she also heard that authorities were after him for child abuse. She
also told me that approximately three months ago, in October, she
started getting letters from GREG. In these letters, he indicated
that he wanted to get back together with her. She said that she sent
him a cassette tape and told him her feelings, telling him that he
never did listen to her and that there was no communication. She said
the next thing she knew, she got a telephone call from him and he told

| REPORTING OFFICERS | DATE | REVIEWED BY | TYPED BY | ROUTED BY | DATE |
|---|---|---|---|---|---|
| H.D. AUSTIN, Det. A1021 | 2-8-88 | ᑎ0ᑲ | CF F1191 | | |

FURTHER ACTION:    COPIES TO:    ☐ SD/PD    ☐ Other    REMARKS

☐ YES  ☐ NO    ☐ Detective    ☐ CII    ☐ Other         91

☐ Dist. Atty.    ☐ Patrol

SHERIFF'S DEPARTMENT

County of San Bernardino
California

CA 03600

| DR 88007009-09 |
| --- |
| H 30-88 |
| REPORT AREA |

| CODE SECTION | CRIME | CLASSIFICATION |
| --- | --- | --- |
| PC 187/664 187 | MURDER/ATTEMPT MURDER | GUNSHOT |

| VICTIM'S NAME — LAST NAME | FIRST NAME | MIDDLE NAME | (FIRM NAME IF BUSINESS) |
| --- | --- | --- | --- |
| STEINBRING/SANDERS | | | |

| ADDRESS | RESIDENCE | BUSINESS | PHONE |
| --- | --- | --- | --- |
| | | | ( ) |

Page 4
INTERVIEW:                          (SANDERS, SHAWNEE)            (Continued)

her that he was looking for her property which had been stolen in a
burglary. He also told her he located some items in Phoenix, and he
is probably going to have to hurt somebody over it.

She told me that in September, 1986, her house had been burglarized
and at that time she suspected everyone she knew of having committed
the burglary. She said after a while, she suspected GREG because
approximately three months later, she found out someone had gotten
into her bank account. When she had asked GREG to go to the bank to
straighten things out and give them his signature, he wouldn't do it
and he copped out to having broken into the account and removing the
money himself.

SHAWNEE said that she also found out that GREG had two storage rooms
where he was keeping property and she could not understand why he had
these two rooms, and he would only let her go into one of the rooms.
She also advised that during the police investigation, the officers
found no forced entry on her house and GREG had been telling her,
swearing up and down, that someone had forced their way into the
house. She said that the burglary had occurred while she was in
custody for disorderly conduct. This had occurred over her birthday.

SHAWNEE told me that she found out that GREG was coming out to her
residence a week ago Sunday when she received a phone call from her
sister, GINA GLOVER, who also lives in Page, Arizona. She told her
that GREG had located some of her property from the burglary, and he
made statements that he might be getting into some additional trouble
and might have to fight somebody in Phoenix. GINA told her that if
this happened, she would take care of ALEX for him and if GREG didn't
show up by Thursday, she could come out to her house in Phoenix and
pick up ALEX. She was also told by GINA that GREG had located some of
her jewelry, pictures and dishes.

She said that GREG then called her and stated he was in Indio this
last week and that he had some of her property and he was going to
bring it back to her. At that time, she told GREG that he could only

| REPORTING OFFICERS | DATE | REVIEWED BY | TYPED BY | ROUTED BY | DATE |
| --- | --- | --- | --- | --- | --- |
| E.D. AUSTIN, Det. A1021 | 2-8-88 | [signature] | CF F1191 | | |

| FURTHER ACTION: | COPIES TO: | | | REMARKS |
| --- | --- | --- | --- | --- |
| ☐ YES  ☐ NO | ☐ Detective | ☐ SD/PD | ☐ Other | |
| | ☐ Dist. Atty. | ☐ CII | ☐ Other | |
| | | ☐ Patrol | | |

92

SHERIFF'S DEPARTMENT

County of San Bernardino
California

CA 03600

| | | DR 88007009-09 |
|---|---|---|
| | | H 30-88 |
| | | REPORT AREA |

| CODE SECTION | CRIME | CLASSIFICATION | |
|---|---|---|---|
| PC 187/664 187 | MURDER/ATTEMPT MURDER | GUNSHOT | |

| VICTIM'S NAME — LAST NAME | FIRST NAME | MIDDLE NAME | (FIRM NAME — BUSINESS) |
|---|---|---|---|
| STEINBRING/SANDERS | | | |

| ADDRESS | RESIDENCE | BUSINESS | PHONE ( ) |
|---|---|---|---|

Page 5
INTERVIEW:                              (SANDERS, SHAWNEE)          (Continued)

stay for a few days telling him that she had a boyfriend and that she
didn't want to go back with him.  GREG told her that he just wanted to
come out, return her property, and give ALEX to her so she could have
custody of him.  GREG had also mentioned that he had been having
problems with his mother and dad while living with them in Tennessee
and eventually "weirded out" and he did, too.  She mentioned that
GREG's mother, at one time in January or February, 1987, had pointed a
gun at her and pulled the trigger over a family argument.  She said
that she was lucky that there was no bullet in the chamber at the time
that the trigger had been pulled.

SHAWNEE told me that GREG brought a lot of her property back to her
and that he arrived in the evening of Wednesday or Thursday of last
week.  She anticipated that GREG would be coming out and asked LARRY
to leave the first night that GREG was in town so there wouldn't be
any hassles between the two men.  She said that LARRY didn't want any
problems and left.

The first night that GREG was at the residence, they unloaded some of
the property out of the trailer which GREG had hauled to her property.
She said that the following people helped unload things out of this
trailer:  herself, BELVEDERE, GREG and ALEX.  That night, GREG sleep
in the living room on the couch and ALEX slept with her in her
bedroom.

The next morning, they continued to unload things out of the trailer
and while doing this they had a conversation.  At this time, GREG
asked her if she loved LARRY or if she loved him.  She told him that
she loved LARRY.  She told him that he had treated her cold and hard
and that she didn't need to go through that again.  SHAWNEE said that
he appeared to be fine and told her that he was going to pack up his
scooter and leave.  She then told him "Fine, just go ahead and leave
and don't face your problems."  She then told him, "I'll make a deal
with you.  Let's go talk about this some more somewhere else."  He
suggested that they go to supper and later that evening, they went to
an Italian restaurant at the Pick.  She said that they ate and then
they made an agreement between the two of them.  The agreement was

| REPORTING OFFICERS | DATE | REVIEWED BY | TYPED BY | ROUTED BY | DATE |
|---|---|---|---|---|---|
| L.D. AUSTIN, Det. A1021 | 2-8-88 | 7JGU | CF F1191 | | |

| FURTHER ACTION: | COPIES TO: | | | REMARKS |
|---|---|---|---|---|
| ☐ YES  ☐ NO | ☐ SD/PD  ☐ Detective  ☐ Dist. Atty. | ☐ CII  ☐ Patrol | ☐ Other  ☐ Other | 93 |

15 15184-401 Rev. 1/83

ERIFF'S DEPARTMENT

County of San Bernardino
California

CA 03600

DR 88007009-09
H 30-88
REPORT AREA

| CODE SECTION | CRIME | CLASSIFICATION |
|---|---|---|
| PC 187/664 187 | MURDER/ATTEMPT MURDER | GUNSHOT |

| VICTIM'S NAME — LAST NAME | FIRST NAME | MIDDLE NAME | (FIRM NAME IF BUSINESS) |
|---|---|---|---|
| STEINBRING/SANDERS | | | |

| ADDRESS | RESIDENCE | BUSINESS | PHONE ( ) |
|---|---|---|---|

Page 6
INTERVIEW:                        (SANDERS, SHAWNEE)        (Continued)

that he treat her like a friend, telling him that she did not want a
husband nor did she want to be a wife. She said that everything
seemed okay and they went back to the trailer that night. Again, GREG
slept out on the couch in the living room and she slept in her room.
The next day, she said that GREG stayed and did chores around the
house and later on that night, LARRY returned.

SHAWNEE told me that GREG and LARRY had a talk that night and that she
did not hear what they had discussed. GREG had told her to stay in
the house during this conversation and to mind her own business. GREG
had stated that they wanted to have a man to man talk. After the
conversation, they came back in. She said that LARRY then spent the
night with her and prior to going to sleep, he told her that GREG was
going to fight after you tooth and nail. LARRY had asked her if he
should let her go back to GREG so she could have the kid (ALEX). She
said that she told LARRY no, that she was going to try and work on
GREG having him stay around in the area and find work so that she
could keep the child. She told him that even if he moved several
miles away, she could still go and see ALEX. She said the next two
days appeared to be uneventful and that neither one appeared to be
irritated at one another and that she and LARRY spent the next three
nights at the residence, with her sleeping in the same room with
LARRY.

I asked SHAWNEE if GREG ever had any spells where he would act in a
violent manner and forget the things he had done. She advised me that
he had some kind of condition which she referred to as "Isyglemia"
(hypoglycemia), the opposite of sugar diabetes. She would say that he
would get real mad and do something stupid, then fall on his knees and
pass out. She told me that during the three-year relationship that
this had happened approximately four times while they were married. I
asked her if there was a possibility that he was going through a
seizure when he came in and shot them and she said no. She said that
he pulled out his gun as smooth as glass and said, "Life's a bitch and
now you die."

| RTING OFFICERS | DATE | REVIEWED BY | TYPED BY | ROUTED BY | DATE |
|---|---|---|---|---|---|
| H.D. AUSTIN, Det. A1021 | 2-8-88 | HOC | CF F1191 | | |

| FURTHER ACTION: | COPIES TO: | | | REMARKS |
|---|---|---|---|---|
| ☐ YES  ☐ NO | ☐ Detective | ☐ SD/PD  ☐ Other | | |
| | ☐ Dist. Atty. | ☐ CII  ☐ Other | | 94 |
| | | ☐ Patrol | | |

SH. IFF'S DEPARTMENT

County of San Bernardino

California

CA 03600

DR 88007009-09
H 30-88

REPORT AREA

| DE SECTION PC 187/664 187 | CRIME MURDER/ATTEMPT MURDER | CLASSIFICATION GUNSHOT |
|---|---|---|

| TII NAME — LAST NAME STEINBRING/SANDERS | FIRST NAME | MIDDLE NAME | (FIRM NAME IF BUS SS) |
|---|---|---|---|

DRESS | RESIDENCE | BUSINESS | PHONE ( )

Page 7
INTERVIEW:      (SANDERS, SHAWNEE)    (Continued)

    I asked SHAWNEE if GREG had ever been hospitalized or treated for his condition, and she said that on one occasion he had gone through a seizure in Arizona and that LARRY had taken him to the hospital, but once he was revived or came out of it he wouldn't stay and be treated. She advised me that she knew of no one that had seen him or was treating him for his condition.

