# EXHIBIT D

LIFE PRISONER EVALUATION REPORT
SUBSEQUENT PAROLE CONSIDERATION HEARING
SEPTEMBER 2006 CALENDAR

I. **COMMITMENT FACTORS:**

    A. **Life Crime:**

| | |
|---|---|
| Commitment Offense: | Murder 2nd, PC 187, with the use of a deadly weapon PC 120229(B) |
| County of Commitment: | San Bernardino |
| Case Number: | BCR1231 |
| Sentence: | 16 years to Life |
| Received in CDC: | 01/05/89 |
| MEPD: | 10/01/98 |
| Weapon: | Handgun |
| Victim: | Larry J. Steinbring, age 40 |

        1. **Offense Summary:**

At the time of the instant offense Sanders and his wife, Shawnee were separated. His estranged wife and her boyfriend were staying with her mother (Mrs. Hobbs) at her mother's mobile home. Sanders had been living away from the area, but had returned to the area with his son, to sort things out with his estranged wife, Shawnee. During this time Sanders was also staying in Mrs. Hobbs mobile home.

On the day of the murder Sanders left the mobile home for a while. When he returned he went directly to the bedroom that Shawnee and her boyfriend, Larry Steinbring were sharing. Sanders entered the bedroom and shot both victims. Mrs. Hobbs heard the first shots and went to the room. She witnessed Sanders shoot Steinbring a second time and then shoot her daughter. Sanders fled the scene and was later arrested by the Sheriffs office helicopter crew. Steinbring died at the scene, Shawnee survived.

        2. **Prisoner's Version:**

Sanders states that the official report appears to be factual except that his ex-wife, Shawnee invited him to come to the mobile home. Later he found out it was a ploy for her to get some community property. He also stated that at the time of the incident he felt that Shawnee and Steinbring were physically harming his son, Alex. He felt that they were attempting to coerce his son to stay with them and have him (Sanders) out of their lives. Sanders states that on the day of the incident he entered the room and found Shawnee and

Steinbring in bed, under the influence of drugs and alcohol. His intent was to sell Steinbring the gun, take his son and "just get out". He states that things escalated. Shawnee grabbed the gun and it went off. Sanders states that things and his rage got out of hand.

B. **Aggravating/Mitigating Circumstances:**

1. **Aggravating Circumstances:**

   a) During the commission of the crime the inmate had the opportunity to cease but continued.
   b) Multiple victims
   c) Use of a weapon (hand gun)

2. **Mitigating Circumstances:**

   a) Inmate has a minimal history of criminal behavior.
   b) The crime was committed during a brief period of extreme mental or emotional trauma.
   c) Crime was committed during an usual situation unlikely to reoccur.

II. **PRECONVICTION FACTORS:**

A. **Juvenile Record:**

None.

B. **Adult Convictions and Arrests:**

| Date | Arrest | Disposition |
|---|---|---|
| 01-28-86 | Disorderly Conduct | Fine, sentence both suspended |
| 09-06-86 | Disorderly Conduct | Guilty, fined $70.00 |

C **Personal Factors:**

Sanders was born November 13, 1951 in Lafayette, Indiana. He has 4 brothers and 1 sister. Sanders graduated from Southwestern High School in 1969, at the age of seventeen. Sanders enlisted in the Marine Corps in 1969, he served until March 1973 when he was medically discharged due to a severe sun burn like reaction when the skin is exposed to the sun. Sanders has had this skin condition since he was a young child. After his discharge from the service Sanders went to work for the Alcoa, in Lafayette, Indiana. He was laid off after two years. He then moved to Page, Arizona, where his wife's family lived. He worked for the Salt River Project on the Black Mesa and Lake Powell Railroad, where he was employed until 1987. He then moved to Tennessee to be near his parents following a confrontation with an ex- wife on the

advice of his attorney of record, James C. Henry. While in Tennessee Sanders collected welfare benefits for his son Alex, who he was raising as a single parent. In January 1988 Sanders left Tennessee to move to California.

### III. POSTCONVICTION FACTORS:

#### A. Special Programming Accommodations/Disability:

Sanders denied any disabilities that would require special accommodations for his Board of Prison Terms appearance per the Armstrong Remedial Plan.

