# EXHIBIT E

1   SUPERIOR COURT
    COUNTY OF SAN BERNARDINO
2   Department No. S-12
    351 North Arrowhead Avenue
3   San Bernardino, California 92415-0240

                                                    F I L E D
                                                 SUPERIOR COURT
                                            COUNTY OF SAN BERNARDINO
                                              SAN BERNARDINO DISTRICT

                                                  JUL 0 3 2007

                                            BY 
                                                                    DEPUTY

7              IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

8                   FOR THE COUNTY OF SAN BERNARDINO

9                        SAN BERNARDINO DISTRICT

11  In re the Petition of                )   Case No. WHCSS009380
                                         )
12      GREGORY SANDERS,                 )   ORDER DENYING PETITION
                                         )   FOR WRIT OF HABEAS CORPUS
13                                       )
    For Writ of Habeas Corpus.           )
14  _____)

16          The Petitioner filed his writ of habeas corpus in this court on April 9, 2007.

17          Therein, the Petitioner contends that:

18      1.  He was improperly found unsuitable for parole.

19          The court has reviewed the informal response filed by Respondent on June 5,

20  2007 and the informal reply filed by Petitioner on June 11, 2007.

21          Petitioner's writ of habeas corpus sets forth five contentions to set aside the

22  parole boards finding of unsuitability for parole in the proceedings that were held on

23  September 21, 2006.

24          Petitioner first contends that the board used the wrong standard of "some

25  evidence" to find that he is presently a danger to society and further that there is no

26  evidence to support this finding.  The second argument is that the board used elements

27  that we either dismissed or not found true by the jury.  The third contention is that the

28  board's decision was based upon state regulations that are intolerably vague, arbitrary

1   and discriminatory. The forth contention is that the board predetermined its parole

2   consideration. And finally he argues that the denial of parole violated his plea

3   agreement. A review of the agreement reveals that there was no specific term agreeing

4   to the consideration of a finding of suitability for parole at any particular time in the

5   future.

6       The Petitioner was received within the Department of Corrections on January 5,

7   1989 with a minimum eligibility parole date of October 1, 1998. The Petitioner had been

8   convicted of a violation of Penal Code § 187(a), murder in the 2nd degree with the use of

9   a firearm. He was sentenced to 16 years to life in state prison. The Petitioner has

10  apparently had three prior parole hearings on September 29, 1997, June 20, 2001 and

11  June 18, 2003.

12      At the time of the convicted crime, the Petitioner was separated from his wife.

13  On the day of the killing, Petitioner was apparently staying with his mother-in-law in her

14  mobile home. On the day of the murder, Petitioner left the mobile home then returned

15  and went to the bedroom which his wife and her then boyfriend, Larry Stinbring were

16  sharing. He shot both his wife and Mr. Stinbring and when his mother-in-law heard the

17  shots she went into the bedroom where she observed Petitioner shooting Mr. Stinbring

18  a second time and then his wife. Mr. Stinbring died at the scene.

19      The Petitioner's version of the murder was detailed and he blamed the shooting

20  on the fact that the victim laughed at him. He told the board that he shot his wife out of

21  anger.

22      The last and most definitive word on the area of law controlling judicial review of

23  Board of Parole Hearings decisions denying a finding of suitability for parole has been

24  set forth by our Supreme Court in the decisions of In re Rosenkrantz, (2002) 29 Cal 4th

25  616 and In re Dannenberg, (2005) 34 Cal 4th 1061. Penal Code § 3041(b) provides for

26  parole review of inmates such as Petitioner and further provides that such inmates shall

27  be given a release date unless the board determines that the gravity of the current

28  convicted offense is such that consideration of the public safety requires a more lengthy

1  period of incarceration.  California Code of Regulations, Title 15, Section

2  2402(a)(b)(c)(d) sets forth the rules by which the board is to make its determination.  As

3  stated by the court, parole applicants have an expectation of being granted parole

4  unless the board finds in the exercise of its discretion that the applicant is unsuitable.

5      The operative words are "in the exercise of its discretion".  Judicial review of this

6  discretion is limited only to a determination of whether there is "some evidence" in the

7  record to support the decision.  As held by our Supreme Court, this standard of "some

8  evidence" is extremely differential.

9      A reviewing court is prohibited from conducting an independent assessment of

10  the merits or considering whether substantial evidence supports the findings of the

11  board and its underlying decision.  The board is required to consider that Petitioner's

12  background, his institutional participation, post parole plans, as well as psychological

13  evaluations.  The Supreme Court held however that the nature of the inmate's offense,

14  alone, could constitute a sufficient basis for denying parole.  This does not permit the

15  paroling authority to automatically exclude parole for individuals who have been

16  convicted of a particular type of offense.

17      A review of the record supports a finding that there was "some evidence" which

18  led the board to its finding of unsuitability of the Petitioner for parole, for as our Supreme

19  Court has described such evidence, it need only be a "modicum" of evidence.

20  The board did consider the positive factors which favored parole and made its

21  findings that these did not outweigh the factors surrounding the circumstances of the

22  crime.  While the decision did not reflect the weighing process of the board, the

23  Rosenkrantz case at page 677 clearly states that the board need not explain its decision

24  or the precise manner in which the specific facts were relevant to parole suitability.  This

25  consideration and balancing lay within the discretion of the board.  The board found that

26  the Petitioner was not yet ready for parole as he would pose an unreasonable risk to

27  society.  The board found that the Petitioner's parole plans were unrealistic in that he

28  intended to retire and go fishing and live off his children.  The board recommended that

1   he develop some realistic parole plans and demonstrate that he would be able to

2   support himself. The board further found that the offense was carried out in a cruel and

3   callous manner and in this the court agrees. The court further agrees with the board in

4   its classification of the killing as being an execution style murder.

5          The board viewed the Petitioner's prison conduct and commended him for not

6   receiving any CDC 115's and having received only one CDC 128 in March of 1991. The

7   board was concerned that the Petitioner had been in prison for 18 years and had not

8   developed any type of vocation. The board recommended that the Petitioner develop

9   some skills. The board considered the psychological report of Dr. Frances dated in

10  March of 2006 and commented on the Petitioner's poor performance on his GAF test.

11         He was obvious from a reading from the proceedings in the board's decision that

12  the Petitioner did not make a good impression with the board and that the board

13  considered his attitude to be somewhat flippant.

14         This court finds that there was more than "some evidence" to justify the finding of

15  unsuitability of Petitioner for parole and a two year denial on that finding.

16         The petition for writ of habeas corpus is denied.

17

18  Dated this _3_ day of July, 2007.

19

20

21  BRIAN S. McCARVILLE
22  Judge of the Superior Court

23

24

25

26

27

28

MC-275

| Name | GREGORY SANDERS |
|---|---|
| Address | SAN QUENTIN STATE PRISON |
| | SAN QUENTIN, CA 94974 |

**DUPLICATE**

CDC or ID Number     E-05222

## CALIFORNIA SUPERIOR COURT

## IN AND FOR THE COUNTY OF SAN BERNARDINO
*(Court)*

GREGORY SANDERS,
Petitioner

vs.

ROBERT AYERS, Warden,
Respondent

**PETITION FOR WRIT OF HABEAS CORPUS**

No. _____
*(To be supplied by the Clerk of the Court)*

### INSTRUCTIONS – READ CAREFULLY

- If you are challenging an order of commitment or a criminal conviction and are filing this petition in the Superior Court, you should file it in the county that made the order.

- If you are challenging the conditions of your confinement and are filing this petition in the Superior Court, you should file it in the county in which you are confined.