    During my conversation with SHAWNEE, I asked her if she ever had any physical confrontations with GREG, and she told me that on two occasions GREG had mistreated her. She said that on one occasion, she told me that she had been drinking with some friends at a bar and GREG became upset with her because she would not go home. She said that he beat her about the face with his fists on this occasion. I asked her if she sustained any serious injuries and she said no, just bruises.

    She told me that on another occasion, he became mad at her and drove her out in the desert in Page, Arizona, and dropped her off in the desert with her dog and ALEX's dog. She said that she then walked several hours out in the desert until someone picked her up. She indicated to me that they fought on a continual basis throughout their marriage.

    This interview was terminated approximately 1800 hours. At the conclusion of this interview, SHAWNEE SANDERS was asked to sign an authorization to release medical information on forms provided by the High Desert Medical Center. At this time, she agreed to have the information released and she also agreed to having photographs taken of her injuries.

PHOTOS:

    Five Polaroid photographs were taken of victim, SHAWNEE SANDERS, by the nursing supervisor, ANGIE PENNINGTON. Nursing Supervisor PENNINGTON also provided me with the medical records from the High Desert Medical Center.

| EF ING OFFICERS H.D. AUSTIN, Det. A1021 | DATE 2-8-88 | REVIEWED BY | TYPED BY CF F1191 | ROUTED BY | DATE |
|---|---|---|---|---|---|

URTHER ACTION:
YES   NO

COPIES TO:
Detective
Dist. Atty.

SD/PD
CII
Patrol

Other
Other

REMARKS

95

DR 88007009-09
H 30-88

SH.   FF'S DEPARTMENT
County of San Bernardino
California
CA 03600

REPORT AREA

SUPPLEMENTAL

| E SECTION | CRIME | | CLASSIFICATION | |
|---|---|---|---|---|
| PC 187 | MURDER | | GUNSHOT | |

| TIM'S NAME — LAST NAME | FIRST NAME | MIDDLE NAME | (FIRM NAME IF BUSI.   S) |
|---|---|---|---|
| STEINBRING, LARRY J.   (Deceased) | | V#2 - SANDERS, SHAWNEE LEA | |

RESIDENCE ☐    BUSINESS ☐

PHONE ( )

## INFORMATION REFERENCE THE TAURUS .38:

A Peoria, Arizona crime incident report was located among the
suspect's possessions, their case number 87-10353. This report
was taken on 10/1/87, and lists GREGORY LYNN SANDERS as a suspect
in an aggravated assault. The suspect's name was blacked out and
the address and other information reference the suspect was
blacked out as well. The report indicated that some evidence
was impounded. Item #1 was listed as a Taurus .38 Special with a
4" barrel, blue finish and black rubber grips, serial number
1008532.

## CONTACT WITH DETECTIVE ERIC STALL VIA TELEPHONE NUMBER 1-602-979-4222:

Detective STALL advised me that the weapon had been released to
our suspect, GREGORY SANDERS, on 1/24/88, by their property
officer, BRIAN ROHRMAN. Detective STALL told me that BRIAN and
the suspect had a conversation during the release of this weapon
and the suspect had indicated that he was in a hurry, that he had
just come from Tennessee, and wanted to pick up the weapons
because he was en route to California. I asked Detective STALL
to have their property officer, BRIAN ROHRMAN write a
supplemental report reference our investigation and send it to
our station. Detective STALL advised me that he would have this
done.

Detective STALL also advised me that the suspect in this
particular case was a KATHERINE ARLEEN CLEMONT, DOB: 11/13/60, a
WFA, 5'5", 130, shoulder length brown hair, hazel eyes, Social
Security number 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. The address listed on the report
was 8954 West Monroe, #16, Page, Arizona, telephone number
602-878-6342.

## ADDITIONAL INFORMATION:

At this time I requested that Detective STALL send me any reports
listing all participants in our particular homicide to our
office.

| TING OFFICERS | | DATE | REVIEWED BY | TYPED BY | ROUTED BY | DATE |
|---|---|---|---|---|---|---|
| H. D. AUSTIN | A-1021 | 2/8/88 | 7-10 c | LM M-0444 | | |

FURTHER ACTION:     COPIES TO:

☐ YES  ☐ NO

☐ Detective
☐ Dist. Atty.

☐ SD/PD
☐ CII
☐ Patrol

☐ Other
☐ Other

REMARKS

96

SH. FF'S DEPARTMENT

County of San Bernardino
California

CA 03600

DR 88007009-09
H 30-88

REPORT AREA

SUPPLEMENTAL

| DE SECTION PC 187 | CRIME MURDER | CLASSIFICATION GUNSHOT | |
|---|---|---|---|
| | FIRST NAME | MIDDLE NAME    (FI    NAME IF BUSINESS) | |
| TIM'S NAME — ⎿⌐⌐T NAME #1  STEINBR⌐⌐G, LARRY J. (Deceased) | V#2 - SANDERS, SHAWNEE L⎿ | | |
| RESS | ☐ RESIDENCE    ☐ BUSINESS | PHONE (   ) | |

Page two

CONTACT WITH THE SHERIFF'S DEPARTMENT IN PAGE, ARIZONA:

At approximately 1510 hours, on 2/5/88, I contacted Sergeant BOB
STILL of the Sheriff's Department in Page, Arizona, via telephone
number 602-645-2463. At this time Sergeant STILL advised me that
he was familiar with GREGORY SANDERS and had been present during
several incidents that he was involved in. He said on one
occasion he was involved in an incident where he threatened to
commit suicide by using a shotgun. He advised me that there may
be several incidents in their files reference this subject and
advised me that he would forward me any police reports that this
subject had been mentioned in.

ATTEMPT TO TRACE THE WEAPON WHICH WAS USED:

Contact with DON HOODENPYLE:  TELEPHONE NUMBER: 801-675-3798

INTERVIEW OF DON HOODENPYLE

DOB: 4/25/51
Address: Box 153, Big Water, Utah
Business: Loaders Repair

Mr. HOODENPYLE told me that he was familiar with GREG SANDERS and
that he had lived with him and his father for a while, while he
was working on the Salt River Project at the Navajo Generating
Center in Page, Arizona. He advised me that he had sold GREGORY
SANDERS a high standard, .357 magnum. I asked him if he had ever
sold him a Taurus and he told me no, but he had worked on a
Taurus belonging to GREG SANDERS and had this annotated in his
firearms entry log on 12/17/86, when he had made some repairs on
a Taurus revolver, .38 special, bearing serial number 1008532.

| RTING OFFICERS  H. D. AUSTIN  A-1021 | DATE 2/8/88 | REVIEWED BY ⁊ʰᵘᵘ | TYPED BY LM M-0444 | ROUTED BY | DATE |
|---|---|---|---|---|---|
| FURTHER ACTION: ☐ YES  ☐ NO | COPIES TO: ☐ Detective ☐ Dist. Atty. | ☐ SD/PD ☐ CII ☐ Patrol | ☐ Other ☐ Other | REMARKS | |

⌐⌐ 15184-401 Rev. 1/83

PERSONAL DATA SHEET

NAME:  Gregory Lynn Sanders

DATE OF BIRTH:  November 3, 1951

ADDRESS:  Rural Route 1, Box 420
          Bone Cave, TN  38581
          (615) 386-2089

PLACE OF BIRTH:  Lafayette, IN  47905

EDUCATION:  Graduate, Southwestern High School, 2100 West 800 South, Lafayette, IN  47905

MILITARY HISTORY:  U.S. Marine Corps, July 18, 1969--March 21, 1973, Vietnam Era Veteran, Honorable Discharge.  Military Police--Standard Police Duties--2 yrs.  Marine Corps Drill Instructor--Boot Camp Trainer/Instructor of Military Life and Procedures--1 1/2 yrs.  N.C.O.I.C., M.E.A.R.U., in charge of Amunitions Dump on Okinawa.  Recruited local personnel for training, scheduled supplies, and "Ammo" deliveries for shipment to Vietnam.  The rest of the duties are covered under the "Official Secrets Act" and not open for discussion.

WORK EXPERIENCE:  Salt River Project, P.O. Box 52025, Phoenix, AZ  85072-2025.

JOB DUTIES:  Employed April 10, 1976--Oct. 10, 1987.  August 10--October 10, 1987, Meter Reader, read electric meters for billing customers.  May, 1977--August 9, 1987, Train Operator, Black Mesa and Lake Powell Railroad.  The duties of the Train Operator were "Direct Supervision" of a five million dollar coal train, with "Limited Supervision" and final authority on movement.  Trained and instructed trainees and assistants.  April, 1976--April, 1977 Trades Helper, assisted all crafts with their respective trades.  I performed all the duties and work of the craft, using all tools associated with the craft.  Operated pickers to a ten-ton capacity, fork-lifts up to five-ton capacity, and trucks up to five-tons.

WORK EXPERIENCE:  Aluminum Company of America, P.O. Box 7500, Lafayette, IN  47905.

JOB DUTIES:  Employed April, 19873--May, 1975.  Small Drawbench Operator, drawn down to size per customer order; various sizes of aluminum tubing and pipe.  Used Micrometers, steel dies, and steel bulbs to achieve this.  Press Ingot Heater-Ordered, heated to proper temperature; according to composition and delivered to Extrusion presses according to length, weight, and size.  Upgraded to assistant press operator when occasions arose.