#### B. Custody History:

| | |
|---|---|
| 01-05-89 | Sanders was received by the California Department of Corrections at California Institute for Men-Reception Center (CIM-RC). |
| 02-21-89 | Subject transferred to the California Training Facility (CTF). 12-28-89 subject appeared for UCC for his Initial Classification, his custody was assessed as Close B, and he was placed on the support Services/Vocational waiting list. On 4-5-89 subject appeared before UCC for special Review, and he was placed on the Textile waiting list. On 12-30-89 subject was placed in Administrative Segregation per 114D after he reported that he had an enemy situation and his custody was increased to Maximum "B". On 1-4-90, subject appeared before FCC for Initial Review; he was retained in Ad Seg, pending investigation. On 2-1-90, subject appeared before FCC for a 30 day Ad-Seg review, subject was retained in Ad Seg, and his case was referred to the CSR with recommendations for transfer with an alternative Level three placement at Corcoran or Sierra Conservation Corps. |
| 03-16-90 | Subject was transferred to Corcoran. On 3-23-90 subject appeared for his Initial Classification, his custody was reduced to Close B, and he was placed on the work waiting list. On 4-11-90 subject appeared before Annual Review and he requested an assignment change to the PIA Textiles waiting list, and UCC elected to honor that request. On 6-5-90 subject was assigned to PIA. On 4-1-91, subject was placed in Ad Seg per CDC 114D after subject requested placement Ad Seg as he claimed threats were made against his life. On 4-2-91 subject appeared before ICC for Classification, his custody was reduced to Close B, subject was released from Ad-Seg, and moved to another building in Facility B. On 4-15-91 subject requested to be assigned to PIA, UCC was held in-absentia. On 12-6-91, subject was assigned as Porter. On 1-24-92 subject appeared before the Board of Prison Terms, for his 1st progress report. On 2-5-92 subject appeared for Annual Review/Post Board Review, and he was assigned as a clerk. On 7-29-02 subject appeared before UCC for custody reduction, UCC elected to refer the subject to ICC with a recommendation to reduce custody to Medium A. On 8-7-92 subject appeared before ICC and his custody was reduced to Medium A. On 1-28-93 subject appeared before UCC for annual /special |

| | |
|---|---|
| | Review, UCC elected to refer his case to the CSR with recommendations to transfer to California Training Facility (CTF) II. |
| 03-01-93 | Subject was transferred to CTF. On 3-10-93 subject appeared for Initial Classification, custody re-affirmed at Medium A and subject was placed on the support services waiting list as a Clerk. On 2-10-94 subject appeared for Annual Review, his case was referred to the CSR with recommendations San Quentin II/Asp II. |
| 03-24-94 | Subject transferred to San Quentin. On 4-7-94 subject appeared for Initial Classification and he was placed on the PIA waiting list. On 4-15-94 subject was assigned to PIA. On 12-9-94, subject appeared before the BPT for his documentation hearing. On 12-21-94, subject appeared before UCC for Post Board Review, with no program changes noted. On 3-4-98, subject appeared before UCC for Annual Review; his case was referred to the CSR with recommendation of transfer to Avenal State Prison (ASP) II or retention at San Quentin (SQ) II. On 3-7-00, subject appeared for Annual Review with program changes; he was assigned as a Reception Center Clerk. On 6-20-01, subject appeared before BPT for Parole Hearing, and his parole was denied for 2 years. On 6-26-01, subject appeared for Post Board Review, with no program changes. On 3-6-02 subjects case was reviewed in absentia by UCC for Annual Review, with no program changes noted. On 3-13-05 subjects case was reviewed in absentia by UCC for Annual Review, with no program changes noted. On 6-25-03, subject appeared for Post Board Review, with no program changes. His case was referred to ICC for a DRB. On 7-25-03 subject appeared before ICC. ICC ordered that a DRB be completed. On 3-11-04 subjects case was reviewed in absentia by UCC for Annual Review, with no program changes noted. On 3-10-05 subject appeared before UCC for an Annual Review, with no program changes noted. On 01-26-06 subject appeared for Post Board Review, with no program changes. Subject remains in San Quentin general population, assigned to the hospital as a clerk, with no work supervisor reports noted. |