- Read the entire form *before* answering any questions.

- This petition must be clearly handwritten in ink or typed. You should exercise care to make sure all answers are true and correct. Because the petition includes a verification, the making of a statement that you know is false may result in a conviction for perjury.

- Answer all applicable questions in the proper spaces. If you need additional space, add an extra page and indicate that your answer is "continued on additional page."

- If you are filing this petition in the Superior Court, you need file only the original unless local rules require additional copies. Many courts require more copies.

- If you are filing this petition in the Court of Appeal, file the original and four copies.

- If you are filing this petition in the California Supreme Court, file the original and thirteen copies.

- Notify the Clerk of the Court in writing if you change your address after filing your petition.

- In most cases, the law requires service of a copy of the petition on the district attorney, city attorney, or city prosecutor. See Penal Code section 1475 and Government Code section 72193. You may serve the copy by mail.

Approved by the Judicial Council of California for use under Rules 56.5 and 201(h)(1) of the California Rules of Court [as amended effective January 1, 1999]. Subsequent amendments to Rule 44(b) may change the number of copies to be furnished the Supreme Court and Court of Appeal.

Form Approved by the
Judicial Council of California
MC-275 (Rev. January 1, 1999)

PETITION FOR WRIT OF HABEAS CORPUS

Penal Code, § 1473 et seq.;
Cal. Rules of Court, rules 56.5, 201(h)

This petition concerns:

| | |
|---|---|
| [ ] A conviction | [X] Parole |
| [ ] A sentence | [ ] Credits |
| [ ] Jail or prison conditions | [ ] Prison discipline |
| [X] Other (specify): Denial of Parole. | |

1. Your name: Gregory Sanders

2. Where are you incarcerated? San Quentin State Prison, San Quentin, CA. 94974

3. Why are you in custody? [X] Criminal Conviction  [ ] Civil Commitment

*Answer subdivisions a. through i. to the best of your ability.*

a. State reasons for civil commitment or, if criminal conviction, state nature of offense and enhancements (for example, "robbery with use of a deadly weapon").
Murder 2nd with use of deadly weapon.

b. Penal or other code sections: Penal Code § 187/12022(B)

c. Name and location of sentencing or committing court: San Bernardino County Superior Court.

d. Case number: SBD BCR 1231

e. Date convicted or committed: 2-01-88

f. Date sentenced: December 1988

g. Length of sentence: 15 years to life plus one year for enhancement.

h. When do you expect to be released? MEPD is set at 10-01-98

i. Were you represented by counsel in the trial court? [X] Yes.  [ ] No.  If yes, state the attorney's name and address:
John Crouch, 14369 Park Ave., Victorville, ca. 92392

4. What was the LAST plea you entered? *(check one)*
[ ] Not guilty  [XX] Guilty  [ ] Nolo Contendere  [ ] Other: _____

5. If you pleaded not guilty, what kind of trial did you have?
[ ] Jury  [ ] Judge without a jury  [ ] Submitted on transcript  [ ] Awaiting trial

DUPLICATE

6.  GROUNDS FOR RELIEF

Ground 1:  State briefly the ground on which you base your claim for relief. For example, "the trial court imposed an illegal enhancement." (If you have additional grounds for relief, use a separate page for each ground. State ground 2 on page four. For additional grounds, make copies of page four and number the additional grounds in order.)

SEE PAGES ATTACHED 1-8

a.  Supporting facts:

Tell your story briefly without citing cases or law. If you are challenging the legality of your conviction, describe the facts upon which your conviction is based. If necessary, attach additional pages. CAUTION: You must state facts, not conclusions. For example, if you are claiming incompetence of counsel you must state facts specifically setting forth what your attorney did or failed to do and how that affected your trial. Failure to allege sufficient facts will result in the denial of your petition. (See In re Swain (1949) 34 Cal.2d 300, 304.) A rule of thumb to follow is: who did exactly what to violate your rights at what time (when) or place (where). (If available, attach declarations, relevant records, transcripts, or other documents supporting your claim.)

SEE ATTACHED PAGES

b.  Supporting cases, rules, or other authority (optional):

(Briefly discuss, or list by name and citation, the cases or other authorities that you think are relevant to your claim. If necessary, attach an extra page.)

SEE ATTACHED PAGES

7. Ground 2 or Ground ___2___ (*if applicable*):

SEE ATTACHED PAGES 9-13

FOR CONTENTION 3 SEE ATTACHED PAGES 13-20

FOR CONTENTION 4 SEE ATTACHED PAGES 21-23

FO. CONTENTION 5 SEE ATTACHED PAGES 23-28

a.  Supporting facts:

SEE ATTACHED PAGES

b.  Supporting cases, rules, or other authority:

SEE ATTACHED PAGES

8. Did you appeal from the conviction, sentence, or commitment? ☐ Yes. ☒☒ No. If yes, give the following information:

   a. Name of court ("Court of Appeal" or "Appellate Dept. of Superior Court"):

   b. Result: _____ c. Date of decision: _____

   d. Case number or citation of opinion, if known: _____

   e. Issues raised: (1) _____

      (2) _____

      (3) _____

   f. Were you represented by counsel on appeal? ☐ Yes. ☐ No. If yes, state the attorney's name and address, if known:

9. Did you seek review in the California Supreme Court? ☐ Yes. ☒☒ No. If yes, give the following information:

   a. Result: _____ b. Date of decision: _____

   c. Case number or citation of opinion, if known: _____

   d. Issues raised: (1) _____

      (2) _____

      (3) _____

10. If your petition makes a claim regarding your conviction, sentence, or commitment that you or your attorney did not make on appeal, explain why the claim was not made on appeal:

   N/A

11. Administrative Review:

   a. If your petition concerns conditions of confinement or other claims for which there are administrative remedies, failure to exhaust administrative remedies may result in the denial of your petition, even if it is otherwise meritorious. (See *In re Muszalski* (1975) 52 Cal. App.3d 500 [125 Cal. Rptr. 286].) Explain what administrative review you sought or explain why you did not seek such review:

   There is no review for this issue.

   Administrative remedies repealled

   b. Did you seek the highest level of administrative review available? ☒☒ Yes. ☐ No.
   *Attach documents that show you have exhausted your administrative remedies.*

12. Other than direct appeal, have you filed any other petitions, applications, or motions with respect to this conviction, commitment, or issue in any court? ☐ Yes. If yes, continue with number 13. ☒ No. If no, skip to number 15.

13. a. (1) Name of court: _____

    (2) Nature of proceeding (for example, "habeas corpus petition"): _____

    (3) Issues raised: (a) _____

                (b) _____

    (4) Result (Attach order or explain why unavailable): _____

    (5) Date of decision: _____

  b. (1) Name of court: _____

    (2) Nature of proceeding: _____

    (3) Issues raised: (a) _____

                (b) _____

    (4) Result (Attach order or explain why unavailable): _____

    (5) Date of decision: _____

  c. For additional prior petitions, applications, or motions, provide the same information on a separate page.

14. If any of the courts listed in number 13 held a hearing, state name of court, date of hearing, nature of hearing, and result:

_____

_____

15. Explain any delay in the discovery of the claimed grounds for relief and in raising the claims in this petition. (See In re Swain (1949) 34 Cal.2d 300, 304.)

    N/A

_____

16. Are you presently represented by counsel? ☐ Yes. ☐ No. If yes, state the attorney's name and address, if known:

    N/A

_____

17. Do you have any petition, appeal, or other matter pending in any court? ☒ Yes. ☐ No. If yes, explain:

    Marin County Superior Court - The Honorable F. D'Opal

    A claim of denial of administrative review by Inmate Appeals. Also, I have

    a habeas petition in this court regarding Petitioner's Board Transcripts.