REFERENCES:  Mr. Peter Dix, P.O. Box 83, Page AZ  86040  Ph. (602) 645-9048.

            Mrs. Tammy Tichinel, P.O. Box 231, Page, AZ  86040
            Ph. (602) 645-2293

            Mrs. Gina Glover, P.O. Box (private), Page, AZ  86040  Ph. (602) 645-9374.

SHERIFF'S DEPARTMENT
County of San Bernardino
California
CA 03600

SCIENTIFIC INVESTIGATIONS BUREAU
IDENTIFICATION DIVISION

CASE #:88007009 09            CODE SECTION:PC 187

DATE:12/03.88               STATION:MORONGO BASIN

DATE OF OCCURRENCE:2/1/88   LOCATION:1919 YUCCA MESA, LANDERS

VICTIM(1):STEINPPING, LARRY

ADDITIONAL VICTIM(S):SANDERS, SHAWNEE

EVID: PHOTOS:X LATENTS: VIDEO:

VEHICLE MAKE: YEAR:   LICENSE:

SUSPECT(1):SANDERS, GREGORY LYNNE

ADDITIONAL SUSPECT(S):

CASE AGENT:TEESSELAAR/0264            DIV/STA:HOMICIDE

CSI/EMP#:RICE/NUNEZ               REV/DATE:

COPIES TO:  FILE ___  AGENCY___  RECORDS ___  LAB ___  CAL-ID ___

### FACE REPORT

SYNOPSIS:  On February 1, 1988 the Identification Division was
requested to aid in the investigation of a homicide that occurred at
1919 Yucca Mesa in Landers.

PHOTOGRAPHY

    Overall photographs of the residence and close-up photographs of
the evidence marked were taken by K. Nunez.
    Aerial photographs were taken of the residence and the area where
the suspect was apprehended were taken by K. A. Rice.
    4 x 5 photographs were taken of the footprints by N. Nunez and K.
A. Rice.

COLLECTION

    Two GSR kits were accepted from S. Mullens by N. Nunez at 1245
hrs.   AA Kit #003807 and SEM Kit #001930.  Both kits were turned over
to J. Johnson of the Crime Lab at 1640 hrs.

Case to date   2/3/88      K. A. Rice

100

RIFF'S DEPARTMENT

County of San Bernardino
California

CA 03600

DR 88007009-09

H 50-88

REPORT AREA

SUPPLEMENTAL

| CODE SECTION | | CRIME | | CLASSIFICATION | |
|---|---|---|---|---|---|
| PC 187 | | MURDER | | GUNSHOT | |
| VICTIM'S NAME — LAST NAM | | FIRST NAME | MIDDLE NAME | (FIRM NAME | BUSINESS) |

V#1 - STEINBRIN( LARRY J. (Deceased)    V#2 - SANDERS, SHAWNEE LEA

| ADDRESS | | RESIDENCE | BUSINESS | PHONE |
|---|---|---|---|---|
| 1919 YUCCA MESA, LANDERS, CA 92284 | | | | ( ) |

## ADVISAL/ASSIGNMENT:

On 2/1/88, at approximately 1045 hours, I was advised of a
homicide occurring in the Landers area of Morongo Basin, the
address being 1919 Yucca Mesa. Information was received that one
subject was deceased, a second subject was being transported to a
local hospital for treatment. TESSELAAR further advised that
Captain KNADLER of the Morongo Station was requesting Homicide to
roll to the location and take charge of the investigation.

## ARRIVAL AND ASSIGNMENTS:

On 2/1/88, at approximately 1230 hours, myself, along with
Detectives TESSELAAR, AUSTIN and DE LAPP arrived at the Yucca
Mesa residence and received a briefing from Captain KNADLER.
After receiving the information I assigned Detectives TESSELAAR
and DE LAPP to do the crime scene investigation and myself and
Detective AUSTIN would handle the interview with the suspect and
some of the witnesses. Detective AUSTIN and I then made contact
with a white male adult subject, who was identified as STEVEN LEE
JAMISON, DOB: 6/22/52, and conducted an interview with this
individual. (See supplemental by Detective AUSTIN)

## CONTACT AND INTERVIEW WITH SUSPECT    SANDERS, GREGORY LYNN

See separate CR-2 report.

| REPORTING OFFICERS | DATE | REVIEWED BY | TYPED BY | ROUTED BY | DATE |
|---|---|---|---|---|---|
| L. J. NASH, DET. N-0078 | 2/3/88 | | LM M-0444 | | |

| FURTHER ACTION: | COPIES TO: | | | REMARKS |
|---|---|---|---|---|
| ☐ YES  ☐ NO | ☐ Detective | ☐ SD/PD  ☐ Other | | |
| | ☐ Dist. Atty. | ☐ CII  ☐ Other | | 10/ |
| | | ☐ Patrol | | |

15-15184-401 Rev. 1/83

S\.'RIFF'S DEPARTMENT

County of San Bernardino

California

CA 03600

DR &8007009-09

H 30-88

REPORT AREA

SUPPLEMENTAL

| ODE SECTION | CRIME | CLASSIFICATION |
|---|---|---|
| PC 187 | MURDER | GUI'SHOT |

| ICTIM'S NAME   LAST NAME | FIRST NAME | MIDDLE NAME | (FIRM NAME IF BUSINESS) |
|---|---|---|---|
| V#1 - S.`\_INBRING, LARRY J. (Deceased) | | V#2 - SANDERS, SHAWNE LEA | |

| DDRESS | ☐ RESIDENCE | ☐ BUSINESS | PHONE ( ) |
|---|---|---|---|
| 1919 YUCCA MESA, LANDERS, CA 92284 | | | |

CONTACT AND INTERVIEW WITH SUSPECT

SANDERS, GREGORY LYNN
WMA-36, DOB: 11/3/51
5'6", 150, blonde/hazel

On Monday, 2/1/88, at approximately 1352 hours, myself and
Detective AUSTIN made contact with the subject identified as
GREGORY SANDERS in the interview room at the Morongo Sheriff's
Station. Prior to reading SANDERS his constitutional rights,
reading from the Miranda Card, we asked SANDERS some background
information relating to his children's' names, ages and their
locations, information regarding his ex-wives, and their
locations, and his former employment.

At approximately 1400 hours, same date, suspect SANDERS was read
his constitutional rights by Detective AUSTIN, reading from the
Sheriff's Miranda Warning Card, rev. 1/83. Detective AUSTIN
received the following responses to the waiver questions on the
Miranda Card. To question #1, "Yes", to question #2, "Yes." In
response to the question posed to SANDERS as to what happened,
SANDERS became somewhat enraged, showing his anger, pounded on
the table top and said, they wouldn't give me my duck back. When
we asked him, who was they, he replied LARRY and SHAWNEE. We
asked what duck, and SANDERS replied my rubber duck.

In attempting to ascertain the significance of the duck in the
case, Detective AUSTIN was advised by SANDERS that the duck was
everything to him and that everyone had been taking his property,
his wife, his kids away from him and now they took his duck.
SANDERS went on to advise us that sometime last year his mother
had attempted to shoot SHAWNEE (Victim #2, SHAWNEE SANDERS), but
that he had been arrested and not his mother. SANDERS went on to
explain how victim #1, LARRY, came into contact with his wife
(victim #2).

| RTING OFFICERS | DATE | REVIEWED BY | TYPED BY | ROUTED BY | DATE |
|---|---|---|---|---|---|
| L. J. NASH, DET. N-0078 | 2/3/88 | | LM M-0444 | | |

FURTHER ACTION:   ☐ YES   ☐ NO

COPIES TO:   ☐ Detective   ☐ Dist. Atty.

☐ SD/PD   ☐ CII   ☐ Patrol

☐ Other   ☐ Other

REMARKS

10 2

SHERIFF'S DEPARTMENT

County of San Bernardino

California

CA 03600

DR 88007009-09

H 30-88

REPORT AREA

SUPPLEMENTAL

| CODE SECTION | CRIME | CLASSIFICATION |
| --- | --- | --- |
| PC 187 | MURDER | GUNSHOT |

| VICTIM'S NAME — LAST NAME | FIRST NAME | MIDDLE NAME (FIRM NAME IF BUSINESS) |
| --- | --- | --- |
| V#1 - STEINBRING, LARRY J. (Deceased) | V#2 - SANDERS, SHAWNEE LEA | |

| ADDRESS | RESIDENCE | BUSINESS | PHONE |
| --- | --- | --- | --- |
| 1919 YUCCA MESA, LANDERS, CA 92284 | | | ( ) |

Page two

CONTACT AND INTERVIEW WITH SUSPECT - SANDERS, GREGORY LYNN (continued)

He stated that while he and SHAWNEE were living in Page, Arizona, they had allowed another female by the name of "BLUE" to move in with them. SANDERS went on to state that once BLUE had moved in with SHAWNEE and him, BLUE invited a subject known to him as LARRY STEINBRING and another male subject also moved in. SANDERS stated that a week after LARRY and the other subject had moved into his residence, his wife (victim #2) threw him out. SANDERS stated that he moved back to Bone Cave, Tennessee with his parents and that SHAWNEE and LARRY came out to California.

SANDERS stated that SHAWNEE continued to have contact with him by calling and writing him letters. We asked GREGORY SANDERS when did he arrive in California, and why, at which time he replied that he had arrived in California approximately a week ago on a Monday or Tuesday, (1/25/88 or 1/26/88) and that he had arrived in California for the purposes of giving SHAWNEE some of her property back.

When we asked SANDERS to explain what happened, SANDERS stated I shot the man on the hill, he was hanging on a cross. When we asked why, he stated that the man was laughing at him. We attempted to ascertain what man was on the hill hanging on a cross, at which time he said "Jesus Christ." He stated that he shot the man, the man continued to laugh at him, so he started beating the man hanging on the cross with the gun, and that he threw it at him.