C. **Therapy & Self-Help Activities:**

| Date | Activity |
|---|---|
| 12-31-97 | Alternatives to Violence Program (AVP) |
| 06-30-99 | Gavel Club |
| 08-09-02 | Hepatitis C Workshop |
| 10-10-02 To 11-03-05 | Vietnam Veterans Group San Quentin (VVGSQ) (currently an active member) |
| 03-28-03 | Hepatitis C/HIV Workshop |
| 07-07-03 To 11-13-05 | Veterans Issue Group (VIG) (currently an active member) |
| 10-11-04 | KAIROS |

| 12-27-04 | Advanced Communications Skills |
|---|---|
| 04-17-05 | Working with Anger |
| 07-05-05 | Self Esteem |
| 07-14-05 | Parenting Skills |
| 09-05-05 | Meditation |
| 09-15-05 | Real Choices |
| 09-15-05 | Choices (Co-dependency) |
| 09-19-05 To 02-15-06 | Real Choices (currently an active member) |
| 10-13-05 | Criminal Thinking |
| 10-19-05 | Real Choices |
| 11-03-05 | Relapse Awareness |
| 12-19-05 | Parenting Skills |
| 01-01-06 | Operation Mom |
| 02-06-06 | Operation Mom |

Laudatory Chronos

| Date | Comments |
|---|---|
| 06-02-92 | Clerical Skills |
| 07-21-92 | MAC Representative |
| 02-28-93 | Clerical Skills |
| 11-23-94 | Work Ethics-Furniture Factory |
| 03-12-98 | PIA Furniture Factory Leadman |

Certificate of Excellence from PIA for outstanding grades and work supervisor reports dated 8-7-02.

Certificate of Completion project IMPACT "What is a Man", module 1, July 10, 2006.

Certificate of Completion as a facilitator for REAL CHOICES, undated.

Academics:

| Date | Course |
|---|---|
| 09-21-99 | Music Appreciation, MUS 212 |
| 01-26-04 | Communications, COM 146 |
| 06-24-04 | Reading and Composition, English 101 |
| 10-06-04 | Introduction to Literature, English 102 |
| 05-31-05 | Critical Thinking, English 243 |
| 08-23-05 | Sociology, SOC 230 |
| 09-13-05 | Sociology |
| 07-06-06 | Ethics, PHL 263 |

SANDERS                E-05222              CSP-SQ    SUB    SEPTEMBER 2006

Sanders is currently attending Patten University and working toward his AA Degree. He is currently enrolled in Biology, BIO 151, the final will be held on 8/4/06.

D. **Disciplinary History:**

Sanders has one CDC128A custodial counseling chrono dated 3-22-91. There are no CDC115's in the file.

IV. **FUTURE PLANS:**

A. **Residence:**

Sanders plans to parole to his son, Michael L. Sanders and daughter, Carrie Lynn Sanders home in Flagstaff, Arizona. Sanders does not have a residence, friends, or family in the State of California, and he will have no support if he paroles in California.

Sanders has applied and been accepted to the Sword to Plowshares, 2 year residential drug and alcohol Program. Acceptance letter dated 12/05/05.

Sanders has also been accepted to Menlo Park, a half way house for discharged veterans, their goal is to help veterans get their lives on track. Acceptance letter dated 04/14/06.

B. **Employment:**

Sanders indicates he has a railroad pension of $798.00 per month and he also indicates at the age of 62 he will receive Social Security $796.00 per month. Sanders provided documentation to support this. He indicates that he has contacted the San Bernardino Rehabilitation Center, Jericho Outreach, San Bernardino Employment Services, San Bernardino Homeless Coalition, and Social Security. Sanders is at retirement age, but claims to have experience at many different types of skills, and could find a job if he needed to. His work reports reflect above average to exceptional ratings and they indicate that he is a reliable hard worker.