18. If this petition might lawfully have been made to a lower court, state the circumstances justifying an application to this court:

    This is the appropriate court.

I, the undersigned, say: I am the petitioner in this action. I declare under penalty of perjury under the laws of the State of California that the foregoing allegations and statements are true and correct, except as to matters that are stated on my information and belief, and as to those matters, I believe them to be true.

Date:  April 3, 2007         ▶ _____

                                         (SIGNATURE OF PETITIONER)

REC'D CLS DOCKETING *bd*

MC-275

Name    GREGORY SANDERS

Address    SAN QUENTIN STATE PRISON

SAN QUENTIN, CA 94974

**DUPLICATE**

CDC or ID Number    E-05222

## CALIFORNIA SUPERIOR COURT

## IN AND FOR THE COUNTY OF SAN BERNARDINO

*(Court)*

---

GREGORY SANDERS,

Petitioner

vs.

ROBERT AYERS, Warden,

Respondent

**PETITION FOR WRIT OF HABEAS CORPUS**

No. _____

*(To be supplied by the Clerk of the Court)*

---

### INSTRUCTIONS – READ CAREFULLY

- If you are challenging an order of commitment or a criminal conviction and are filing this petition in the Superior Court, you should file it in the county that made the order.

- If you are challenging the conditions of your confinement and are filing this petition in the Superior Court, you should file it in the county in which you are confined.

- Read the entire form *before* answering any questions.

- This petition must be clearly handwritten in ink or typed. You should exercise care to make sure all answers are true and correct. Because the petition includes a verification, the making of a statement that you know is false may result in a conviction for perjury.

- Answer all applicable questions in the proper spaces. If you need additional space, add an extra page and indicate that your answer is "continued on additional page."

- If you are filing this petition in the Superior Court, you need file only the original unless local rules require additional copies. Many courts require more copies.

- If you are filing this petition in the Court of Appeal, file the original and four copies.

- If you are filing this petition in the California Supreme Court, file the original and thirteen copies.

- Notify the Clerk of the Court in writing if you change your address after filing your petition.

- In most cases, the law requires service of a copy of the petition on the district attorney, city attorney, or city prosecutor. See Penal Code section 1475 and Government Code section 72193. You may serve the copy by mail.

---

Approved by the Judicial Council of California for use under Rules 56.5 and 201(h)(1) of the California Rules of Court [as amended effective January 1, 1999]. Subsequent amendments to Rule 44(b) may change the number of copies to be furnished the Supreme Court and Court of Appeal.

---

Form Approved by the
Judicial Council of California
MC-275 [Rev. January 1, 1999]

**PETITION FOR WRIT OF HABEAS CORPUS**

Penal Code, § 1473 et seq.;
Cal. Rules of Court, rules 56.5, 201(h)

6. GROUNDS FOR RELIEF

**Ground 1:**  State briefly the ground on which you base your claim for relief. For example, "the trial court imposed an illegal enhancement." *(If you have additional grounds for relief, use a separate page for each ground. State ground 2 on page four. For additional grounds, make copies of page four and number the additional grounds in order.)*

SEE PAGES ATTACHED 1-8

a.  Supporting facts:

Tell your story briefly without citing cases or law. If you are challenging the legality of your conviction, describe the facts upon which your conviction is based. *If necessary, attach additional pages.* CAUTION: You must state facts, not conclusions. For example, if you are claiming incompetence of counsel you must state facts specifically setting forth what your attorney did or failed to do and how that affected your trial. Failure to allege sufficient facts will result in the denial of your petition. (See *In re Swain* (1949) 34 Cal.2d 300, 304.) A rule of thumb to follow is: who did exactly what to violate your rights at what time *(when)* or place *(where).* *(If available, attach declarations, relevant records, transcripts, or other documents supporting your claim.)*

SEE ATTACHED PAGES

b.  Supporting cases, rules, or other authority (optional):

*(Briefly discuss, or list by name and citation, the cases or other authorities that you think are relevant to your claim. If necessary, attach an extra page.)*

SEE ATTACHED PAGES

8. Did you appeal from the conviction, sentence, or commitment? ☐ Yes. ☒ No. If yes, give the following information:

   a. Name of court ("Court of Appeal" or "Appellate Dept. of Superior Court"):

   _____

   b. Result: _____  c. Date of decision: _____

   d. Case number or citation of opinion, if known: _____

   e. Issues raised: (1) _____

   (2) _____

   (3) _____

   f. Were you represented by counsel on appeal? ☐ Yes. ☐ No. If yes, state the attorney's name and address, if known:

9. Did you seek review in the California Supreme Court? ☐ Yes. ☒ No. If yes, give the following information:

   a. Result: _____  b. Date of decision: _____

   c. Case number or citation of opinion, if known: _____

   d. Issues raised: (1) _____

   (2) _____

   (3) _____

10. If your petition makes a claim regarding your conviction, sentence, or commitment that you or your attorney did not make on appeal, explain why the claim was not made on appeal:

    N/A

    _____

    _____

11. Administrative Review:

    a. If your petition concerns conditions of confinement or other claims for which there are administrative remedies, failure to exhaust administrative remedies may result in the denial of your petition, even if it is otherwise meritorious. (See *In re Muszalski* (1975) 52 Cal. App.3d 500 [125 Cal. Rptr. 286].) Explain what administrative review you sought or explain why you did not seek such review:

    There is no review for this issue.

    Administrative remedies repealled :

    _____

    _____

    _____

    _____

    _____

    _____

    b. Did you seek the highest level of administrative review available? ☒ Yes. ☐ No.
    *Attach documents that show you have exhausted your administrative remedies.*

CONTENTION

I.

.THE BOARD OF PAROLE HEARINGS IS USING THE WRONG
STANDARD OF EVIDENCE TO DENY PAROLE IN VIOLATION
OF THE STATE AND FEDERAL DUE PROCESS. HOWEVER,
EVEN IF THE SOME EVIDENCE STANDARD IS USED, THERE
IS NO SUCH EVIDENCE TO SUPPORT THE BOARD'S DECISION
THAT PETITOENR **CURRENTLY** POSES AN UNREASONABLE
THREAT TO PUBLIC SAFETY IF RELEASED FROM PRISON.

On September 21, 2006 Mr. Gregory Sanders (Petitioner),

appeared before the Board of Parole Hearings (Board) Petitioner was

denied Parole for two (2) years. The Board stated the following

reasons for their denial:

1. Unrealistic parole plans.

2. The offense was carried out in a specially cruel
   and callous manner.

3. Multiple victims were attacked.

4. The offense was carried out in a execution style
   murder. "You had a loaded gun."

5. The offense was carried out in a manner which
   demonstrate exceptionally callous disregard
   for human suffering and your motive for the
   crime was trivial, very, very trivial.

(Exhibit "A" pp. 74-76)

Under California law, a parole date must be set unless the

panel determines that the "gravity of the current or convicted

offense or offenses, or the timing and gravity of the current or

past convicted offense or offenses is such that consideration of

public safety requires a more lengthy period of incarceration..."

California Penal Code (Cal. P.C.) § 3041(b). The panel must

determine "whether the life prisoner is suitable for release on

parole," and whether "the prisoner will pose an unreasonable risk

of danger to society if released from prison." California Code of Regulations Title 15 (CCR Title 15) § 2402 (a). The panel must consider "all relevant, reliable information," and is guided by circumstances tending to show suitability and usnsuitability for parole. Id. at § 2402 (b)-(d).