I then asked SANDERS if he could tell us what happened inside the house and SANDERS stated that "They wouldn't give me my duck back." I asked him if he had asked for the duck at which time he stated yes he had. He stated that he had asked both LARRY and SHAWNEE for his duck, but they were laughing at him. We asked him where were both victims at the time he was asking for his duck and he stated that they were in the bedroom.

| REPORTING OFFICERS | DATE | REVIEWED BY | TYPED BY | ROUTED BY | DATE |
| --- | --- | --- | --- | --- | --- |
| L. J. NASH, DET. N-0078 | 2/3/88 | | LM M-0444 | | |

| FURTHER ACTION: | COPIES TO: | | REMARKS |
| --- | --- | --- | --- |
| ☐ YES  ☐ NO | ☐ Detective  ☐ CII  ☐ Dist. Atty.  ☐ Patrol | ☐ SD/PD  ☐ Other  ☐ Other | |

*103*

ERIFF'S DEPARTMENT

County of San Bernardino
California

CA 03600

H 30-88

REPORT AREA
SUPPLEMENTAL

| CODE SECTION | | CRIME | CLASSIFICATION |
|---|---|---|---|
| PC 187 | | MURDER | GUNSHOT |

VICTIM'S NAME — LAST NAME          FIRST NAME          MIDDLE NAME     (FIRM NAME IF BUSINESS)
V#1 - STEINBRING, LARRY J. (Deceased)    V#2 - SANDERS, SHAWNEE LEA

ADDRESS                                    RESIDENCE     BUSINESS          PHONE
1919 YUCCA MESA, LANDERS, CA 92284                                        (   )

Page three

CONTACT AND INTERVIEW WITH SUSPECT  SANDERS, GREGORY LYNN (continued)

Detective AUSTIN then asked SANDERS what happened after that and SANDERS replied "I shot them." Detective AUSTIN attempted to clarify by asking, did you shoot both of them? SANDERS replied I shot SHAWNEE, she wouldn't give me my duck back. I asked SANDERS if he had shot LARRY also, and this time SANDERS responded by saying I don't remember. In further questioning SANDERS he advised us that he did remember going into the garage area of the residence and getting a gun from a bag that he had placed in there himself. He stated that the gun was his and that he had bought it to California with him. He stated that he had originally purchased the gun for SHAWNEE when they were living in Page, Arizona. He was asked about the location or the whereabouts of the gun at this time. He stated that he threw it at the man that was on the cross.

Further attempts to clarify SANDERS actions inside the residence during the time of the shooting were met with SANDERS denial of any knowledge of the shooting, stating that he did not remember anything after entering the residence, to the point where he exited the residence and heard voices calling him to the hilltop. In asking SANDERS if he knew the difference between right and wrong, he replied yes, and was able to give an example of what was wrong. Throughout the remainder of the interview, SANDERS repeated that he did not remember what had happened or why he had shot the two individuals in the residence. The preceding statements were tape recorded, the tapes are on file with the Sheriff's Homicide Detail.

| ORTING OFFICERS | DATE | REVIEWED BY | TYPED BY | ROUTED BY | DATE |
|---|---|---|---|---|---|
| L. J. NASH, DET. N-0078 | 2/3/88 | | LM M-0444 | | |

FURTHER ACTION:          COPIES TO:          REMARKS
☐ YES  ☐ NO          ☐ Detective  ☐ SD/PD  ☐ Other
                       ☐ Dist. Atty.  ☐ CII  ☐ Other                    104
                                      ☐ Patrol

DR 88007009-09

H 30-88

SHERIFF'S DEPARTMENT
County of San Bernardino
California

CA 03600

REPORT AREA

SUPPLEMENTAL

| CODE SECTION | CRIME | CLASSIFICATION |
|---|---|---|
| PC 187 | MURDER | GUNSHOT |

VICTIM'S NAME — LAST NAME — FIRST NAME — MIDDLE NAME — (FIRM NAME IF BUSINESS)

V#1 - STEINBRING, LARRY J. (Deceased)    V#2 - SANDERS, SHAWNEE LEA

ADDRESS  ☐ RESIDENCE  ☐ BUSINESS  PHONE

1919 YUCCA MESA, LANDERS, CA 92284    ( )

## POLYGRAPH EXAMINATION OF SUSPECT SANDERS:

Suspect SANDERS was given a polygraph examination by polygraph examiners DAVE WILLIAMS and MIKE STANSELL on the same date (2/1/88). See report by MIKE STANSELL.

During the pre-polygraph interview, GREGORY SANDERS continued to advise that he did not remember why he had shot the two subjects in the residence or anything after entering the residence. Some of the inconsistencies SANDERS had in his statement to myself and Detective AUSTIN and the statements he made to WILLIAMS and STANSELL were that, in the first interview he stated that he came in the front door (north side of the residence) and in the second interview with STANSELL and WILLIAMS, he advised them that he had come into the back door of the residence. (South side).

A second inconsistency with the two interviews in the first interview with AUSTIN and myself, SANDERS did remember going to the bedroom area where the shots were fired, and in the second interview he only remembers walking into the residence, no further.

It appeared that the more SANDERS was questioned about the specifics of the shooting, the less he remembered, therefore the interview was concluded.

| REPORTING OFFICERS | DATE | REVIEWED BY | TYPED BY | ROUTED BY | DATE |
|---|---|---|---|---|---|
| L. J. NASH, DET. N-0078 | 2/3/88 | | LM M-0444 | | |

FURTHER ACTION:  ☐ YES  ☐ NO

COPIES TO:  ☐ Detective  ☐ Dist. Atty.  ☐ SD/PD  ☐ CII  ☐ Patrol  ☐ Other  ☐ Other

REMARKS

105

15-15184-401 Rev. 1/83

SHERIFF'S DEPARTMENT

C...nty of San Bernardino
California

CA 03600

DA

| | | | ዓ 30-88 |
|---|---|---|---|
| | | | REPORT AREA |
| | | | SUPPLEMENTAL |

| ƆDE SECTION | CRIME | CLASSIFICATION |
|---|---|---|
| PC 187 | MURDER | GUNSHOT |

CTIM'S NAME — LAST NAME          FIRST NAME          MIDDLE NAME     (FIRM NA ₁E IF BUSINESS)

V#1 — STEINBῈ 'G, LARRY J. (Deceased)     V#2 — SANDERS, SHAWNEE Lῑ

| ƆDRESS | RESIDENCE | B⌐SINESS | PHONE |
|---|---|---|---|
| 1919 YUCCA MESA, LANDERS, CA 92284 | | | ( ) |

AUTOPSY-REPORT

AUTO?SY NUMBER:   A153-88, CORONER'S CASE NUMBER: 88-2-545

VICT₁M:

STEINBRING, LARRY J.
DOB: 2/28/48
Male 39, Caucasian, 70", 162 lbs., brown hair/blue eyes, fair
complexion. The subject also had a full beard and mustache.

PERSONS PRESENT:

Doctor IRVING ROOT, Forensic Pathologist
JIM SEDGEWICK, Morgue Lab Technician
COLWELL DOUGLAS, Morgue Lab Technician
Forensic Specialist, KAREN RICE, Sheriff's Identification Bureau
Detective DAVE AUSTIN, Homicide Detail

OBSERVATIONS:

Clothing:

The victim was clothed in the following items: a blue plaid
shirt, having a blue nylon quilt lining. The shirt was primarily
blue with plaid design comprised of red/white/yellow stripes.
The front of the shirt was blood soaked in the upper chest area.
There appeared to be a hole located on the right side of the
shirt breast pocket. Beneath this shirt, the subject was wearing
a gray tank top, which was also soaked with blood on the front of
the shirt. This shirt also appeared to have holes in it. The
suspect was wearing Levi-type jeans with a brown leather belt and
a brass colored belt buckle engraved with the words "HARLEY
DAVIDSON". The subject was wearing a pair of gray socks.

| REPORTING OFFICERS | DATE | REVIEWED BY | TYPED BY | ROUTED BY | DATE |
|---|---|---|---|---|---|
| D. AUSTIN, DET. A-1021 | 2/3/88 | ꞈℓ0ɑ | ℐ.M M-0444 | | |

| ꞈURTHER ACTION: | COPIES TO: | | | | REMARKS |
|---|---|---|---|---|---|
| ☐ YES  ☐ NO | ☐ Detective  ☒ Dist. Atty. | ☐ SD/PD  ☐ CII  ☐ Patrol | ☐ Other  ☐ Other | | 106 |

5-15184-401 Rev. 1/83

SHERIFF'S DEPARTMENT

County of San Bernardino
California

CA 03600

H 30-88

REPORT AREA

SUPPLEMENTAL

| CODE SECTION | CRIME | CLASSIFICATION |
|---|---|---|
| PC 187 | MURDER | GUNSHOT |

VICTIM'S NAME — LAST NAME    FIRST NAME    MIDDLE NAME    (FIRM NAME IF BUSINESS)

V#1 - STEINBRING, LARRY J. (Deceased)    V#2 - SANDERS, SHAWNEE LEA

ADDRESS          ☐ RESIDENCE   ☐ BUSINESS          PHONE
1919 YUCCA MESA, LANDERS, CA 92284                 ( )

Page two

AUTOPSY REPORT #A153-88

OBSERVATIONS:    (continued)

### Jewelry:

The victim had two silver colored rings on his right hand. His pinkie ring appeared to depict a skull. The ring on his right ring finger depicted a motorcycle wheel with wings.

On his left hand the subject had a silver colored ring on his middle finger. This ring appeared to have a blue colored turquoise stone.

On the subjects right ear, the subject appeared to have a pierced earring with a white colored stone.

On the subjects left wrist was a "Elgin" wrist watch, having a yellow colored band and white face.

### Tattoos:

The subject had on his left upper arm a tattoo of a skull with two pistons protruding from the top of the skull cap. The skull also was wearing a bandanna with the following numbers tattooed on it "69" and "13". At the bottom of the skull or mandible there appeared to be cobwebs.