V. **SUMMARY:**

A. Sanders has been disciplinary free since his incarceration. He conducts himself in a professional, and direct manner. He has taken advantage of some of the self-help and therapy afforded him. He is interested in furthering his education and is taking college classes. Sanders accepts responsibility for his crime, expresses that he could have handled the situation differently, and is remorseful of the choices he made. Sanders has not shown any violent tendencies during his incarceration. His work reports reflect that he handles responsibility well, this is evident by him being place in the lead man position in PIA. Sanders has strong family support in Arizona. Sanders has applied to the Western Interstate Corrections Compact and has been approved to

SANDERS             E-05222           CSP-SQ    SUB    SEPTEMBER 2006

      transfer to Arizona where his family resides, he is #5 on the list as of 4/3/06. Prior to release Sanders would benefit by continuing participation in self-help/therapy, and continuing with his College Classes and remaining disciplinary free..

B.    This report is based upon an extensive review of the central file, a personal interview with Sanders, and routine casework contact.

C.    Sanders was afforded the opportunity to conduct an Olsen Review of his Central File on 08/01/06 and refused . This is documented on a CDC 128B dated 08/01/06 located in the General Chrono section of the central file.

D.    No accommodations were required per the Armstrong vs. Davis BPT Parole Proceedings Remedial Plan (ARP) for effective communication.

| SANDERS | E-05222 | CSP-SQ | SUB | SEPTEMBER 2006 |

PAGE 7 OF 8

_V. Zanni, CCI 8/11/06_
V. Zanni
Correctional Counselor I

_K. Belshaw (signature)_
K. Hilliard
Correctional Counselor II (A)

_C. Belshaw (signature)_
C. Belshaw
Correctional Counselor III, C&PR

BOARD OF PRISON TERMS　　　　　　　　　　　　　　　　　　　　　　STATE OF CALIFORNIA
# LIFE PRISONER: POSTCONVICTION PROGRESS REPORT

- [ ] DOCUMENTATION HEARING
- [x] PAROLE CONSIDERATION HEARING
- [ ] PROGRESS HEARING

**INSTRUCTIONS**
TO CDC STAFF:　DOCUMENT EACH 12-MONTH PERIOD FROM THE DATE THE LIFE TERM STARTS TO PRESENT.
TO BPT STAFF:　FOR EACH 12-MONTH INCREMENT APPLY THE GUIDELINES UNDER WHICH THE PAROLE DATE WAS ORIGINALLY ESTABLISHED, i.e., 0-2 MONTHS FOR PBR AND 0-4 MONTHS FOR BPT. SEE BPT §§2290 - 2292, 2410 AND 2439.

| POSTCONVICTION CREDIT | | | REASONS |
|---|---|---|---|
| YEAR | BPT | PBR | |
| 5/2/05 To 5/1/06 | | | **Placement:** San Quentin General Population, level II. **Custody/Classification:** Med A, Classification score 19. Post Board Review 1/26/06, continue present program. **Academics:** Sanders is currently attending Patten University and has completed 21 units towards his Associate of Arts degree. Critical Thinking 5/31/05, Sociology 9/13/05, Ethics, 7/6/06 **Work Record:** Assigned to the infirmary as a Sergeants Clerk. There are currently no work supervisors reports noted. **Group Activities:** Remains involved in Real Choices 9/19/05 (member for the past calendar year), 10/19/05, 12/19/05, 2/15/06 (Codependency), CHOICES 9/15/05, Working with Anger 4/17/15, VVGSQ 10/3/05, 11/3/05 (Relapse Awareness), 1/1/06, 2/6/06 (Operation Mom), 11/13/05, VIG 10/3/05, 7/5/05, 7/21/05 (Parenting Skills) 12/19/05, Meditation 9/5/05. **Psychiatric Treatment:** None. **Prisoner Behavior:** Remains disciplinary free. **Other:** 12/5/05 Sanders has been accepted to the Swords to Plowshares 2 year residential drug and alcohol treatment program. Sanders has applied to the WICC and has been approved to transfer to Arizona where his family resides, he is #5 on the waiting list as of 4/3/06. |
| V. Danni, CCI | | | 8/16/06 |