There is no question that the only basis for finding a life prisoner unsuitable for parole under California law is that he presents a current threat to public safety. There is no evidence that supports such a finding.

A review of the record in this case shows that by every measure, Petitioner has rehabilitated himself and his potential release presents no danger, much less an unreasonable danger, to the public. The Board's decision is based almost exclusively on the circumstances of the commitment offense, a second degree murder that occurred as a result of significant stress in Petitioner's life, especially after finding out that his wife's lover abused Petitioner's son. Initially, Petitioner was lead to believe that he was going to reconcile with his wife. However, when Petitioner arrived in California his wife tried to proposition Petitioner into a threesome relationship with her and her lover (Exhibit "A" p. 13). Petitioner was already in a stressful situation when he noticed the bruise on his son's arm which sent Petitioner over the edge so to speak, which resulted in Petitioner shooting and killing the victim, and injuring his wife. Exhibit "A" pp. 14-16

Nevertheless, this case dose not even come close to the grave nature in the first degree murder of case of In re Elkins,

144 Cal.App.4h 475 (200), wherein Elkins killed his high school friend, beating him with a bat while he slept in order to rob him. After disposing the body over a remote cliff, he returned to steal the victim's property and robbed the victim's girlfriend as well. The Board, nevertheless, found Elkins suitable for parole and after the Governor reversed that decision, the Court reversed the Governor's decision and set Elkins free. There is no way that it could be said that Petitioner went beyond the element needed to complete the murder when Petitioner did no more than shoot the two victims. "Needlessly striking a robbery victim may of course show an especially heinous, atrocious or cruel robbery, but does not necessarily show an especially brutal first degree murder." The same reasoning could apply here where shooting two victims out of rage could be especially atrocious, but does not show especially brutal for a second degree murder. In the instant case, there was no finding of premeditated murder or that "[t]he murder was especially heinous, atrocious, or cruel," be by a jury or court. These are first degree murder elements and must be found true by jury in order to be used to deny parole or to set an aggravating term for Petitioner. (See Cal. P.C. § 190. 2 (14); and Cunningham v. California, 549 U.S. ___ (2007).) Petitioner was not convicted of having carrying out the crime "in an especially cruel and/or callous manner." (See Exhibit "A" pp. 74-75).

Furthermore, a conviction for murder does not automatically render one unsuitable for parole. In re Smith, (2003) 114 Cal.App. 4th 343, 366. The First Appellate Court District Court

of California states in fn. 11 of In re Scott, 119 Cal.App.4th

343, clearly show that the regulations therefore contemplate that

an inmate **maybe deemed suitable for release** even though his

offense demonstrated exceptionally callous disregard for human

suffering § 2402 (c) (1) (D) The Appellate Court in In re Van

Houten, (2004) 16 Cal.App.4th 339 considered whether or not

Houten's offense by itself justifies denial of parole stating:

> "It does if the offense involves "particularly
> egregious acts beyond the minimum necessary to
> sustain the conviction" for first degree murder
> carrying with it a life sentence with the
> possibility of parole."

There is absolutely no evidence to support the Board's

findings and therefore the Court should find that their decision

is arbitrary and capricious and cannot stand.

The Board also stated that Petitioner's parole plans were

unrealistic because he planned to either parole to a

transitional housing place, or to his children's home, until he

got on his feet, which ever one the Board felt would better suit

Petitioner. Petitioner never claimed to have his children take

care of him until he died. Petitioner, clearly stated that he

would stay with his children until he got on his feet. Petitioner

is a very fortunate man to have children that would inform the

Board that their father could stay with them forever. Petitioner

has steady income from his retirement, also about $6000.00, with

about $800.00 from his professions (Railroad Engineer) pension

plan, and also has several thousands of dollars saved up, an

additional amount in a blind trust.

Furthermore, the Board's finding that Petitioner has not

addressed his needs regarding co-dependency and anger are not true. The Board itself read into the record Petitioner's participation in 18 different programs regarding Self-Esteem, Communications, Vietnam Veterans Group of San Quentin, and other self-help program that deal with these issues. (See Exhibit "B") Petitioner's parole plans to parole to a transitional housing complex also provides programs for addressing Petitioner's needs Exhibit "C."

### A. Some Evidence Does Not Support the Board's Finding Petitioner Unsuitable for Parole.

In <u>Superintendent v. Hill</u>, 472 U.S. 455, the Court held that due process requires a prison disciplinary decision be supported by some evidence. "In a variety of contexts, the Court has recognized that a governmental decision resulting in the loss of any important liberty interest violates due process if the decision is not supported by any evidence." Id. at 455. Indeed, the general rule is that review of agency decisions, including those made by a quasi-judicial officers, is for substantial evidence. (See e.g., Evans v. Charter, 110 F.3d 1480, 1483 (9th Cir. 1997) (review of ALJ findings); Young v. Sullivan, 911 F.2d 180, 183 (9th Cir. 1990) (same).

The state and federal courts have tended to assume that the "some evidence" standard in <u>Hill</u> developed an exception for prison disciplinary hearings, an exception premised on the unique circumstances of prison discipline. No U.S. Supreme Court case, and certainly nothing in Hill, suggest that the "some evidence" standard is appropriate for, or would satisfy due process in parole matters.

The requirements of due process are flexible and depends on
balancing of the interest affected by the relevant government
actions. (See, e.g., <u>Cafeteria Workers v. McElroy</u>, 367 U.S. 866,
895 (1961).) In <u>Hill</u>, the Supreme Court balanced a prisoner's
interest in good time credit against "the distinctive setting of
a prison, where disciplinary proceedings' take place in a closed,
tightly controlled environment.'" 472 U.S. at 454. The Court
rejected the prison's argument that no particular quantum of
evidence should be required in disciplinary proceedings.
Nevertheless, the Court held that because "[p]rison disciplinary
proceedings take place in a highly charged atmosphere, and prison
administrators must often act swiftly on the basis of evidence
that might be insufficient in less exigent circumstances," a
less, rather than more, stringent quantum of evidence satisfied
due process. Id. at 455-56

The Due Process analysis called for, however, weighs
substantially different, on both ends, in the parole setting
context. First, the prisoner's interest is greater. In the prison
disciplinary context, the prisoner stands to lose some days of
good time credit. Because that will delay his release by that
many days, his interest is great; but the decision will not just
delay a prisoner's release by a set number of years; it takes
away all the good time credit earned toward a set prison term,
leaving the very real possibility that the prisoner will spend
many years in prison way beyond his Minimum Eligible Parole
Date ("MEPD") and terms set forth in the Board's own Matrix
guidelines, and perhaps being released only after age has made it

almost impossible for him to gain a quality life, or dying in prison. Thus, the prisoner's side of the due process balancing is substantially weightier than it is in a disciplinary hearing. In the instant case Petitioner is now nearly ten years beyond his MEPD, which is set at October 1, 1998 and with good time credit that he has earned, Petitioner has now served a term beyond the highest term for second degree. (See Exhibit "D" p. 76) just about equivalent to the first degree murder Matrix of 26 years.