### EXTERNAL EXAMINATION:

### Wounds:

Wound #1 -- This wound was located on the upper right portion of the victim's chest. It was approximately 52-1/2" above the subject's right foot and a couple of inches to the left of the right nipple, in between the nipple and the midline of the upper torso.

| REPORTING OFFICERS | DATE | REVIEWED BY | TYPED BY | ROUTED BY | DATE |
|---|---|---|---|---|---|
| D. AUSTIN, DET. A-1021 | 2/3/88 | HCW | LM M-0444 | | |

FURTHER ACTION:    COPIES TO:    ☐ SD/PD   ☐ Other    REMARKS

☐ YES  ☐ NO    ☐ Detective   ☐ CII   ☐ Other

☐ Dist. Atty.   ☐ Patrol

15-15184-401 Rev. 1/83

*107*

SHERIFF'S DEPARTMENT

11-30-88

County of San Bernardino
California

CA 03600

| | | REPORT AREA |
| --- | --- | --- |
| | | SUPPLEMENTAL |

| CODE SECTION | CRIME | CLASSIFICATION |
| --- | --- | --- |
| PC 187 | MURDER | GUNSHOT |

| VICTIM'S NAME — LAST NAME | FIRST NAME | MIDDLE NAME    (FIRM NAME IF BUSINESS) |
| --- | --- | --- |
| V#1 - STEINBRING, LARRY J. (Deceased) | | V#2 - SANDERS, SHAWNEE LEA |

| ADDRESS | RESIDENCE | BUSINESS | PHONE |
| --- | --- | --- | --- |
| 1919 YUCCA MESA, LANDERS, CA 92284 | | | ( ) |

Page three

AUTOPSY REPORT #A153-88

EXTERNAL EXAMINATION:

Wound #1 - (continued)

This wound appeared to be elongated and this wound had rough edges on it's circumference, and appeared to be an exit wound. On wound #1, there did appear to be slight bruising around this exit wound.

Wound #2 - This wound appeared to be an entrance wound, was located 54-1/2" above the left sole, just below the subject's shoulder blade, and to the left of the backbone of the subject. The wound was circular in pattern and did not appear to have any jagged edges.

Wound #3 - This wound was located approximately 53" above the right sole, on the right side of the back. This wound appeared to be centered between the backbone and the right side of the back This also appeared to be an entrance wound, this wound also being round without any jagged edges.

Note: On both wounds #2 and #3, there did not appear to be any stippling or smudging. On wound #2, Doctor ROOT indicated that there did appear to be some clothing fibers.

INTERNAL EXAMINATION:

Doctor ROOT was able to trace the path of the bullet, which entered wound #2 through exit wound #1. During his examination he placed a green rod through the various organs which the bullet had passed through, and through both the entrance and exit wounds. The organs which he stated were effected by this gunshot wound included the heart, both lungs and the aorta.

| REPORTING OFFICERS | DATE | REVIEWED BY | TYPED BY | ROUTED BY | DATE |
| --- | --- | --- | --- | --- | --- |
| D. AUSTIN, DET. A-1021 | 2/3/88 | 71 DR | LM M-0444 | | |

| FURTHER ACTION: | COPIES TO: | | | REMARKS |
| --- | --- | --- | --- | --- |
| ☐ YES   ☐ NO | ☐ Detective | ☐ SD/PD | ☐ Other | |
| | ☐ Dist. Atty. | ☐ CII | ☐ Other | |
| | | ☐ Patrol | | 108 |

15-15184-401 Rev. 1/83

SHERIFF'S DEPARTMENT
County of San Bernardino
California

CA 03600

DR 88007009-09
H 30-88

REPORT AREA

SUPPLEMENTAL

| CODE SECTION | CRIME | CLASSIFICATION |
|---|---|---|
| PC 187 | MURDER | GUNSHOT |

| VICTIM'S NAME — LAST NAME | FIRST NAME | MIDDLE NAME | (FIRM NAME IF BUSINESS) |
|---|---|---|---|
| V#1 - STEINBRING, LARRY J. (Deceased) | | V#2 - SANDERS, SHAWNEE LEA | |

| ADDRESS | RESIDENCE | BUSINESS | PHONE |
|---|---|---|---|
| 1919 YUCCA MESA, LANDERS, CA 92284 | | | ( ) |

Page four

AUTOPSY REPORT #A153-88

INTERNAL EXAMINATION:    (continued)

Doctor ROOT was able to trace the path of the bullet from the entry wound #3, to the left lung and into the spinal column. He, again, placed a rod through the entry to the resting place of the bullet. He advised me that the lung had been pierced and the subject had bled and the chest cavity at this location had filled up with blood. He estimated that it took approximately 10 to 40 seconds for this cavity to fill up with the amount of blood which was present.

EXAMINATION OF SKULL:

External Examination:

There were no signs of trauma to the skull area; either the outer portion or inner portion of the skull.

Internal Examination:

There are no signs of trauma to the interior portion of the skull or brain.

REMOVAL OF THE BULLET:

During the internal examination Doctor ROOT removed the bullet from the spinal column. This bullet appeared to be a copper jacketed lead bullet. The nose of the bullet appeared to be slightly compressed. This bullet was given to Forensic Specialist KAREN RICE for later examination at the Crime Lab.

ADDITIONAL INFORMATION FROM DOCTOR ROOT DURING THE AUTOPSY:

Doctor ROOT indicated that he felt that the first shot was fired through wound #3, and that the second shot was fired at least ten seconds later through entry wound #2.

| REPORTING OFFICERS | DATE | REVIEWED BY | TYPED BY | ROUTED BY | DATE |
|---|---|---|---|---|---|
| D. AUSTIN, DET. A-1021 | 2/3/88 | HOa | LM M-0444 | | |

FURTHER ACTION:   ☐ YES   ☐ NO

COPIES TO:   ☐ SD/PD   ☐ Detective   ☐ CII   ☐ Dist. Atty.   ☐ Patrol   ☐ Other   ☐ Other

REMARKS

109

15-15184-401 Rev. 1/83

SHERIFF'S DEPARTMENT

County of San Bernardino
California

CA 03600

H 30-88

REPORT AREA

SUPPLEMENTAL

| CODE SECTION | CRIME | CLASSIFICATION |
|---|---|---|
| PC 187 | MURDER | GUNSHOT |

VICTIM'S NAME — LAST NAME      FIRST NAME      MIDDLE NAME   (FIRM NAME IF BUSINESS)
V#1 - STEINBRING, LARRY J. (Deceased)    V#2 - SANDERS, SHAWNEE LEA

ADDRESS
1919 YUCCA MESA, LANDERS, CA 92284    □ RESIDENCE    □ BUSINESS    PHONE ( )

Page five

AUTOPSY REPORT #A153-88

X-RAY EXAMINATION:

Prior to the autopsy, it was pointed out to me in the x-ray, that
a bullet had been located in the x-ray in the vertebrae.

CAUSE OF DEATH:

Multiple gunshot wounds.  Time of death within minutes.

The autopsy was concluded at 1300 hours.

| REPORTING OFFICERS | DATE | REVIEWED BY | TYPED BY | ROUTED BY | DATE |
|---|---|---|---|---|---|
| D. AUSTIN, DET. A-1021 | 2/3/88 | NOR | LM M-0444 | | |

FURTHER ACTION:

□ YES   □ NO

COPIES TO:
□ Detective   □ Dist. Atty.
□ SD/PD   □ CII   □ Patrol
□ Other   □ Other

REMARKS

15-15184-401 Rev. 1/83

Name _Larry J. Steinburg_  Autopsy No. _153-88_

Age _39_  Race _Cauc_  Sex _male_  Date _2 3 88_





**Floyd Tidwell**
*Sheriff*

SAN BERNARDINO COUNTY SHERIFF'S DEPARTMENT

*"Dedicated To Your Safety"*

OFFICE OF SPECIAL ASSISTANT TO THE SHERIFF

POLYGRAPH DETAIL

DATE:  February 1, 1988            ATTENTION:  Det. AUSTIN

TO:  Homicide Detail               FILE #:  88007009-09

FROM:  Sheriff's Polygraph

SUBJECT:  SANDERS, GREGORY LYNN


ON    February 1, 1988    A POLYGRAPH EXAMINATION WAS GIVEN TO THE

ABOVE-NAMED SUBJECT:  THE EXAMINER WAS MICHAEL A. STANSELL.

THE PURPOSE OF THE EXAMINATION WAS TO VERIFY GREGORY SANDERS STATEMENTS

IN REGARDS TO THIS CASE.

THE SUBJECT'S COOPERATION WAS GOOD.

At approximately 1520 hours myself and my partner DAVID WILLIAMS met
with GREGORY SANDERS at the Morongo Sheriff's Station interrogation
room for the purpose of this examination.  The basic functions of the
instrument as well as the procedures were explained to Mr. SANDERS
which he appeared to understand.  Prior to our meeting with Mr. SANDERS
in this room Detective AUSTIN advised us that he had informed Mr.
SANDERS of his constitutional rights as per Miranda and received an
intelligent waiver to those rights.

112

DATE:    February 1, 1988                                          Page 2
SUBJECT:  SANDERS, GREGORY LYNN
POLYGRAPH EXAMINATION

At this point GREGORY SANDERS, my partner DAVID WILLIAMS and myself got
into an in-depth discussion pertaining to his activity on the morning
of February 1, 1988.  GREG SANDERS said that he and his son got in the
car and went into town to McDonald's and were on their way to the
Welfare office when he blacked out.

He said that the last thing he remembered was being back at the house
in the garage in Landers digging through a sack looking for his rubber
duck.  In this sack he pulled his 38 caliber revolver and took it out
of the holster and went towards the house.  As he approached the back
door of the mobile home he stated that he forgot what had happened.
The next thing he said he remembered was walking down the road looking
back at the mobile home.

At this point he said that he somehow got up on top of this large hill
that is close to the house where he was staying and that he was looking
at a figure that looked like Christ and was laughing at him.  He then
fired the gun one time at the cross.  After pulling the trigger several
times and seeing that the gun was empty he took the gun and pistol
whipped this imaginary being and threw the gun down on the ground.  At
this point the Sheriff's helicopter then circled down and landed on the
hill and arrested SANDERS.  SANDERS throughout the entire conversation
denied or could not remember any of his actions while in the trailer.