SANDERS　　　　　　　E-05222　　　　　　　CSP-SQ　　　　　　　SUB 3　　　　　　　MAY 2006

BPT 1004 (REV.7/86)　　　　　　　　　　　　　　　PAGE 1 OF 2

| POSTCONVICTION CREDIT | | | REASONS |
|---|---|---|---|
| YEAR | BPT | PBR | |
| 5/2/06 To Present (8/11/06) | | | **Placement:** San Quentin General Population, level II. <br> **Custody/Classification:** Med A, Classification score 19. <br> **Academics:** Currently enrolled in Patten University. <br> **Work Record:** Assigned to the infirmary as a Sergeants Clerk. There are currently no work supervisors reports noted. <br> **Group Activities:** None. <br> **Psychiatric Treatment:** None. <br> **Prisoner Behavior:** Remains disciplinary free. <br> **Other:** None. |

| CORRECTIONAL COUNSELOR SIGNATURE | DATE |
|---|---|
| U. Ciammi, CC1 | 8/16/06 |

ORDER:
- [ ] BPT date advanced by _____ months.
- [ ] PBR date advanced by _____ months.
- [ ] BPT date affirmed without change.
- [ ] PBR date affirmed without change.

SPECIAL CONDITIONS OF PAROLE:
- [ ] Previously imposed conditions affirmed.
- [ ] Add or modify _____

- [ ] Schedule for Progress hearing on appropriate institutional calendar.

SANDERS               E-05222               CSP-SQ               SUB 3               MAY 2006

BPT 1004 (REV.7/86)                         PAGE 2 OF 2

BOARD OF PRISON TERMS  
STATE OF CALIFORNIA  
**LIFE PRISONER: POSTCONVICTION PROGRESS REPORT**

☐ DOCUMENTATION HEARING  
☐ PAROLE CONSIDERATION HEARING  
☐ PROGRESS HEARING

**INSTRUCTIONS**
TO CDC STAFF: DOCUMENT EACH 12-MONTH PERIOD FROM THE DATE THE LIFE TERM STARTS TO PRESENT.
TO BPT STAFF: FOR EACH 12-MONTH INCREMENT APPLY THE GUIDELINES UNDER WHICH THE PAROLE DATE WAS ORIGINALLY ESTABLISHED, i.e., 0-2 MONTHS FOR PBR AND 0-4 MONTHS FOR BPT. SEE BPT §§2290 - 2292, 2410 AND 2439.

| POSTCONVICTION CREDIT | | | REASONS |
|---|---|---|---|
| YEAR | BPT | PBR | |
| 5/2/05 To Present (4/3/06) | | | **Placement:** San Quentin General Population, level II <br><br> **Custody/Classification:** Med A, Classification score 19. Post Board Review 1/26/06, continue present program. <br><br> **Academics:** Sanders is currently attending Patten University and has completed 21 units towards his Associate of Arts degree. Critical Thinking 5/31/05, Sociology 9/13/05, Ethics (currently enrolled). <br><br> **Work Record:** Assigned to the infirmary as a Sergeants Clerk. There are currently no work supervisors reports noted. <br><br> **Group Activities:** Remains involved in Real Choices 9/19/05 (member for the past calendar year), 10/19/05, 12/19/05, 2/15/06 (Codependency), CHOICES 9/15/05, Working with Anger 4/17/15, VVGSQ 10/3/05, 11/3/05 (Relapse Awareness), 1/1/06, 2/6/06 (Operation Mom), 11/13/05, VIG 10/3/05, 7/5/05, 7/21/05 (Parenting Skills) 12/19/05, Meditation 9/5/05. <br><br> **Psychiatric Treatment:** None <br><br> **Prisoner Behavior:** Remains disciplinary free <br><br> **Other:** 12/5/05 Sanders has been accepted to the Swords to Plowshares 2 year residential drug and alcohol treatment program. Sanders has applied to the WICC and has been approved to transfer to Arizona where his family resides, he is #5 on the waiting list as of 4/3/06. |

CORRECTIONAL COUNSELOR SIGNATURE _Vanni CC1_   DATE 4/3/06

**ORDER:**
☐ BPT date advanced by _____ months.    ☐ BPT date affirmed without change.
☐ PBR date advanced by _____ months.    ☐ PBR date affirmed without change.

**SPECIAL CONDITIONS OF PAROLE:**
☐ Previously imposed conditions affirmed.
☐ Add or modify _____

☐ Schedule for Progress hearing on appropriate institutional calendar.

SANDERS       E-05222       CSP-SQ       SUB 3       MAY 2006

BPT 1004 (REV.7/86)                PAGE 1 OF 1