"The 'some evidence' standard sends a message to prison inmates as well as society at large that once an individual is convicted of a crime, he is presumed guilty of every subsequent allegation. This message runs contrary to fundamental principles of criminal law in the United States." <u>Carrillo v. Fabian</u>, 701 N.W.2d, 763; 2005 Minn. LEXIS 424. Although the California Courts have not ruled on the matter, the decision by the Supreme Court of Minnesota authenticated the reasoning above. The 'some evidence standard runs contrary to fundamental principles of criminal law in the United States... Taking the Supreme Court's three factors into consideration, we conclude that the 'some evidence standard is inappropriate of use by the DOC at the fact-finding level. We conclude that the 'preponderance of the evidence' standard better protects against an erroneous' deprivation of an inmate's liberty interest in his supervised release date and does not impose an unacceptable burden on the DOC." The Board's decision is supposed to be based on a preponderance of the evidence of parole suitability in the record. **"Good Cause"** is the standard (In re Powell, 45 Cal.3d at

901; In re Brown, (1976) 67 Cal.2d 339, 342: In re McClain,
(1960) 55 Cal.2d 78,87; In re Caswell, (2000) 92 Cal.App.4th
1017, 1024, 1026; In re Clutchette, (1974) 939 Cal.App.3d 561; In
re Monzo, (1973) 33 Cal.App.3d 144, 157; and CCR Title 15 § 2450
"Good Cause" is defined by the Board as "a **preponderance of the
evidence** that there is factual basis and good reason for the
decision made." CCR Title 15 § 2000 (b) (48) (Emphasis added.)

In the final analysis, it may not be necessary for this
Court to determine the quantum of evidence necessary to reverse a
parole date, for even under the "some evidence" standard, the
evidence before the Board does not support the Board's finding
that Petitioner is a current threat to public safety. It is
important to note, however, that even under the "some evidence"
rule, the evidence must bear "some indicia of reliability."
Biggs 334 F.3d at 915; McQuillion, 306 F.3d at 904.

For the aforementioned reasons this Court should grant
petition for writ of habeas corpus, and order the Board to set a
a Petitioner's term within the second degree Matrix relying only
on the elements that were found true by the Jury or admitted to
by Petitioner. The court should also order the Board to
calculate any credit that goes beyond the set term toward his
parole Petitioner has a minimum term of five years on parole, but
the decision to keep him on parole beyond five years can not be
arbitrary and capricious. Therefore if Petitioner's term is set
between 17 to 21 years, and with good time credits, he should be
eligible for parole discharge in a few years.

CONTENTION

II.

THE BOARD OF PAROLE HEARING'S VIOLATED PETITIONER'S
STATE AND FEDERAL RIGHT TO DUE PROCESS AND TRIAL BY
JURY WHEN THEY USED ELEMENTS THAT WERE EITHER
DISMISSED OR NOT FOUND TrUE BY A JURY TO DENY PAROLE
AT HIS SEPTEMBER 21, 2006 PAROLE CONSIDERATION
HEARING, IN VIOLATION OF STATUTORY LAW, AND UNITED
STATES SUPREME COURT'S HOLDINGS

At Petitioner's sixth parole consideration hearing on

September 21, 2006, The Board stated in pertinent part that:

> The offense was carried out in a specially cruel
> and callous manner... Multiple victims
> attacked... The offense was carried out in a
> execution style murder. "You had a loaded gun."
>
> ... The offense was carried out in a manner which
> demonstrate exceptionally callous disregard
> for human suffering and your motive for the
> crime was trivial, very, very trivial...

(Exhibit "A" pp. 73-76)

The record clearly shows that the Board retried Petitioner

in order to use elements and evidence, that were either dismissed

or not presented to a jury, to deny parole. In the instant case,

the record (Exhibit "A" pp. 50-58) the record shows the cross-

examination by deputy district attorney Liu. The Board then used

this cross-examine as evidence to show that the "offense was

carried out in a specially cruel and callous manner." (Exhibit

"A" p. 75) Petitioner was not convicted of having committed the

commitment offense in a" especially cruel" manner. This element

is a first degree murder element (Cal. P.C. § 190.4.). In fact,

the Board clearly stated: "So in your particular case the court

found you guilty of a second degree murder. We're not here to

discus whether that was a first degree murder or manslaughter.

We're hear to discuss circumstances and what have you done." Yet,

this exactly what the Board did when it reexamined the case.
The Board cannot reverse the plea agreement of a second degree
murder, with good conduct credit, Petitioner is within the Matrix
of a first degree murder.

The Board's findings that the commitment offense was
carried out in a especially cruel and callous manner, and very
dispassionate manner, violates both statutory and United States
Supreme Court law. For instance, California Penal Code § 190.2
subsection (14) describes the element used for first degree
murder special circumstances that qualify a defendant for a Life
Without the Possibility for Parole, or Death Penalty is that
"[T]he murder was especially heinous, atrocious, or cruel,
manifesting exception depravity. As used in this section, the
phrase 'especially heinous, atrocious, or cruel, manifesting
exceptional depravity' means a conscienceless or pitiless crime
that is unnecessarily tortuous to the victim." This element must
be found true under Section 190.4 under California Penal Codes.
In a recent ruling, the United States Supreme Court held that:

> The DSL, by placing sentence-evaluating
> factfinding within the judge's province,
> violates a defendant's right to trial by
> jury safeguarded by the sixth and
> Fourteenth Amendment... In all material
> respects, California's DSL resembles the
> sentencing systems invalidated in Blakely and
> Booker. Following the reasoning in those cases,
> the middle term prescribed underCalifornia law,
> not the upper term, is the relevant statutory
> maximum. Because aggravating facts that authorize
> the upper term are found by the judge, and need
> only be established by a preponderance of the
> evidence, the DSL violates the rule of Apprendi.

(Cunningham v. California, DJDAR 1003, 1004.)

In the instant case. Petitioner's minimum term has been set

at 17 years, and according to the Board's own Matrix, his base
term should be set somewhere between 17 years and 19 years. The
Board's regulation allows a one year adjustment in the upward or
lower term than the base term for aggravating and mitigating
circumstances. (CCR Title 15 §§ 2404 and 2405.) In order for
Petitioner's term to be set at life without the possibility of
parole, the elements used to determine that finding must be found
true by a jury. (Cal. P.C § 190.4) Petitioner may also be held in
prison if he continues to break the law while in prison, but
there is no such evidence in this case.

The Board's illegal policy, of retrying cases and using
elements that were not either presented to a jury or dismissed by
the trial court, violates the expressed mandate of California
Penal Code § 3041 (b), which unequivocally states that parole
release shall "normally" be granted.

All murders are by nature violent, horrific, abhorrent and
morally repugnant. But the Legislature decided that in order for
some elements to be used to set a defendant's term to Life
Without the Possibility of Parole, they must be found true by a
jury (Cal. P.C. § 190.4), and that murder per se, is not a
sufficient basis for denying parole. There has to be something
more. Otherwise the statutory provision for indeterminate
sentences would make no sense, as every parole release of a
murderer would then deprecate the seriousness of the crime. If
the seriousness of [Petitioner's] crime had been intended as the
sole criteria by which release was to be measured, there would
have been no reason for Petitioner's original sentence to be

anything but "Life in Prison"

Clearly the laws of California did not contemplate this scenario and it is a violation of state and federal law to resentence Petitioner now that, with the good time credit earned, he has completed a sentence for the most heinous second degree murder described in the Board's Matrix guidelines for setting terms. "[Petitioner] 'has served so much time that, with custody credits, he is within the matrix for first degree murder... [I]t should be self evident that after an inmate has served the equivalent of 25 year, [as in the instant case], whether his actions were more than minimally necessary for a second degree conviction .. is no longer the appropriate question. [The Board's] position, that inmates who were only convicted of second degree may forever be denied parole based on some modicum of evidence that their acts rose to the level of a first, without acknowledging the fact that they have already served the time for a first, should be seen as so ridiculous that simply to state is to refute it." (In re Weider, 2006 DJDAR 15795, 15798.) In this case, because Petitioner was under significant stress in his life and reacted to the possibility of his son being abused by his wife's lover, Petitioner did no more than the minimal necessary to commit the second degree murder.