At this point I formulated a polygraph series in an effort to verify
this.  Below listed will be those relevant questions asked coupled with
GREGORY SANDERS' answers to those questions.

Question #1:    Do you remember what happened once you got in the mobile
                home this morning?

Answer:         No.

Question #2:    Do you remember shooting LARRY and SHAWNEE today?

Answer:         No.

Question #3:    Do you remember shooting LARRY and SHAWNEE with the gun
                from the garage today?

Answer:         No.

Question #4:    Do you remember planning to shoot LARRY or SHAWNEE
                before you went in the trailer today?

Answer:         No.

113

DATE:   February 1, 1988                                    Page 3
SUBJECT:   SANDERS, GREGORY LYNN
POLYGRAPH EXAMINATION

This series of questions was administered on three separate occasions
and based upon a numerical chart analysis it is my opinion and the
opinion of my partner DAVID WILLIAMS that the examinee has answered
deceptively to all relevant questions asked.

At this point I turned the investigation over to Detective AUSTIN and
Detective NASH.

Submitted for your information.

Respectfully,


MICHAEL A. STANSELL
Deputy Sheriff
Polygraph Detail
California License #615

MAS:mb

114

SHERIFF'S DEPARTMENT

County of San Bernardino
California

CA 03600

DR 88007009-09
H 30-88
REPORT AREA

| CODE SECTION | CRIME | CLASSIFICATION |
|---|---|---|
| PC 187/217 | MURDER/ATTEMPT MURDER | GUNSHOT |

VICTIM NAME — LAST NAME | FIRST NAME | MIDDLE NAME (FIRM NAME IF BUSINESS)

V#1: STEINBRING, LARRY/V#2: SANDERS, SHAWNEE

ADDRESS ☐ RESIDENCE ☐ BUSINESS    PHONE ( )

## ASSIGNMENT:

At about 1045 hours, 2-1-88, I was advised to return to my office where I was told by Detective TESSELAAR we had a call out at 1919 Yucca Mesa in Landers. The Morongo Basin Station was requesting we respond to that location where two victims had been shot and one of the victims had died.

## ARRIVAL:

Detective TESSELAAR and I arrived at the scene at about 1229 hours on 2-1-88. The weather was fair; the temperature was felt to be about 70 degrees.

## OFFICERS AT SCENE:

Morongo Basin Station:

1. Captain KNADLER;
2. Sergeant KAISER;
3. Sergeant SIMENDICH;
4. Sergeant WHITE;
5. Senior Deputy MULLINS;
6. Senior Deputy SCHROEDER;
7. Deputy GINTER;
8. Deputy HENLEY; and
9. Deputy LOVAN.

Sheriff's Homicide Detail:

1. Sergeant ENGLISH;
2. Detective NASH;
3. Detective AUSTIN;
4. Detective DE LAPP; and
5. Detective TESSELAAR.

Sheriff's Crime Lab:

1. Criminalist J. JOHNSON;

| REPORTING OFFICERS | DATE | REVIEWED BY | TYPED BY | ROUTED BY | DATE |
|---|---|---|---|---|---|
| DE LAPP, Det. D0601 | 2-9-88 | | CF F1191 | | |

FURTHER ACTION:  COPIES TO:  ☐ SD/PD  ☐ Other    REMARKS

☐ YES  ☐ NO    ☐ Detective  ☐ CII  ☐ Other

☐ Dist. Atty.  ☐ Patrol

15-15184-401 Rev. 1/83

SHERIFF'S DEPARTMENT

DR 88007009-09
H 30-88
REPORT AREA

County of San Bernardino
California

CA 03600

| CODE SECTION | CRIME | CLASSIFICATION |
|---|---|---|
| PC 187/217 | MURDER/ATTEMPT MURDER | GUNSHOT |

VICTIM'S NAME — LAST NAME     FIRST NAME     MIDDLE NAME     (FIRM NAME IF BUSINESS)
V#1: STEINBRING, LARRY/V#2: SANDERS, SHAWNEE

ADDRESS ☐ RESIDENCE ☐ BUSINESS     PHONE ( )

Page 2
OFFICERS AT SCENE:                    (Continue)

Sheriff's Identification Division:

1. Forensic Specialist NUNEZ; and
2. Forensic Specialist RICE.

Sheriff's Aviation Division:

1. Deputy SCATURRO, Pilot; and
2. Deputy W. FERTIG, Observer.

San Bernardino County Coroner's Office:

1. Deputy Coroner QUINN; and
2. Deputy Coroner COLELLA.

Emergency Aid Personnel:

1. DOUG ANDERSON, paramedic, Joshua Tree;
2. BILL EVANS, paramedic, Joshua Tree; and
3. POLLMAN and SIPES, San Bernardino County Firemen.

CIVILIANS ON SCENE:

1. HOBBS, DE LORIES (owner of property);
2. KENWORTHY, MERRILL (boarder);
3. JAMISON, STEPHEN (neighbor, 1875 Yucca Mesa); and
4. SANDERS, ALEXANDER, age 4 (son of suspect).

BRIEFING:

I was briefed by Captain KNADLER, Sergeant KAISER, and Sergeant WHITE
shortly after my arrival. I was told that GREG SANDERS entered the
mobile home and went to the bedroom occupied by SHAWNEE SANDERS, his
wife, and her boyfriend, LARRY STEINBRING, who lived with her. Shots
were heard and Mrs. HOBBS observed her daughter, SHAWNEE, shot and
LARRY shot by GREG SANDERS. GREG SANDERS was tracked by deputies

| REPORTING OFFICERS | DATE | REVIEWED BY | TYPED BY | ROUTED BY | DATE |
|---|---|---|---|---|---|
| DE LAPP, Det. D0601 | 2-9-88 | | CF F1191 | | |

FURTHER ACTION:     COPIES TO: ☐ SD/PD  ☐ Other     REMARKS
☐ YES  ☐ NO     ☐ Detective  ☐ CII  ☐ Other
☐ Dist. Atty.  ☐ Patrol

15-15184-401 Rev. 1/83

Sh ..IFF'S DEPARTMENT

County of San Bernardino

California

CA 03600

| DR 88007009-09 |
| H 30-88 |
| REPORT AREA |

| CODE SECTION PC 187/217 | CRIME MURDER/ATTEMPT MURDER | CLASSIFICATION GUNSHOT |

| VICTIM'S NAME — LAST NAME V#1: STEINBRING, LARRY/V#2: SANDERS, SHAWNEE | FIRST NAME | MIDDLE NAME | (FIRM NAME IF BUSINESS) |

| ADDRESS | RESIDENCE | BUSINESS | PHONE ( ) |

Page 3
BRIEFING:                                    (Continued)

toward Goat Mountain to the north of the scene where another shot was heard by the deputies. GREG SANDERS was apprehended by Aviation personnel on Goat Mountain.

SECONDARY ASSIGNMENT:

I, along with Detective TESSELAAR, was assigned by Detective NASH to investigate the crime scene.

CRIME SCENE INVESTIGATION:

Description of Property:

1919 Yucca Mesa is located at the northeast corner of Yucca Mesa and Cherry Blossom in Landers. The roads are unpaved and the area is rural. The house is a brown and white, Jefferson brand, mobile home facing northeast. There is a detached brown and white stucco garage south of the mobile home that faces Cherry Blossom. An unpainted wooden fence encloses a yard between the two structures. A chain link fence encloses a second yard southeast of the structures (see diagram). There is a gate in the wooden fence allowing access from the south yard on to the raised porch at the rear of the mobile home.

Vehicles at Scene:

There were five vehicles in addition to the Sheriff's units on the scene. One was a gray primer over green two-door Dodge Dart Swinger, bearing Arizona plates VYT026. This vehicle was parked at the northwest corner of the property adjacent to the front porch and was later identified as belonging to the suspect, GREG SANDERS. A black Harley Davidson motorcycle, bearing Arizona license 6GYZ, and a blue Harley Davidson motorcycle, bearing Arizona license ET7R, were parked along side the chain link fence of the south yard. An orange van, California license 2E4J710, and a flatbed truck bearing Arizona license 3DZ008, were parked adjacent to the garage door (see diagram).

| REPORTING OFFICERS J. DE LAPP, Det. D0601 | DATE 2-9-88 | REVIEWED BY | TYPED BY CF F1191 | ROUTED BY | DATE |

| FURTHER ACTION: | COPIES TO: | ☐ SD/PD | ☐ Other | REMARKS |
| ☐ YES ☐ NO | ☐ Detective | ☐ CII | ☐ Other | |
| | ☐ Dist. Atty. | ☐ Patrol | | |

SF 15184 401 Rev. 1/83

(117)

SHERIFF'S DEPARTMENT

County of San Bernardino
California

CA 03600

DR 88007009-09
H 30-88

REPORT AREA

| CODE SECTION | CRIME | CLASSIFICATION |
|---|---|---|
| PC 187/217 | MURDER/ATTEMPT MURDER | GUNSHOT |

VICTIM'S NAME — LAST NAME | FIRST NAME | MIDDLE NAME | (FIRM NAME IF BUSINESS)

V#1: STEINBRING, LARRY; #2: SANDERS, SHAWNEE

ADDRESS | RESIDENCE | BUSINESS | PHONE ( )

Page 4

EXTERIOR MEASUREMENTS:

The end of the mobile home facing Yucca Mesa measures about 23 feet, 11 inches in width. There are two telephone poles paralleling Yucca Mesa along its eastern edge. The north corner of the mobile home is about 208 feet, 3 inches south of pole bearing number 1697094E. The southwest corner of the mobile home is about 126 feet, 10 inches northeast of the pole bearing number 16970943E. This pole is located on the property at the corner of Yucca Mesa and Cherry Blossom. The rear corner of the Dodge Dart belonging to GREG SANDERS is about 12 feet, 9 inches from the north corner of the mobile home and 39 feet, 3 inches from the juncture of the mobile home where the front porch juts out.