"Parole eligibility is a facet of a criminal sentence ... and thus the statutes and regulations governing parole eligibility are considered to be part of the law annexed to a crime when it is committed." Warden v. Marrero, 417 U.S. 653, 661-6664 (1974) and Weaver v. Graham, 450 U.S. 24, 32-33 (1981). "[T]he Ex Post

Facto Clause provides a means of assuring that an individual receives fair warning of criminal statutes and the punishments they carry." <u>Weaver</u>, 450 U.S. at 28-30. Here, there is no fair warning that the second degree murder could be reheard/retried at the parole consideration hearing, where a finding that the crime was "calculated" or "especially cruel," can be used to deny parole.

For the foregoing reasons, the Court should find that the Board's retrying of the case and using elements that were not found true by a jury to deny parole violates Petitioner's state and federal due process and order the Board to calculate the time toward Petitioner's minimum 5 year term for parole.

## CONTENTION

### III.

THE BOARD OF PAROLE HEARINGS VIOLATED PETITIONER'S FOURTEENTH AMENDMENT DUE PROCESS RIGHTS BECAUSE ITS DECISION WAS BASED UPON STATE REGULATIONS THAT CONTAINED INTOLERABLE VAGUE CRITERIA THAT INVITE ARBITRARY AND DISCRIMINATORY ENFORCEMENT.

On September 21, 2006, Petitioner appeared before the Board of Parole Hearings for his Sixth parole consideration hearing and was denied parole for two years. The Board based its decision on the factors that were used to deny parole at Petitioner five previous hearings. This Petitioner challenges the September 21, 2006 hearing, and the regulations used to consider parole suitability, and unsuitability.

Specific factors are applicable to the Board's decision as set forth in Cal. P.C. § 3041 and CCR Title 15 § 2402.

The overreaching consideration is "public Safety" and, as

stated in subdivision (b) of Cal. P.C. § 3041, the Board "shall set a release date unless it determines that the gravity of the current convicted offense or offenses or the timing and gravity of the current or past convicted offense or offenses, is such that consideration of public safety requires a more lengthy periodd of incarceration for this individual ..." [emphasis added].

The factors required to be considered by the Board are, for the most part, specified in section 2402 of CCR Title 15, which consists of four subdivisions.

Subdivision (c) specifies six non-exclusive factors tending to show unsuitability. These specified factors are as follows:

1. **Committed Offense** -- If the prisoner committed the offense in an especially heinous, atrocious or cruel manner. (See Cal. P.C. § 190.2 (14) for definition of "especially heinous, atrocious or cruel manner.") The factors to be considered include:

(A) If multiple victims were attacked, injured or killed in the same or separate incident. In this Case, there was one victim who was killed but Petitioner also shot another. Petitioner's actions were as a result of pressure he incurred trying to work things out with his wife and finding a bruise on his sons arm, which possibly was caused by abuse by Petitioner's wife's lover.

(B) The offense was carried out in a dispassionate and calculated manner, such as an execution-style murder. The trial evidence does not demonstrate anything other than a man reacting to the stress caused by the events of attempting to reconcile

with his wife and discovering his sons injury (possibly caused by his wife's lover). Petitioner was not convicted of first degree murder and there is no reasonable evidence that the murder was planned by Petitioner. All murders are dispassionate.

(C) The victim was abused, defiled or mutilated during or after the offense. The victim was shot twice, beyond that, there was no evidence of abuse or mutilation.

(D) The motive for the crime is inexplicable or trivial in relation to the offense. Essentially all murders are inexplicable or trivial in relation to most events that lead up to a killing. IF this were a sole basis for parole, no one in prison for murder would ever be paroled. (See In re Elkins, (2006) ___ Cal.App.4th ___ (filed October 31, 2006).)

2. **Previous Record of Violence** -- There is no reliable evidence on the record of previous violence. Other than a disorderly conduct and a fine back in 1986, Petitioner hardly has anything resembling a criminal history.

3. **Unstable Social History** -- The record does not show an unstable social history. Petitioner has made a bad choice in women, which if anything is to be considered regarding his social life is that he is the one that has suffered abuse. Nevertheless, Petitioner's recent social history includes mentoring "at risk" youth and participating in educational programs, and other self-help programs. He has participated in several self-help programs that deal with his issues that the Board is concerned about, such as anger management, co-dependency and self-esteem. Petitioner has also maintained his family ties. He has "developed

an understanding of the causative factors and culpability for his crime. Petitioner has taken responsibility for his crime.

4. **Sadistic Sexual Offenses** -- This is not applicable to Petitioner.

5. **Psychological Factors** -- There is no reliable evidence that Petitioner had any history of mental problems related to the offense. Dr. Inaba stated that "Mr. Sanders would present a low risk of future violence." Petitioner's issues are not violent prone, rather a bad choice of relationships with women. However, as Dr. Inaba stated "In an environment where he would have checks on his tendency to form intense volatile relationships he would be expected to do so well. Exhibit "A" p. 80

6. **Institutional Behavior** -- Petitioner has no disciplinary write-ups.

Subdivision (d) of section 2402 is a converse of subdivision (c) that specifies nine factors tending to show suitability for release. The factors are:

1. **No Juvenile Recod** -- Petitioner does not have a record.

2. **Stable Social History** -- Petitioner's unstable history is a result of a bad selection of women, Petitioner has never maliciously layed a hand on any of his partners. Petitioner's actions are as a result of an immoral proposition by his wife and discovering that his son may have been abused by his wife's lover. Petitioner was already to move on with his life and only came to California to possibly reconcile with his wife. Even after finding out that his wife had a lover, Petitioner was ready to move on. However, after discovering the bruise on his sons

arm. Petitioner, so to speak lost it. Petitioner then shot his wife's lover and his wife.

3. **Signs of Remorse** -- Petitioner took responsibility of the commitment offense and has shown his remorse through his performance in a litany of acts over the past many years which tend to indicate the presence of remorse or indicating that he understand the nature of the magnitude of his offence. Exhibit "A" p. 19

4. **Motivation for Crime** -- Petitioner's motivation for the crime, as stated several times, is a result of significant stress in his life, as a result of being asked to come to California to possibly reconcile with his wife, just to be invited into a threesome relationship. The stressor sending Petitioner "over the edge was finding the bruise on his sons arm, with the thought he was probably abused by his wife's lover.

5. **Battered Women's Syndrome** -- This does not apply.

6. **Lack of criminal History** -- Petitioner' contact with authorities could hardly be considered criminal history. Exhibit "A" p. 76

7. **Age** -- Petitioner is almost a senior citizen and is retired. Petitioner's age is such that he is not likely to re-offend. Furthermore, Petitioner's offense was a result of significant stress in his life that is not likely to re-occur.

8. **Understanding and Planning for the future** -- Petitioner has made solid plans for the future. First of all, Petitioner has been allocated transitional housing that also deals with his"issues." Petitioner has finances by way of his Railroad

pension, $800.00 a month, $6,000.00 already saved up, property in Tennessee. Also, he has a blind trust that is controlled by his brother, and would be turned to Petitioner once he is paroled. Exhibit "A" p. 42-43 Petitioner has never had any trouble finding employment, nor does he have any vices. Petitioner's circumstance's are not as the stereo-typical prisoner, that lacks education exposed to violence and drugs, raised in an unstable social surrounding environment. Petitioner's profession is a railroad engineer, who has never had a problem finding a job.