There were two bullet exit holes visible in the right hand side of the end of the mobile home facing Yucca Mesa. The hole in the window was located about 6 feet, 2 1/2 inches above ground level and 4 feet, 7 3/4 inches from the closest corner of the mobile home (see diagram). This hole was about 1/2 inch in width and 3/4 of an inch in height with a concave crater in the glass indicating that the bullet came from the interior of the mobile home. The other bullet hole was located in the wall below and to the right of the hole in the window. It was about 3 feet, 9 1/2 inches above the ground and 2 feet, 8 1/2 inches from the closest corner of the mobile home. It was a jagged tear protruding outward in the siding and was about 1 1/2 inches in height by 1/2 inch in width.

Footprints:

During the briefing, I had been directed to sets of footprints along the driver's side of GREG SANDERS's car and matching prints along the edge of Yucca Mesa leading from the property toward Goat Mountain by Sergeant WHITE. At the time, it was believed that these were prints made by GREG SANDERS as he was on the property around the time of the shooting. The prints were of a vibrum lug sole. The prints measured about 11 3/4 inches overall length, 4 inches wide at the sole and 3 1/2 inches in width at the heel. They were numbered and photographed. Number one is of a left shoe located adjacent to and parallel to the

| REPORTING OFFICERS | DATE | REVIEWED BY | TYPED BY | ROUTED BY | DATE |
|---|---|---|---|---|---|
| G. DE LAPP, Det. D0601 | 2-9-88 | | CF F1191 | | |

FURTHER ACTION: [ ] YES [ ] NO

COPIES TO: [ ] Detective [ ] Dist. Atty.

[ ] SD/PD [ ] CII [ ] Patrol

[ ] Other [ ] Other

REMARKS

118

15 15184-401 Rev 1/83

SHF F'S DEPARTMENT
County of San Bernardino
California

CA 03600

DR. 88007009-09
H 30-82
REPORT AREA

| DE SECTION | CRIME | CLASSIFICATION |
|---|---|---|
| C 187/217 | MURDER/ATTEMPT MURDER | GUNSHOT |

TIM'S NAME — LAST NAME   FIRST NAME   MIDDLE NAME   (FIRM NAME IF BUSINESS)

V#1: STEINBRING, LARRY/V#2: SANDERS, SHAWNEE

DRESS   ☐ RESIDENCE   ☐ BUSINESS   PHONE ( )

Page 5
EXTERIOR MEASUREMENTS:                    (Continued)

Footprints: (Cont'd.)

left front tire of GREG SANDERS's car and is pointed toward the front
of the car. Number two is a left footprint near the area of the left
headlamp of the car leading away from the mobile home. Numbers three
through seven are prints along side and parallel to the east edge of
the roadway of Yucca Mesa just north of the property, with number three
being closest to the property and number seven furthest away. The toe
impression of number seven is about 109 feet, 10 inches south of
telephone pole number 1697094E, and the heel of number three is about
11 feet, 3 inches further south. I was not aware that GREG SANDERS was
apprehended wearing boots that could not have made tracks that I had
documented until much later in the investigation.

NTERIOR MOBILE HOME:

The mobile home is a three bedroom, two bath model with an awning and
porch off the dining room and washroom doors and an uncovered porch
located off the living room or front door.

Southwest Bedroom:

The southwest bedroom is where the shooting took place. The room could
be entered either off a hall that connects to the living room and
northwest bedroom or through a connecting bathroom door. This bathroom
can be entered off the washroom hall. The bedroom contains a double
bed with the headboard against the northeast wall. The covers are off
one side of the bed and are draped over the opposite edge, partially
covering the male victim, LARRY STEINBRING. On a round metal table in
the north corner between the bed and the closet I noticed two mugs,
both containing coffee. An empty bowl and a spoon were located on the
floor just in front of the same round table. On a rectangular end
table in the west corner I saw two packs of cigarettes, matches and an
ashtray. The body of LARRY STEINBRING was located between the
southwest wall and the bed. The bed was at a slight angle, the foot of
the bed being further away from the southwest wall and the head of the
bed.

| F RTING OFFICERS | DATE | REVIEWED BY | TYPED BY | ROUTED BY | DATE |
|---|---|---|---|---|---|
| DE LAPP, Det. D0601 | 2-9-88 | | CF F1191 | | |

| URTHER ACTION: | COPIES TO: | | | REMARKS |
|---|---|---|---|---|
| ☐ YES  ☐ NO | ☐ Detective | ☐ SD/PD  ☐ CII | ☐ Other  ☐ Other | |
| | ☐ Dist. Atty. | ☐ Patrol | | |

5-15184-401 Rev. 1/83

S  IFF'S DEPARTMENT

County of San Bernardino

California

CA 03600

DR 88007009-09

H 30-88

REPORT AREA

| ODE SECTION | CRIME | CLASSIFICATION |
|---|---|---|
| PC 187/217 | MURDER/ATTEMPT MURDER | GUNSHOT |

ICTIM'S NAME — LAST NAME    FIRST NAME    M   LE NAME    (I   PM NAME IF BUSINESS)

V#1  STEINBRING, LARRY/V#2: SANDERS, SHAWNEE

ADDRESS    [ ] RESIDENCE   [ ] BUSINESS    PHONE ( )

Page 6
INTERIOR MOBILE HOME:                   (Continued)

Southwest Bedroom:      (Cont'd.)

The victim, STEINBRING, was lying on his left side with his head toward
the southeast wall and facing the southwest wall.  The back of his head
was under the corner of the foot of the bed.  His right leg was
straight and his left leg was bent at the knee.  His left arm was
underneath the body and angled toward the back.  His right arm was bent
upward at the elbow and the fingers of the right hand were curled.
There was a blue blanket underneath the body and an orange afghan
covering to part of the hip area.  A third blanket was on the bed and
draped over the back and rear of the victim's head.

STEINBRING was wearing a long-sleeved plaid shirt that was hiked up
exposing his middle and lower back.  He was wearing blue jeans and had
a long black leather wallet in his right rear pants pocket connected to
one of his belt loops by a white metal chain.  He was also wearing
black boots.

The room was cluttered, but there were no obvious signs of a struggle,
such as overturned furniture.

Northwest Bedroom:

I was advised by the briefing officers that Mrs. SANDERS had gone from
the southwest bedroom through the hall after being shot and ended up on
the floor of the northwest bedroom.  Just inside the room, I saw a
small stain that appeared to be blood on the carpet.  There was a
purple blanket and a blood stained blue robe at the front of the desk
against the northeast wall.  There were no signs of struggle in this
room either.

ROLLING OF THE BODY:

At about 1518 hours on 2-1-88, the body was rolled over by members of
the Coroner's Office and Detective TESSELAAR in my presence.  Almost
the entire front of the victim's shirt was soaked in blood.  There was

| REPORTING OFFICERS | DATE | REVIEWED BY | TYPED BY | ROUTED BY | DATE |
|---|---|---|---|---|---|
| DE LAPP, Det. D0601 | 2-9-88 | | CF F1191 | | |

FURTHER ACTION:    COPIES TO:    [ ] SD/PD   [ ] Other    REMARKS

[ ] YES  [ ] NO    [ ] Detective  [ ] CII   [ ] Other

15-15184-401 Rev. 1/83    [ ] Dist. Atty.  [ ] Patrol

12

SH_FF's DEPARTMENT
County of San Bernardino
California

CA 03600

| ODE SECTION | CRIME | CLASSIFICATION |
|---|---|---|
| PC 187/217 | MURDER/ATTEMPT MURDER | GUNSHOT |

| ICTIM'S NAME — LAST NAME | FIRST NAME | IDDLE NAME | (FIRM NAME IF BUSINESS) |
|---|---|---|---|
| V#1: STEINBRING, LARRY/V#2: SANDERS, SHAWNEE | | | |

| DDR 3S | RESIDENCE | BUSINESS | PHONE ( ) |
|---|---|---|---|

Page 7
ROLLING OF THE BODY: (Continued)

stiffening of the victim's arms and lividity in evidence in his face. After STEINBRING's body was removed, items were taken out from under the opposite side of the bed from where his body had been lying. They included a holstered Colt .357 magnum revolver, a one-pound coffee can, and a blue canvas cosmetics' type bag. The gun and holster were dusty. The can contained marijuana and marijuana smoking paraphernalia. The cosmetics bag contained toiletries, papers, and an Oregon and an Arizona license of the female victim. Among the papers was a type written note (see attached photocopy and Evidence Report for further details).

INTERIOR MEASUREMENTS:

The southwest bedroom is 10 feet in width by 13 feet in length. The doorways leading into the room are 6 feet, 10 inches in height by 2 feet, 4 inches in width.

Body Position:

The victim's head is 9 feet, 6 inches from the east corner of the room and 6 feet, 9 inches from the south corner. The midline of the right hip is 1 foot, 7 1/2 inches from the southwest wall and 7 feet, 8 inches from the northeast wall. The right knee is 8 feet, 10 inches from the west corner of the room.

Bed Position:

The bed is 6 feet in length by 4 feet, 5 inches in width and is 2 feet, 6 inches away from the southwest wall at the head and 3 feet away at the foot of the bed. It is 2 feet, 3 1/4 inches away from the northeast wall at the head corner. It is 6 feet from the southeast wall at the foot of the bed.