The commitment offense that placed Petitioner in prison for the past nineteen years involves killing a man that possibly abused his son. Petitioner pled guilty to his crime and is now within the Matrix for a first degree murder. The commitment offense is a factor indicative of usnsuitability Petitioner cannot change. To simply focus and rehash the commitment offens, as is typical of most letters the Board is accustomed to seeing from law enforcement agencies, is unfair and runs contrary to the rehabilitative goals exposed by the prison system and could result in due process violation. (See In re Weider, 145 Cal. App.4th 470, 585-586 (2006).) The commitment offense can negate suitability, only if circumstances of the crime were reliably established by evidence in the record to rationally indicate that offender will present a current unreasonable risk if released from prison. There is no evidence from the psychiatric evaluation or the counselor's report that support that. Rather, to the contrary, Petitioner has been found to be a low risk of threat to society if released from prison. See Exhibit "E" p.3

Several California state case s have found that the Board's finding that a particular inmate needs additional therapy is contradicted by the record. (See In re Deluna, 126 Cal.App.4th 585, 596 (2005); In re Ramirez, 94 Cal.App. 4th 549, 571 (2001); In re Scott, 119 Cal.App.4th 871, 896-897 (20004).) These cases are applicable here where there is no evidence to support the Board's finding.

The Regulations are Unconstitutionally vague. A statute is void for vagueness if it fails to give adequate notice to people of ordinary intelligence concerning the conduct it proscribes (See Coates v. City of Cincinnati, 402 U.S. 611 (1971)), or if it invites arbitrary and dicriminatory enforcement. (See Papachistou v. City of Jacksonville, 405 U.S. 156, 162 (1972); also Jordan v. De George, 341 U.S. 223, 231-32 (1951). Neither of these strands may be applied mechanically, however, but by a reasoning process. Judgment is necessary to determine "[t]he degree of vagueness that the Constitution tolerate -- as well as the relative importance of fair notice and fair enforcement" and this, in turn, "depends in part on the nature of the enactment." (Village of Hoffman Estate v. Flipside, Hoffman Estates, Inc., 455 U.S,. 489, 498 (1982). The Threshold question in a vagueness challenge is "whether to scrutinize the statute for intolerable vagueness on its face or whether to do so only as the statute is applied in a particular case. (Schwarzmiller v. Gardener, 752 F.2d 1341, 1346 (9th Cir. 1984).)]

Petitioner was denied due process is as far as the regulations are unconstitutionally vague as applied to him.

Petitioner contends that the Regulations are unclear on whether a second degree murder can be deemed "especially heinous, and cruel" to warrant a denial of parole. According to Cal. P.C. § 190.2 subd. (14), this is a special circumstance for first degree murder that qualifies a defendant for a Life Without the possibility of Parole sentence, or the Death Penalty. The regulations are also vague and never addresses the question of: "How many times is the Board allowed to rely on the commitment offense to deny parole?

There is no evidence to support the Board's decision that Petitioner poses a current threat to public safety. The only thing that the records show is that the Board does not follow its own rules and instead retries prisoners in order to use anything the prisoners admit against them, and use the same reason to deny parole as it does in every case, that the crime was "especially callous." The Court should grant the petition and order the Board to provide any hearing decisions transcripts for the period covering September 21, 2005 to September 21, 2006, in order to show that prisoners that were granted parole based on factors showing suitability, were denied parole at their previous hearing. This would show that the Board has turned the Legislative intent, that parole "shall normally" be granted, on its head.

The Board should be ordered to set Petitioner's date and if any time goes beyond the calculated term, it should be calculated toward Petitiorer's five year parole period.

**CONTENTION**

**IV.**

THE BOARD OF PAROLE HEARINGS VIOLATED PETITIONER'S
POTECTED LIBERTY INTEREST RIGHT IN HAVING
PETITIONER'S PAROLE CONSIDERATION
HEARING PREDETERMINED

The Board violated Petitioner's liberty interest rights
when it used it boiler plate reasons to deny Petitioner parole.
In fact, the Board made its decision to deny parole on personal
reasons. The Board did not accept Petitioner's parole plans and
instead of acknowledging that Petitioner had alternate parole
plans, either to stay with his children, or to stay at the
transitional housing offered by the "Swords to Plow Shares" which
deals with, not only drugs and alcohol habits, but also offers
living skills training and anger management. Nevertheless the
Board chose to make the parole consideration hearing personal, as
demonstrated by Commissioner Shelton, when she stated: "Also, you
know, your presentation today kind of got under my skin a little
bit. Your a little bit flip." Commissioner Shelton took it so
personal, she even made an unprofessional opinion when stating
that Petitioner was a little bit flip.

The Board also used the commitment offense, which is an
immutable factor, to deny Petitioner parole. The Board
mischaracterized the offense claiming that it was an execution
style murder. In In re Rosenkrnatz, 29 Cal.App.4th at p. 683 the
court cautioned that to continue to use the commitment offense
would violate Petitioner's liberty interest, unless the commitment
offense was particularly egregious, which compared to
Rosenkrantz's second degree murder case, which he shot the victim

in an execution style manner. Recently  the Federal District
Court for the Eastern District of California in Melvyn H. Coleman
v. Board of Prison Terms, Case No. Civ S-96-0783 LKK PAN P
Findings and Recommendations, found that Coleman was denied his
constitutional right to be heard by an impartial decision-maker.
(See Withrow v. Larkin, 421 U.S. 35, 47, 95 S.Ct. 1456, 43
L.Ed.2d 712 (1975) ("Not only is a biased decision-maker
constitutionally unacceptable but 'our system of law has always
endeavored to prevent even the probability of unfairness.'"
(quoting In re Murchison, 349 U.S. 133, 136, 75 S.Ct. 623, 99
L.3d. 942 (1955)).

     In O'Bremski v. Maas, 915 F.3d 418, 422 (9th Cir. 1990),
the Ninth Circuit has held that a California inmate is "entitled
to havve his release date considered by a Board that [is] free
from bias or prejudice." Furhtermore, concomitant to the
guarantee against arbitrary and capricious state action is the
right to a fact-finder who has not predetermined the outcome of a
hearing. [See, Withrow, supra, 421 U.S. 35 (1975) (a fair trial
in fair tribunal is a basic requirement of due process, and this
rule applies to adiminstrative agencies which adjudicate as well
as to courts) Edwards v. Balisok, 520 U.S. 641 (1997)
(recognizing due process claim based on allegations that prison
disciplinary hearing officer was biased and would suppress
evidence of innocence); Bakalis v. Golembeski, 35 F.3d 318, 326
(7th Cir. 1994) (a decision-making body "that has prejudged the
outcome cannot render a decison that comports with due
process")].

Numerous curts have recognized that the right to a disinterested decision-maker, who has not prejudged the case, is part of the fundamental guarantee against arbitrary and capricious government conduct in the California parole context. The guarantee of neutral parole officials in a suitability hearing is just a fundamental as the right to a neutral judge in a court proceeding. The Ninth Circuit previously has acknowledged California inmates's due process right to parole consideration by neutral decision-makers. (O'Bremesi, supra, at 422) The U.S. Supreme Court clearly held, a decision made by a fact-finder wh has predetermined the outcome is per se invalid -- even where there is ample evidence to support it. (Balisok, 520 U.S. at 648) When the revord is reviewed in it is clear that ther was no legal basis to find Petitioner unsuitable for parole. Therefore this Court should fulfill its judicial duty and findt Petitoner hearing was predetermined as aresult of Board Commissioner' admittance that she felt effected by Petitioner and Petitioner's parole plans to possibly stay with and mooch from his children until he got on his feet.