Bullet Holes:

The hole in the window of the northwest wall is about 3 feet, 4 1/2 inches from the floor and 4 feet, 3 1/4 inches from the west corner of

| REPORTING OFFICERS | DATE | REVIEWED BY | TYPED BY | ROUTED BY | DATE |
|---|---|---|---|---|---|
| DE LAPP, Det. D0601 | 2-9-88 | | CF F1191 | | |

| FURTHER ACTION: | COPIES TO: | | | REMARKS |
|---|---|---|---|---|
| ☐ YES ☐ NO | ☐ Detective ☐ Dist. Atty. | ☐ SD/PD ☐ CII ☐ Patrol | ☐ Other ☐ Other | |

15-15184-401 Rev. 1/83

12/

SH   F'S DEPARTMENT
County of San Bernardino
California

CA 03600

| DE SECTION | CRIME | CLASSIFICATION |
| --- | --- | --- |
| C 187/217 | MURDER/ATTEMPT MURDER | GUNSHOT |

| :TIM'S NAME — LAST NAME | FIRST NAME | IDDLE NAME | (FIRM NAME IF BUSINESS) |
| --- | --- | --- | --- |
| V#1: STEINBRING, LARRY/V: : SANDERS, SHAWNEE | | | |

| :DRESS | RESIDENCE | BUSINESS | PHONE ( ) |
| --- | --- | --- | --- |

Page 8
**INTERIOR MEASUREMENTS:**          (Continued)

   Bullet Holes:     (Cont'd.)

the room.   The hole in the northwest wall is 1 foot, 1 inch away above
the floor and 2 feet, 3 3/4 inches from the west corner of the room.

**CONTACT WITH HOSPITAL:**

   Nurse Supervisor A. PENNINGTON

At about 1730 hours, I telephoned the High Desert Medical Center at
366-3711.  I made contact with ANGIE PENNINGTON, the nurse supervisor.
She told me she didn't have the complete details but could tell me that
SHAWNEE SANDERS was in stable condition.  She believed there were two
entry wounds but could not provide any details regarding them.  She
advised that SANDERS would be unable to submit to an interview this
evening.

**RECONTACT WITH PROPERTY OWNER, DE LORIES HOBB, AND BOARDER, MERRILL
KENWORTHY:**

At about 1150 hours on 2-3-88, I recontacted Mrs. HOBBS and Mr.
KENWORTHY at 1919 Yucca Mesa in Landers.  They told me that MERRILL
KENWORTHY had found GREG SANDERS's briefcase in the living room
yesterday.   KENWORTHY told me that he had overheard GREG SANDERS
talking to SHAWNEE SANDERS and showing her papers from the briefcase
some time back.  He said that he had overheard GREG SANDERS tell the
combination of the briefcase to SHAWNEE and that was how he was able to
open it.  He said he opened the briefcase and went through the
paperwork.  He found several legal documents and personal papers
belonging to GREG SANDERS, as well as some diary-like notes apparently
written by GREG SANDERS that he thought may give us some background on
SANDERS.  At the time of the contact, I was not aware that Detective
TESSELAAR had previously obtained a written consent search from GREGORY
SANDERS for any personal property of his located on the premises.  I
left the briefcase at the residence in anticipation of having to obtain
a search warrant for it.  When I met Detective TESSELAAR later that

| RE RTING OFFICERS | DATE | REVIEWED BY | TYPED BY | ROUTED BY | DATE |
| --- | --- | --- | --- | --- | --- |
| . DE LAPP, Det. D0601 | 2-9-88 | | CF F1191 | | |

| FURTHER ACTION: | COPIES TO: | | | REMARKS |
| --- | --- | --- | --- | --- |
| ☐ YES  ☐ NO | ☐ Detective | ☐ SD/PD | ☐ Other | |
| | ☐ Dist. Atty. | ☐ CII | ☐ Other | |
| | | ☐ Patrol | | |

15-1518-4-401 Rev. 1/83

*122*

SH     F'S DEPARTMENT
Cou. ,y of San Bernardino
California

CA 03600

| DE SECTION<br>C 187/217 | CRIME<br>MURDER/ATTEMPT MURDER | CLASSIFICATION<br>GUNSHOT | |
|---|---|---|---|
| TIM'S NAME - LAST NAME | FIRST NAME | MIDDLE NAME | (FIRM NAME IF BUSINESS) |

V#1: STEINBRING, LARRY/V#2: S. NDERS, SHAWNEE

DRESS            ☐ RESIDENCE   ☐ BUSINESS          PHONE ( )

---

Page 9.

RECONTACT WITH PROPERTY OWNER, DE LORIES HOBBS, AND BOARDER, MERRILL
KENWORTHY:                    (Continued)

afternoon at the Morongo Basin Station, he advised me that he had such
a signed consent.  We then returned to the residence on Yucca Mesa and
retrieved the briefcase from HOBBS and KENWORTHY at about 1545 hours.

EVIDENCE REPORT:

Photographs:

Several photographs were taken of the scene including aerials, exterior
shots and interior shots.  Some of the objects in the photographs were
identified with numbered placards.  Placards number one through seven
depicted the footprints previously described.  Placard number eight is
on the gray and green Dodge Dart owned by GREG SANDERS.  Placard number
nine identifies photographs of both interior and exterior of the hole
in the bedroom window.  Placard number ten identifies the photographs
of both interior and exterior of the hole in the bedroom wall.  Placard
number eleven identifies the photograph of the empty holster that was
discovered in the garage by Detective TESSELAAR.  Placard number twelve
identifies the photograph of the blood stain on the carpet in the
northwest bedroom.  Placard number three identifies the photograph of
the blood stained light blue robe found in the northwest bedroom.

The following evidence was taken from the scene and maintained under my
care and control until it could be packaged and transported to
Sheriff's I.D. for storage.

1.  Serial number 4747J, a Colt Trooper Mark III .357 magnum, blue
    steel six-inch barrel revolver with brown western type holster and
    belt.  The belt contains 31 rounds of Winchester copper coated
    semi-wad cutter ammunition and the revolver contains six rounds of
    the same ammunition.  The bullets were removed from the gun and
    packaged separately under the same tag in a coin sized envelope,
    maintained under the same tag.  These items placed under Property
    Tag #B39962.

---

| EP  TING OFFICERS<br>J  DE LAPP, Det. D0601 | DATE<br>2-9-88 | REVIEWED BY | TYPED BY<br>CF F1191 | ROUTED BY | DATE |
|---|---|---|---|---|---|

| URTHER ACTION:<br>☐ YES  ☐ NO | COPIES TO:<br>☐ Detective<br>☐ Dist. Atty. | ☐ SD/PD<br>☐ CII<br>☐ Patrol | ☐ Other<br>☐ Other | REMARKS | |

123

5-15184-401 Rev. 1/83

SHERIFF'S DEPARTMENT
Co   ty of San Bernardino
California
CA 03600

007009-09
H 30-88
REPORT AREA

| DE SECTION PC 187/217 | CRIME MURDER/ATTEMPT MURDER | CLASSIFICATION GUNSHOT | |
|---|---|---|---|

| CTIM'S NAME — LAST NAME V#1: STEINBRING, LA RY/V#2: SANDERS, SHA EE | FIRST NAME | IDDLE NAME | (FIRM NAME IF BUSINESS) |
|---|---|---|---|

| DRESS | RESIDENCE   BUSINES | PHONE ( ) |
|---|---|---|

Page 10                                          (Continued)
EVIDENCE REPORT:

2.   A type written note dated 12-25-87, taken from the cosmetics bag
     under the bed in the southwest bedroom, maintained at I.D. under
     tag #B39963.

3.   A one-pound Folger's coffee can containing miscellaneous narcotic
     paraphernalia.  Maintained under Property Tag #B39964.

4.   Marijuana taken from the Folger's can, transported to the Sheriff's
     Crime Lab and maintained at that location under Property Tag
     #B42042 and cross reference under LRN 16022.  (See attached
     receipt.)

SUSPECT'S CLOTHING:

1.   Including blue Levi's, black T-shirt, white socks, white long
     johns, one knife, and a blue Levi jacket, maintained at the Crime
     Lab under Property Tag #B44525.

2.   Black square-toed boots having a warn herringbone pattern on the
     sole, maintained at the Sheriff's Crime Lab under Property Tag
     #B44526.

     The clothing and boots were collected from the suspect by Senior Deputy
     URBAN at the time of booking of the suspect at the Morongo Basin
     Station.  They were later packaged and tagged by Senior Deputy MULLINS
     who delivered the items to Criminalist JOHNSON of the Sheriff's Crime
     Lab for disposition.

EVIDENCE CONTINUED:

1.   Miscellaneous papers, including notes, police reports, and legal
     papers belonging to GREG SANDERS, taken from the briefcase
     recovered at the scene.  These items maintained at Sheriff's I.D.
     under Property Tag #B39967.

| RF RTING OFFICERS DE LAPP, Det. D0601 | DATE 2-9-88 | REVIEWED BY | TYPED BY CF F1191 | ROUTED BY | DATE |
|---|---|---|---|---|---|

| FURTHER ACTION: | COPIES TO: | SD/PD | Other | REMARKS |
|---|---|---|---|---|
| YES   NO | Detective | CII | Other | |
| | Dist. Atty. | Patrol | | |

15-15184-401 Rev. 1/83

124

H 30-88
REPORT AREA

Co. y of San Bernardino
California

CA 03600

| DE SECTION | CRIME | CLASSIFICATION |
| PC 187/217 | MURDER/ATTEMPT MURDER | GUNSHOT |

| CTIM'S NAME — LAS, NAME | FIRST NAME | IDDLE NAME | (FIRM NAME IF BUSINESS) |
| V#1: S INBRING, LARRY, #2: SANDERS, SHAWNEE | | | |

DDRESS    □ R SIDENCE    □ BUSINESS    PHON: ( )

Page 11
EVIDENCE CONTINUED:                          (Continued)

   The following items were collected by Criminalist J. JOHNSON at the
   scene:

   1.  Sample of bloodstained blanket under body of decedent.

   2.  Sample of bloodstained carpet from northwest bedroom (evidence
       placard #12).

   3.  Blue cloth bloodstained robe (evidence placard #13).

   Above items are located at the Crime Lab under LRN 4655.

| FF TING OFFICERS | DATE | REVIEWED BY | TYPED BY | ROUTED BY | DATE |
| DE LAPP, Det. D0601 | 2-9-88 | | CF F1191 | | |

FURTHER ACTION:    COPIES TO:    □ SD/PD    □ Other    REMARKS
□ YES  □ NO    □ Detective  □ CII  □ Other
              □ Dist. Atty.  □ Patrol

5-184-401 Rev. 1/83