CONTENTION

V.

THE BOARD'S CONTINUOUS FAILURE TO HONOR
PETITIONER'S PLEA AGREEMENT VIOLATES
STATE AND FEDERAL DUE PROCESS AND EQUAL
PROTECTION OF THE LAW UNDER THE
FOURTEENTH AMENDMENT

Pursuant to a negotiated plea bargain, Petitioner pled guilty to second degree murder and was sentenced to 15 years to life, plus one year for use of a firearm. Plea agreements are

contractual in nature and are measured by contract law standards.
In California, "[a]ll contracts, whether public or private are to
be interpreted by the same rules..." Cal. Civ. Code 1635; (see
Also, Shelton, Cal.4th at 344. A court must first look to the
plain meaning of the agreement's language. United States v.
Keller, (9th Cir. 1990) 902 F.2d 1391, 1393. As with other
contracts, provision of the plea agreements are occasionally
ambiguous and the government must bear responsibility for any lack
of clarity.

Construing ambiguities in favor of the defendant makes
sense in light of the parties' respective bargaining power and
expertise. United States v. De La Fuente, (9th Cir. 1993) 8 F.3d
1333, 1337-1338. Both the State and the defendant must adhere to
the terms of a plea bargain. People v. McClellan, (1993) 6
Cal.4th 367, 375, and both should be held strictly to the terms
of the agreement. People v. Armendariz, (1993) 16 Cal.App.3d
77,70. "A plea agreement is, in essence, a contract between the
defendant and the prosecutor to which the court consents to be
bound." Armendariz, supra, at 911. "When a guilty plea is entered
in exchange for specified benefits such as the dismissal of
other counts or an agreed maximum punishment, both parties.
including the state, must abide by the terms of the agreement."
People v. Walker, (1993) 13 Cal.3d 1013, 1024.

The harmless error test is inapplicable to a situation
involving failure to fulfill the terms of a plea bargain) People
v. Mikhail, (1993) 13 Cal.App.4th 846, 850), since a court can
only speculate as to why a defendant would negotiate for a

particular term of a bargain, and a defendant's entitlement to the benefit of his bargain cannot be predicated on the assumption that violation of the bargain must result in some measurable detriment. People v. Bounds, (1987) 194 Cal.App.3d 1574, 1578. Moreover, the concept of harmless error only addresses whether the defendant prejudiced by the error, while in the context of a broken plea agreement, there is at stake the honor of the government, public confidence in the fair administration of justice, and the efficient administration of justice. People v. Manceno, (1982) 32 Cal.3d 85, 866. The reciprocal nature of a plea bargain agreement mandate that either party to the agreement is entitled to enforce the agreement in a situation where the party to the agreement is deprived of the benefit of the bargain. People v. Collins, (1996) 45 Cal.App.4th 849, 863. When a guilty or nolo contendre plea is entered in exchange for specified benefits such as the dismissal of other counts or an agreed maximum punishment, both parties, including the State, must abide by the terms of the agreement. (People v. Aparicio, (1994) 74 Cal.App.4th 286, 289.)

Thus, where a defendant has given up a valuable constitutional right or otherwise detrimentally relied upon the promises made in the plea bargain and the agreement is violated by the State, the defendant may elect to specifically enforce that agreement. People v. Leroy, (1984) 55 Cal.App.3d 602, 606-607; People v. Rutledge, (1982)140 Cal.App.3d 955, 963; Santobello v. New York, (1971) 404 U.S. 2257, 263. The State, (San Bernardino County District Attorney's Office) and the Board

violated the plea bargain agreement (contract) when the Board
sent a "Notice of Hearing" to the San Bernardino District
Attorney's Office, and the district attorney opposed parole as a
response to the notice. Although the Board knew this case was a
plea bargain case, the Board proceeded to deny Petitioner parole
anyway, stating, "With regards to 3042 notices I indicated to you
obviously the District Attorney's Office from San Bernardino is
in opposition to parole ..." The San Bernardino District Attorney
violated the plea bargain agreement when it opposed parole.

Just as a contractual agreement bars the parties from
changing the agreed upon terms, any future tampering by either
party violates the agreement. Petitioner never foresaw that the
district attorney would entrap Petitioner, by agreeing to plea
bargain with Petitioner and then continuously keep opposing
parole to keep Petitioner incarcerated far beyond the term he
would become eligible for parole. Petitioner must receive
consideration of value. The mere opportunity to appear before a
second tribunal that historically maximizes punishment for 99% of
those under its jurisdiction is not actual consideration. It is
not the less severe punishment system lenience [or] lessened
punishment" owed by the state to Petitioner. (See Victoria v.
Supreme Court, (1985) 40 Cal.3d 638, 639, 645, noting that
"[h]however broad may be the terms of a contract, it extends only
to those things concerning what it appears that [both] the
parties intended to contract.") In U.S. v. De La Fuente, (9th
Cir. 1993) 8 F.3d 1333, 1337, the court noted that a plea
agreement is governed by the laws of contracts.

Furthermore, in <u>Shelton</u>, 37 Cal.4th at 344, a court must first look to the plain meaning of the agreement's language, if the language in the contract is ambiguous, "it must be interpreted in the sense in which the promisor believed, at the time of making it, that the promisee understood it" (Cal. CIV. CODE § 1649.) The inquiry considers not the subjective belief of the promisor but, rather, the "objectively reasonable" expectation of the promisee. <u>Bank of the West v. Superior Court</u>, 2 Cal.4th 1254, 1265 (1992) <u>Badie v. Band of Am.</u>, 67 Cal.App.4th 779,802 n. 9 (1998) "Although the intent of the parties determines the meaning of the contract, the relevant intent is objective - that is, the objective intent as evidenced by the words of the instrument, not a party's subjective intent." In the instant cause of action, the belief as the Petitioner understood it, was that after serving 15 to 21 years with good conduct credit applied, which Petitioner is over by 5 years.

In a recent decision in the Circuit, in <u>Buckley v. Terhune</u>, 2006 DJDAR 3235, p. 3239, it held that:

> The proper interpretation of the plea agreement
> becomes clear when we turn, as California law
> provides to § 1654 of the California Civil Code:
> "In cases of uncertainty not resolvoed by the
> preceding rules, the language of a contract
> should be interpreted most strongly against
> the party who caused the uncertainty to exist.
> ...Given the direct conflict in the terms of
> the plea agreement, we must adopt the
> construction of the agreement, that is most
> favorable to Buckley; a maximum prison sentence
> of fifteen years."

The Ninth Circuit further held that under <u>Santobello</u>, Buckley had a due process right to enforce the provision of his plea agreement, and that under Ricketts v. Adamson, 483 U.S. 1, 6

n.3 (1987) found that "In [a] negotiated plea agreement is a form of contract, and it is interpreted according to general contract principals." Petitioner in this action plead guilty for a 15 years to life plus one year. The benefit to Petitioner granted by the state in exchange for his plea, was that he would be eligible for parole at his MEPD, (Minimum Eligible Release Date) which is set at 10 1/2 years. At the time Petitioner agreed to waive his rights, the finding of suitability for parole was not as stringent as it is today. At the time Petitioner plead guilty, about 15% of term to life prisoner who appeared before the Board were found suitable. At the present moment it is practically 0% of those who initially appear before the parole Board are found suitable for parole.

In the interest of justice, this Court should specifically enforce Petitioner's plea bargain, by ordering Petitioner's immediate release.