# EXHIBIT G

Court of Appeal, Fourth Appellate District, Div. 2 - No. E043750
S155704

# IN THE SUPREME COURT OF CALIFORNIA

### En Banc

In re GREGORY SANDERS, on Habeas Corpus

The petition for review is denied.

SUPREME COURT
FILED

OCT 2 4 2007

Frederick K. Ohlrich Clerk

_____
Deputy

GEORGE
_____
Chief Justice

GREGORY SANDERS
E-05222, ~~LN 18 LOW~~ 2N19U
SAN QUENTIN STATE PRISON
SAN QUENTIN, CA 94974

IN PRO SE



CALIFORNIA SUPREME COURT

SEP 6 2007

COURT OF APPEAL FOURTH DISTRICT

GREGORY SANDERS,                    )  Case No. S_____
                                    )
        Petitioner,                 )  (Appellate Ct. No. E043750.)
                                    )
        vs.                         )
                                    )
ROBERT AYERS, Warden, et al,        )
                                    )
        Respondent.                 )
_____)

PETITION FOR REVIEW

TO THE HONORABLE RONALD M. GEORGE, CHIEF JUSTICE, AND TO THE HONORABLE
ASSOCIATE JUSTICE OF THE SUPREME COURT OF THE STATE OF CALIFORNIA:

        Petitioner, Gregory Sanders, proceeding in pro se, with the assistance

of a fellow inmate, hereby petitions this Honorable Court, pursuant to rules

28 and 29 of the California Rules of Court, for review of the unpublished

summary denial of Petitioner's Petitioner for Writ of Habeas Corpus in the

Court of Appeal, Fourth District, Division Two, filed August 14, 2007. A

copy of the opinion is attached as "Index 1."

                ISSUES PRESENTED FOR REVIEW:

    1.  Whether the Board of Parole Hearings is using the wrong standard
        of evidence to deny parole in violation of the state and federal
        due process, and instead should be using "preponderance of the

1.

evidence" standard when deciding suitability and unsuitability for parole?

2. Whether the Board of Parole Hearings decision to deny petitioner parole is supported by "some evidence" that petitioner currently poses an unreasonable threat to public safety if released from prison?

3. Whether the Board of Parole Hearings violated petitioner's state and federal due process, rights to trial by jury, statutory law, and United States Supreme Court's holdings, when they used elements that were either dismissed or not found true by a jury in order to deny parole at his September 21, 2006 parole consideration hearing?

4. Whether the Board of Parole Hearings violated petitioner's Fourteenth Amendment Due Process of the United States Constitution when it based its decision to deny parole on state regulations that contained intolerable vague criteria that invite arbitrary and discriminatory enforcement?

5. Whether the Board of Parole Hearings decision was predetermined, and based on unreasonable application of California parole law, and therefore violating his liberty interest in parole?

6. Whether the Board of Parole Hearing's continue use of petitioner's second degree murder offense to deny parole violates his plea agreement, and state and federal due process.

7. Whether petitioner's parole plans of living with his children, having a trust account of $3,000 and $16,000 invested in property deem his parole plans "unrealistic" to support a finding of unsuitable for parole?

8. Whether the Board of Parole Hearings may deny parole on the grounds that petitioner is heterosexual and has had unstable relationships with women who have abused him and taken advantage of him, which left the Board concerned that he might still be interested in having

a relationship with a woman?

9.   Whether the Board of Parole Hearings' finding of unsuitability based
     on a factor used in first degree murder sentence of Life without
     parole, or death penalty, "especially heinous, atrocious, or cruel,"
     (Penal Code § 190.2 (14)) violate the United States Supreme Court's
     holdings in Cunningham v. California (2007 127 S.Ct. 856; and Apprendi
     v. New Jersey (2000) 520 U.S. 466?

NECESSITY FOR REVIEW:

The Board of Parole Hearings holds suitability hearings for inmates
serving term-to-life sentences. During Suitability hearings, the Board is
suppose to weigh a number of factors in order to determine whether parole
of the inmate will pose a current "unreasonable risk of danger" to public
safety. The California Penal Code section 3041(a) mandates that parole "shall
normally" be set at term-to-life prisoner's initial parole hearing, held
13 months before his minimum eligible parole date. So far the court's have
not defined what "shall normally" means and the Board has made denying parole
the rule rather than the exception.

The issues in the instant case are important because in every case
that a district attorney offers a plea agreement of second degree murder,
this turns into an vague offer. First degree murderers and second degree
murderers are serving the same amount of time in prison and therefore
defendants are being tricked into pleading to second degree murder. Some
of these defendants may want to take responsibility for their actions yet
feel that their offense is not a first degree murder and may in fact be a
manslaughter. Instead of taking their chances in a jury trial, giving up
a great constitutional right to a jury and appeal, they plead guilty to a
compromised term that is suppose be less than a first degree murder, which
turns out to be a farce.

3.

For the foregoing reasons, Petitioner respectfully requests this Honorable Court to grant review to consider these important issues that continue to occur approximately 5,00 times a year. (Exhibits not included)

Dated:                                    Respectfully submitted;

                                          Gregory Sanders
                                          Petitioner in pro se

CONTENTION

I.

THE BOARD OF PAROLE HEARINGS IS USING THE WRONG
STANDARD OF EVIDENCE TO DENY PAROLE IN VIOLATION
OF THE STATE AND FEDERAL DUE PROCESS. HOWEVER,
EVEN IF THE SOME EVIDENCE STANDARD IS USED, THERE
IS NO SUCH EVIDENCE TO SUPPORT THE BOARD'S DECISION
THAT PETITOENR **CURRENTLY** POSES AN UNREASONABLE
THREAT TO PUBLIC SAFETY IF RELEASED FROM PRISON.

On September 21, 2006 Mr. Gregory Sanders (Petitioner),

appeared before the Board of Parole Hearings (Board) Petitioner was

denied Parole for two (2) years. The Board stated the following

reasons for their denial:

1. Unrealistic parole plans.

2. The offense was carried out in a specially cruel
   and callous manner.

3. Multiple victims were attacked.

4. The offense was carried out in a execution style
   murder. "You had a loaded gun."

5. The offense was carried out in a manner which
   demonstrate exceptionally callous disregard
   for human suffering and your motive for the
   crime was trivial, very, very trivial.

(Exhibit "A" pp. 74-76)

Under California law, a parole date must be set unless the

panel determines that the "gravity of the current or convicted

offense or offenses, or the timing and gravity of the current or

past convicted offense or offenses is such that consideration of

public safety requires a more lengthy period of incarceration..."

California Penal Code (Cal. P.C.) § 3041(b). The panel must

determine "whether the life prisoner is suitable for release on

parole," and whether "the prisoner will pose an unreasonable risk

of danger to society if released from prison." California Code of
Regulations Title 15 (CCR Title 15) § 2402 (a). The panel must
consider "all relevant, reliable information," and is guided by
circumstances tending to show suitability and usnsuitability for
parole. Id. at § 2402 (b)-(d).

There is no question that the only basis for finding a life
prisoner unsuitable for parole under California law is that he
presents a current threat to public safety.  There no evidence
that supports such a finding.

A review of the record in this case shows that by every
measure, Petitioner has rehabilitated himself and his potential
release presents no danger, much less an unreasonable danger, to
the public. The Board's decision is based almost exclusively on
the circumstances of the commitment offense, a second degree
murder that occurred as a result of significant stress in
Petitioner's life, especially after finding out that his wife's
lover abused Petitioner's son. Initially, Petitioner was lead to
believe that he was going to reconcile with his wife. However,
when Petitioner arrived in California his wife tried to
proposition Petitioner into a threesome relationship with her and
her lover (Exhibit "A" p. 13). Petitioner was already in a
stressful situation when he noticed the bruise on his son's arm
which sent Petitioner over the edge so to speak, which resulted
in Petitioner shooting and killing the victim, and injuring his
wife. Exhibit "A" pp. 14-16

Nevertheless, this case dose not even come close to the
grave nature in the first degree murder of case of In re Elkins,

6.

144 Cal.App.4h 475 (200), wherein Elkins killed his high school
friend, beating him with a bat while he slept in order to rob
him. After disposing the body over a remote cliff, he returned to
steal the victim's property and robbed the victim's girlfriend as
well. The Board, nevertheless, found Elkins suitable for parole
and after the Governor reversed that decision, the Court reversed
the Governor's decision and set Elkins free. There is no way that
it could be said that Petitioner went beyond the element needed to
complete the murder when Petitioner did no more than shoot the
two victims. "Needlessly striking a robbery victim may of course
show an especially heinous, atrocious or cruel robbery, but does
not necessarily show an especially brutal first degree murder."
The same reasoning could apply here where shooting two victims
out of rage could be especially atrocious, but does not show
especially brutal for a second degree murder. In the instant
case, there was no finding of premeditated murder or that "[t]he
murder was especially heinous, atrocious, or cruel," be by a jury
or court. These are first degree murder elements and must be
found true by jury in order to be used to deny parole or to set
an aggravating term for Petitioner. (See Cal. P.C. § 190.2 (14);
and Cunningham v. California, 549 U.S. ___ (2007).) Petitioner
was not convicted of having carrying out the crime "in an
especially cruel and/or callous manner." (See Exhibit "A" pp. 74-
75).

Furthermore, a conviction for murder does not automatically
render one unsuitable for parole. In re Smith, (2003) 114
Cal.App. 4th 343, 366. The First Appellate Court District Court

7.

of California states in fn. 11 of <u>In re Scott</u>, 119 Cal.App.4th

343, clearly show that the regulations therefore contemplate that

an inmate **maybe deemed suitable for release** even though his

offense demonstrated exceptionally callous disregard for human

suffering § 2402 (c) (1) (D) The Appellate Court in <u>In re Van</u>

<u>Houten</u>, (2004) 16 Cal.App.4th 339 considered whether or not

<u>Houten's</u> offense by itself justifies denial of parole stating:

> "It does if the offense involves "particularly
> egregious acts beyond the minimum necessary to
> sustain the conviction" for first degree murder
> carrying with it a life sentence with the
> possibility of parole."

There is absolutely no evidence to support the Board's

findings and therefore the Court should find that their decision

is arbitrary and capricious and cannot stand.

The Board also stated that Petitioner's parole plans were

unrealistic because he planned to either parole to a

transitional housing place, or to his children's home, until he

got on his feet, which ever one the Board felt would better suit

Petitioner. Petitioner never claimed to have his children take

care of him until he died. Petitioner, clearly stated that he

would stay with his children until he got on his feet. Petitioner

is a very fortunate man to have children that would inform the

Board that their father could stay with them forever. Petitioner

has steady income from his retirement, also about $6000.00, with

about $800.00 from his professions (Railroad Engineer) pension

plan, and also has several thousands of dollars saved up, an

additional amount in a blind trust.

Furthermore, the Board's finding that Petitioner has not

addressed his needs regarding co-dependency and anger are not

true. The Board itself read into the record Petitioner's

participation in 18 different programs regarding Self-Esteem,

Communications, Vietnam Veterans Group of San Quentin, and other

**self-help** program that deal with these issues. (See Exhibit "B")

Petitioner's parole plans to parole to a transitional housing

complex also provides programs for addressing Petitioner's needs

Exhibit "C".

       **A. Some Evidence Does Not Support the Board's**
          **Finding Petitioner Unsuitable for Parole.**

In <u>Superintendent v. Hill</u>, 472 U.S. 455, the Court held

that due process requires a prison disciplinary decision be

supported by some evidence. "In a variety of contexts, the Court

has recognized that a governmental decision resulting in the loss

of any important liberty interest violates due process if the

decision is not supported by any evidence." Id. at 455. Indeed,

the general rule is that review of agency decisions, including

those made by a quasi-judicial officers, is for substantial

evidence. (See e.g., Evans v. Charter, 110 F.3d 1480, 1483 (9th

Cir. 1997) (review of ALJ findings); Young v. Sullivan, 911 F.2d

180, 183 (9th Cir. 1990) (same).

The state and federal courts have tended to assume that the

"some evidence" standard in <u>Hill</u> developed an exception for

prison disciplinary hearings, an exception premised on the

unique circumstances of prison discipline. No U.S. Supreme Court

case, and certainly nothing in Hill, suggest that the "some

evidence" standard is appropriate for, or would satisfy due

process in parole matters.

9.

The requirements of due process are flexible and depends on balancing of the interest affected by the relevant government actions. (See, e.g., <u>Cafeteria Workers v. McElroy</u>, 367 U.S. 866, 895 (1961).) In <u>Hill</u>, the Supreme Court balanced a prisoner's interest in good time credit against "the distinctive setting of a prison, where disciplinary proceedings' take place in a closed, tightly controlled environment.'" 472 U.S. at 454. The Court rejected the prison's argument that no particular quantum of evidence should be required in disciplinary proceedings. Nevertheless, the Court held that because "[p]prison disciplinary proceedings take place in a highly charged atmosphere, and prison administrators must often act swiftly on the basis of evidence that might be insufficient in less exigent circumstances," a less, rather than more, stringent quantum of evidence satisfied due process. Id. at 455-56

The Due Process analysis called for, however, weighs substantially different, on both ends, in the parole setting context. First, the prisoner's interest is greater. In the prison disciplinary context, the prisoner stands to lose some days of good time credit. Because that will delay his release by that many days, his interest is great; but the decision will not just delay a prisoner's release by a set number of years; it takes away all the good time credit earned toward a set prison term, leaving the very real possibility that the prisoner will spend many years in prison way beyond his Minimum Eligible Parole Date ("MEPD") and terms set forth in the Board's own Matrix guidelines, and perhaps being released only after age has made it

10.

almost impossible for him to gain a quality life, or dying in
prison. Thus, the prisoner's side of the due process balancing is
substantially weightier than it is in a disciplinary hearing. In
the instant case Petitioner is now nearly ten years beyond his
MEPD, which is set at October 1, 1998 and with good time credit
that he has earned, Petitioner has now served a term beyond the
highest term for second degree. (See Exhibit "D." p. 76) just
about equivalent to the first degree murder Matrix of 26 years.

   "The 'some evidence' standard sends a message to prison
inmates as well as society at large that once an individual is
convicted of a crime, he is presumed guilty of every subsequent
allegation. This message runs contrary to fundamental principles
of criminal law in the United States." <u>Carrillo v. Fabian</u>, 701
N.W.2d, 763; 2005 Minn. LEXIS 424. Although the California Courts
have not ruled on the matter, the decision by the Supreme Court
of Minnesota authenticated the reasoning above. The 'some
evidence standard runs contrary to fundamental principles of
criminal law in the United States... Taking the Supreme Court's
three factors into consideration, we conclude that the 'some
evidence standard is inappropriate of use by the DOC at the fact-
finding level. We conclude that the 'preponderance of the
evidence' standard better protects against an erroneous'
deprivation of an inmate's liberty interest in his supervised
release date and does not impose an unacceptable burden on the
DOC." The Board's decision is supposed to be based on a
preponderance of the evidence of parole suitability in the
record. **"Good Cause"** is the standard (In re Powell, 45 Cal.3d at

901; In re Brown, (1976) 67 Cal.2d 339, 342: In re McClain,
(1960) 55 Cal.2d 78,87; In re Caswell, (2000) 92 Cal.App.4th
1017, 1024, 1026; In re Clutchette, (1974) 939 Cal.App.3d 561; In
re Monzo, (1973) 33 Cal.App.3d 144, 157; and CCR Title 15 § 2450
"Good Cause" is defined by the Board as "**a preponderance of the
evidence** that there is factual basis and good reason for the
decision made." CCR Title 15 § 2000 (b) (48) (Emphasis added.)

In the final analysis, it may not be necessary for this
Court to determine the quantum of evidence necessary to reverse a
parole date, for even under the "some evidence" standard, the
evidence before the Board does not support the Board's finding
that Petitioner is a current threat to public safety. It is
important to note, however, that even under the "some evidence"
rule, the evidence must bear "some indicia of reliability."
Biggs 334 F.3d at 915; McQuillion, 306 F.3d at 904.

For the aforementioned reasons this Court should grant
petition for writ of habeas corpus, and order the Board to set a
a Petitioner's term within the second degree Matrix relying only
on the elements that were found true by the Jury or admitted to
by Petitioner.  The court should also order the Board to
calculate any credit that goes beyond the set term toward his
parole Petitioner has a minimum term of five yeas on parole, but
the decision to keep him on parole beyond five years can not be
arbitrary and capricious. Therefore if Petitioner's term is set
between 17 to 21 years, and with good time credits, he should be
eligible for parole discharge in a few years.

CONTENTION

II.

THE BOARD OF PAROLE HEARING'S VIOLATED PETITIONER'S
STATE AND FEDERAL RIGHT TO DUE PROCESS AND TRIAL BY
JURY WHEN THEY USED ELEMENTS THAT WERE EITHER
DISMISSED OR NOT FOUND TrUE BY A JURY TO DENY PAROLE
AT HIS SEPTEMBER 21, 2006 PAROLE CONSIDERATION
HEARING, IN VIOLATION OF STATUTORY LAW, AND UNITED
STATES SUPREME COURT'S HOLDINGS

At Petitioner's sixth parole consideration hearing on

September 21, 2006, The Board stated in pertinent part that:

> The offense was carried out in a specially cruel
> and callous manner... Multiple victims were
> attacked... The offense was carried out in a
> execution style murder. "You had a loaded gun."
>
> ... The offense was carried out in a manner which
> demonstrate exceptionally callous disregard
> for human suffering and your motive for the
> crime was trivial, very, very trivial...

(Exhibit "A" pp. 73-76)

The record clearly shows that the Board retried Petitioner

in order to use elements and evidence, that were either dismissed

or not presented to a jury, to deny parole. In the instant case,

the record (Exhibit "A" pp. 50-58) the record shows the cross-

examination by deputy district attorney Liu. The Board then used

this cross-examine as evidence to show that the "offense was

carried out in a specially cruel and callous manner." (Exhibit

"A" p. 75) Petitioner was not convicted of having committed the

commitment offense in a" especially cruel" manner. This element

is a first degree murder element (Cal. P.C. § 190.4.). In fact,

the Board clearly stated: "So in your particular case the court

found you guilty of a second degree murder. We're not here to

discus whether that was a first degree murder or manslaughter.

We're hear to discuss circumstances and what have you done." Yet,

this exactly what the Board did when it reexamined the case.
The Board cannot reverse the plea agreement of a second degree
murder, with good conduct credit, Petitioner is within the Matrix
of a first degree murder.

The Board's findings that the commitment offense was
carried out in a especially cruel and callous manner, and very
dispassionate manner, violates both statutory and United States
Supreme Court law. For instance, California Penal Code § 190.2
subsection (14) describes the element used for first degree
murder special circumstances that qualify a defendant for a Life
Without the Possibility for Parole, or Death Penalty is that
"[T]he murder was especially heinous, atrocious, or cruel,
manifesting exception depravity. As used in this section, the
phrase 'especially heinous, atrocious, or cruel, manifesting
exceptional depravity' means a conscienceless or pitiless crime
that is unnecessarily tortuous to the victim." This element must
be found true under Section 190.4 under California Penal Codes.
In a recent ruling, the United States Supreme Court held that:

> The DSL, by placing sentence-evaluating
> factfinding within the judge's province,
> violates a defendant's right to trial by
> jury safeguarded by the sixth and
> Fourteenth Amendment... In all material
> respects, California's DSL resembles the
> sentencing systems invalidated in Blakely and
> Booker. Following the reasoning in those cases,
> the middle term prescribed underCalifornia law,
> not the upper term, is the relevant statutory
> maximum. Because aggravating facts that authorize
> the upper term are found by the judge, and need
> only be established by a preponderance of the
> evidence, the DSL violates the rule of Apprendi.

(Cunningham v. California, DJDAR 1003, 1004.)

In the instant case, Petitioner's minimum term has been set

14

at 17 years, and according to the Board's own Matrix, his base
term should be set somewhere between 17 years and 19 years. The
Board's regulation allows a one year adjustment in the upward or
lower term than the base term for aggravating and mitigating
circumstances. (CCR Title 15 §§ 2404 and 2405.) In order for
Petitioner's term to be set at life without the possibility of
parole, the elements used to determine that finding must be found
true by a jury. (Cal. P.C § 190.4) Petitioner may also be held in
prison if he continues to break the law while in prison, but
there is no such evidence in this case.

The Board's illegal policy, of retrying cases and using
elements that were not either presented to a jury or dismissed by
the trial court, violates the expressed mandate of California
Penal Code § 3041 (b), which unequivocally states that parole
release shall "normally" be granted.

All murders are by nature violent, horrific, abhorrent and
morally repugnant. But the Legislature decided that in order for
some elements to be used to set a defendant's term to Life
Without the Possibility of Parole, they must be found true by a
jury (Cal. P.C. § 190.4), and that murder per se, is not a
sufficient basis for denying parole. There has to be something
more. Otherwise the statutory provision for indeterminate
sentences would make no sense, as every parole release of a
murderer would then deprecate the seriousness of the crime. If
the seriousness of [Petitioner's] crime had been intended as the
sole criteria by which release was to be measured, there would
have been no reason for Petitioner's original sentence to be

anything but "Life in Prison"

Clearly the laws of California did not contemplate this scenario and it is a violation of state and federal law to resentence Petitioner now that, with the good time credit earned, he has completed a sentence for the most heinous second degree murder described in the Board's Matrix guidelines for setting terms. "[Petitioner] 'has served so much time that, with custody credits, he is within the matrix for first degree murder... [I]t should be self evident that after an inmate has served the equivalent of 25 year, [as in the instant case], whether his actions were more than minimally necessary for a second degree conviction .. is no longer the appropriate question. [The Board's] position, that inmates who were only convicted of second degree may forever be denied parole based on some modicum of evidence that their acts rose to the level of a first, without acknowledging the fact that they have already served the time for a first, should be seen as so ridiculous that simply to state is to refute it." (In re Weider, 2006 DJDAR 15795, 15798.) In this case, because Petitioner was under significant stress in his life and reacted to the possibility of his son being abused by his wife's lover, Petitioner did no more than the minimal necessary to commit the second degree murder.

"Parole eligibility is a facet of a criminal sentence ... and thus the statutes and regulations governing parole eligibility are considered to be part of the law annexed to a crime when it is committed." Warden v. Marrero, 417 U.S. 653, 661-6664 (1974) and Weaver v, Graham, 450 U.S. 24, 32-33 (1981). "[T]he Ex Post

16.

Facto Clause provides a means of assuring that an individual receives fair warning of criminal statutes and the punishments they carry." Weaver, 450 U.S. at 28-30. Here, there is no fair warning that the second degree murder could be reheard/retried at the parole consideration hearing, where a finding that the crime was "calculated" or "especially cruel," can be used to deny parole.

For the foregoing reasons, the Court should find that the Board's retrying of the case and using elements that were not found true by a jury to deny parole violates Petitioner's state and federal due process and order the Board to calculate the time toward Petitioner's minimum 5 year term for parole.

CONTENTION

III.

THE BOARD OF PAROLE HEARINGS VIOLATED PETITIONER'S FOURTEENTH AMENDMENT DUE PROCESS RIGHTS BECAUSE ITS DECISION WAS BASED UPON STATE REGULATIONS THAT CONTAINED INTOLERABLE VAGUE CRITERIA THAT INVITE ARBITRARY AND DISCRIMINATORY ENFORCEMENT.

On September 21, 2006, Petitioner appeared before the Board of Parole Hearings for his Sixth parole consideration hearing and was denied parole for two years. The Board based its decision on the factors that were used to deny parole at Petitioner five previous hearings. This Petitioner challenges the September 21, 2006 hearing, and the regulations used to consider parole suitability, and unsuitability.

Specific factors are applicable to the Board's decision as set forth in Cal. P.C. § 3041 and CCR Title 15 § 2402.

The overreaching consideration is "public Safety" and, as

stated in subdivision (b) of Cal. P.C. § 3041, the Board "shall set a release date unless it determines that the gravity of the current convicted offense or offenses or the timing and gravity of the current or past convicted offense or offenses, is such that consideration of public safety requires a more lengthy periodd of incarceration for this individual ..." [emphasis added].

The factors required to be considered by the Board are, for the most part, specified in section 2402 of CCR Title 15, which consists of four subdivisions.

Subdivision (c) specifies six non-exclusive factors tending to show unsuitability. These specified factors are as follows:

1. **Committed Offense** -- If the prisoner committed the offense in an especially heinous, atrocious or cruel manner. (See Cal. P.C. § 190.2 (14) for definition of "especially heinous, atrocious or cruel manner.") The factors to be considered include:

(A) If multiple victims were attacked, injured or killed in the same or separate incident. In this Case, there was one victim who was killed but Petitioner also shot another. Petitioner's actions were as a result of pressure he incurred trying to work things out with his wife and finding a bruise on his sons arm, which possibly was caused by abuse by Petitioner's wife's lover.

(B) The offense was carried out in a dispassionate and calculated manner, such as an execution-style murder. The trial evidence does not demonstrate anything other than a man reacting to the stress caused by the events of attempting to reconcile

18.

with his wife and discovering his sons injury (possibly caused by his wife's lover). Petitioner was not convicted of first degree murder and there is no reasonable evidence that the murder was planned by Petitioner. All murders are dispassionate.

(C) The victim was abused, defiled or mutilated during or after the offense. The victim was shot twice, beyond that, there was no evidence of abuse or mutilation.

(D) The motive for the crime is inexplicable or trivial in relation to the offense. Essentially all murders are inexplicable or trivial in relation to most events that lead up to a killing. IF this were a sole basis for parole, no one in prison for murder would ever be paroled. (See In re Elkins, (2006) ___Cal.App.4th__ (filed October 31, 2006).)

2. **Previous Record of Violence** -- There is no reliable evidence on the record of previous violence. Other than a disorderly conduct and a fine back in 1986, Petitioner hardly has anything resembling a criminal history.

3. **Unstable Social History** -- The record does not show an unstable social history. Petitioner has made a bad choice in women, which if anything is to be considered regarding his social life is that he is the one that has suffered abuse. Nevertheless, Petitioner's recent social history includes mentoring "at risk" youth and participating in educational programs, and other self-help programs. He has participated in several self-help programs that deal with his issues that the Board is concerned about, such as anger management, co-dependency and self-esteem. Petitioner has also maintained his family ties. He has "developed

19.

an understanding of the causative factors and culpability for
his crime. Petitioner has taken responsibility for his crime.

    4. **Sadistic Sexual Offenses** -- This is not applicable to
Petitioner.

    5. **Psychological Factors** -- There is no reliable evidence
that Petitioner had any history of mental problems related to the
offense. Dr. Inaba stated that "Mr. Sanders would present a low
risk of future violence." Petitioner's issues are not violent
prone, rather a bad choice of relationships with women. However,
as Dr. Inaba stated "In an environment where he would have checks
on his tendency to form intense volatile relationships he would
be expected to do so well. Exhibit "A" p. 80

    6. **Institutional Behavior** -- Petitioner has no disciplinary
write-ups.

    Subdivision (d) of section 2402 is a converse of
subdivision (c) that specifies nine factors tending to show
suitability for release. The factors are:

    1. **No Juvenile Recod** -- Petitioner does not have a record.

    2. **Stable Social History** -- Petitioner's unstable history
is a result of a bad selection of women, Petitioner has never
maliciously layed a hand on any of his partners. Petitioner's
actions are as a result of an immoral proposition by his wife and
discovering that his son may have been abused by his wife's
lover. Petitioner was already to move on with his life and only
came to California to possibly reconcile with his wife. Even
after finding out that his wife had a lover, Petitioner was ready
to move on. However, after discovering the bruise on his sons

arm. Petitioner, so to speak lost it. Petitioner then shot his wife's lover and his wife.

3. **Signs of Remorse** -- Petitioner took responsibility of the commitment offense and has shown his remorse through his performance in a litany of acts over the past many years which tend to indicate the presence of remorse or indicating that he understand the nature of the magnitude of his offence. Exhibit "A" p. 19

4. **Motivation for Crime** -- Petitioner's motivation for the crime, as stated several times, is a result of significant stress in his life, as a result of being asked to come to California to possibly reconcile with his wife, just to be invited into a threesome relationship. The stressor sending Petitioner "over the edge was finding the bruise on his sons arm, with the thought he was probably abused by his wife's lover.

5. **Battered Women's Syndrome** -- This does not apply.

6. **Lack of criminal History** -- Petitioner' contact with authorities could hardly be considered criminal history. Exhibit "A" p. 76

7. **Age** -- Petitioner is almost a senior citizen and is retired. Petitioner's age is such that he is not likely to re-offend. Furthermore, Petitioner's offense was a result of significant stress in his life that is not likely to re-occur.

8. **Understanding and Planning for the future** -- Petitioner has made solid plans for the future. First of all, Petitioner has been allocated transitional housing that also deals with his "issues." Petitioner has finances by way of his Railroad

21.

pension, $800.00 a month, $6,000.00 already saved up, property in Tennessee. Also, he has a blind trust that is controlled by his brother, and would be turned to Petitioner once he is paroled. Exhibit "A" p. 42-43 Petitioner has never had any trouble finding employment, nor does he have any vices. Petitioner's circumstance's are not as the stereo-typical prisoner, that lacks education exposed to violence and drugs, raised in an unstable social surrounding environment. Petitioner's profession is a railroad engineer, who has never had a problem finding a job.

The commitment offense that placed Petitioner in prison for the past nineteen years involves killing a man that possibly abused his son. Petitioner pled guilty to his crime and is now within the Matrix for a first degree murder. The commitment offense is a factor indicative of usnsuitability Petitioner cannot change.  To simply focus and rehash the commitment offens, as is typical of most letters the Board is accustomed to seeing from law enforcement agencies, is unfair and runs contrary to the rehabilitative goals exposed by the prison system and could result in due process violation. (See In re Weider, 145 Cal. App.4th 470, 585-586 (2006).) The commitment offense can negate suitability, only if circumstances of the crime were reliably established by evidence in the record to rationally indicate that offender will present a current unreasonable risk if released from prison. There is no evidence from the psychiatric evaluation or the counselor's report that support that. Rather, to the contrary, Petitioner has been found to be a low risk of threat to society if released from prison. See Exhibit "E" p.3

Several California state case s have found that the Board's finding that a particular inmate needs additional therapy is contradicted by the record. (See In re Deluna, 126 Cal.App.4th 585, 596 (2005); In re Ramirez, 94 Cal.App. 4th 549, 571 (2001); In re Scott, 119 Cal.App.4th 871, 896-897 (20004).) These cases are applicable here where there is no evidence to support the Board's finding.

The Regulations are Unconstitutionally vague. A statute is void for vagueness if it fails to give adequate notice to people of ordinary intelligence concerning the conduct it proscribes (See Coates v. City of Cincinnati, 402 U.S. 611 (1971)), or if it invites arbitrary and dicriminatory enforcement. (See Papachistou v. City of Jacksonville, 405 U.S. 156, 162 (1972); also Jordan v. De George, 341 U.S. 223, 231-32 (1951). Neither of these strands may be applied mechanically, however, but by a reasoning process. Judgment is necessary to determine "[t]he degree of vagueness that the Constitution tolerate -- as well as the relative importance of fair notice and fair enforcement" and this, in turn, "depends in part on the nature of the enactment." (Village of Hoffman Estate v. Flipside, Hoffman Estates, Inc., 455 U.S,. 489, 498 (1982). The Threshold question in a vagueness challenge is "whether to scrutinize the statute for intolerable vagueness on its face or whether to do so only as the statute is applied in a particular case. (Schwarzmiller v. Gardener, 752 F.2d 1341, 1346 (9th Cir. 1984).)]

Petitioner was denied due process is as far as the regulations are unconstitutionally vague as applied to him.

Petitioner contends that the Regulations are unclear on whether a
second degree murder can be deemed "especially heinous, and
cruel" to warrant a denial of parole. According to Cal. P.C. §
190.2 subd. (14), this is a special circumstance for first degree
murder that qualifies a defendant for a Life Without the
possibility of Parole sentence, or the Death Penalty. The
regulations are also vague and never addresses the question of:
"How many times is the Board allowed to rely on the commitment
offense to deny parole?

There is no evidence to support the Board's decision that
Petitioner poses a current threat to public safety. The only
thing that the records show is that the Board does not follow its
own rules and instead retries prisoners in order to use
anything the prisoners admit against them, and use the same
reason to deny parole as it does in every case, that the crime
was "especially callous." The Court should grant the petition and
order the Board to provide any hearing decisions transcripts for
the period covering September 21, 2005 to September 21, 2006, in
order to show that prisoners that were granted parole based on
factors showing suitability, were denied parole at their previous
hearing. This would show that the Board has turned the
Legislative intent, that parole "shall normally" be granted, on
its head.

The Board should be ordered to set Petitioner's date and if
any time goes beyond the calculated term, it should be calculated
toward Petitiorer's five year parole period.

CONTENTION

IV.

THE BOARD OF PAROLE HEARINGS VIOLATED PETITIONER'S
POTECTED LIBERTY INTEREST RIGHT IN HAVING
PETITIONER'S PAROLE CONSIDERATION
HEARING PREDETERMINED

The Board violated Petitioner's liberty interest rights
when it used it boiler plate reasons to deny Petitioner parole.
In fact, the Board made its decision to deny parole on personal
reasons. The Board did not accept Petitioner's parole plans and
instead of acknowledging that Petitioner had alternate parole
plans, either to stay with his children, or to stay at the
transitional housing offered by the "Swords to Plow Shares" which
deals with, not only drugs and alcohol habits, but also offers
living skills training and anger management. Nevertheless the
Board chose to make the parole consideration hearing personal, as
demonstrated by Commissioner Shelton, when she stated: "Also, you
know, your presentation today kind of got under my skin a little
bit. Your a little bit flip." Commissioner Shelton took it so
personal, she even made an unprofessional opinion when stating
that Petitioner was a little bit flip.

The Board also used the commitment offense, which is an
immutable factor, to deny Petitioner parole. The Board
mischaracterized the offense claiming that it was an execution
style murder. In In re Rosenkrnatz, 29 Cal.App.4th at p. 683 the
court cautioned that to continue to use the commitment offense
would violate Petioner's liberty interest, unless the commitment
offense was particularly egregious, which compared to
Rosenkrantz's second degree murder case, which he shot the victim

25.

in an execution style manner. Recently the Federal District
Court for the Eastern District of California in <u>Melvyn H. Coleman
v. Board of Prison Terms</u>, Case No. Civ S-96-0783 LKK PAN P
<u>Findings and Recommendations</u>, found that Coleman was denied his
constitutional right to be heard by an impartial decision-maker.
(See Withrow v. Larkin, 421 U.S. 35, 47, 95 S.Ct. 1456, 43
L.Ed.2d 712 (1975) ("Not only is a biased decision-maker
constitutionally unacceptable but 'our system of law has always
endeavored to prevent even the probability of unfairness.'"
(quoting In re Murchison, 349 U.S. 133, 136, 75 S.Ct. 623, 99
L.3d. 942 (1955)).

In <u>O'Bremski v. Maas</u>, 915 F.3d 418, 422 (9th Cir. 1990),
the Ninth Circuit has held that a California inmate is "entitled
to havve his release date considered by a Board that [is] free
from bias or prejudice." Furhtermore, concomitant to the
guarantee against arbitrary and capricious state action is the
right to a fact-finder who has not predetermined the outcome of a
hearing. [<u>See</u>, <u>Withrow</u>, <u>supra</u>, 421 U.S. 35 (1975) (a fair trial
in fair tribunal is a basic requirement of due process, and this
rule applies to adiminstrative agencies which adjudicate as well
as to courts) <u>Edwards v. Balisok</u>, 520 U.S. 641 (1997)
(recognizing due process claim based on allegations that prison
disciplinary hearing officer was biased and would suppress
evidence of innocence); <u>Bakalis v. Golembeski</u>, 35 F.3d 318, 326
(7th Cir. 1994) (a decision-making body "that has prejudged the
outcome cannot render a decison that comports with due
process")].

26.

Numerous curts have recognized that the right to a
disinterested decision-maker, who has not prejudged the case, is
part of the fundamental guarantee against arbitrary and
capricious government conduct in the California parole context.
The guarantee of neutral parole officials in a suitability
hearing is just a fundamental as the right to a neutral judge in
a court proceeding. The Ninth Circuit previously has acknowledged
California inmates's due process right to parole consideration
by neutral decision-makers. (O'Bremesi, supra, at 422) The U.S.
Supreme Court clearly held, a decision made by a fact-finder wh
has predetermined the outcome is per se invalid -- even where
there is ample evidence to support it. (Balisok, 520 U.S. at 648)
When the revord is reviewed in it is clear that ther was no legal
basis to find Petitioner unsuitable for parole. Therefore this
Court should fulfill its judicial duty and findt Petitoner
hearing was predetermined as aresult of Board Commissioner'
admittance that she felt effected by Petitioner and Petitioner's
parole plans to possibly stay with and mooch from his children
until he got on his feet.

CONTENTION

V.

THE BOARD'S CONTINUOUS FAILURE TO HONOR
PETITIONER'S PLEA AGREEMENT VIOLATES
STATE AND FEDERAL DUE PROCESS AND EQUAL
PROTECTION OF THE LAW UNDER THE
FOURTEENTH AMENDMENT

Pursuant to a negotiated plea bargain, Petitioner pled
guilty to second degree murder and was sentenced to 15 years
to life, plus one year for use of a firearm. Plea agreements are

27.

contractual in nature and are measured by contract law standards.
In California, "[a]ll contracts, whether public or private are to
be interpreted by the same rules..." Cal. Civ. Code 1635; (see
Also, Shelton, Cal.4th at 344. A court must first look to the
plain meaning of the agreement's language. United States v.
Keller, (9th Cir. 1990) 902 F.2d 1391, 1393. As with other
contracts, provision of the plea agreements are occasionally
ambiguous and the government must bear responsibility for any lack
of clarity.

Construing ambiguities in favor of the defendant makes
sense in light of the parties' respective bargaining power and
expertise. United States v. De La Fuente, (9th Cir. 1993) 8 F.3d
1333, 1337-1338. Both the State and the defendant must adhere to
the terms of a plea bargain. People v. McClellan, (1993) 6
Cal.4th 367, 375, and both should be held strictly to the terms
of the agreement. People v. Armendariz, (1993) 16 Cal.App.3d
77,70. "A plea agreement is, in essence, a contract between the
defendant and the prosecutor to which the court consents to be
bound." Armendariz, supra, at 911. "When a guilty plea is entered
in exchange for specified benefits such as the dismissal of
other counts or an agreed maximum punishment, both parties.
including the state, must abide by the terms of the agreement."
People v. Walker, (1993) 13 Cal.3d 1013, 1024.

The harmless error test is inapplicable to a situation
involving failure to fulfill the terms of a plea bargain) People
v. Mikhail, (1993) 13 Cal.App.4th 846, 850), since a court can
only speculate as to why a defendant would negotiate for a

28.

particular term of a bargain, and a defendant's entitlement to
the benefit of his bargain cannot be predicated on the assumption
that violation of the bargain must result in some measurable
detriment. <u>People v. Bounds</u>, (1987) 194 Cal.App.3d 1574, 1578.
Moreover, the concept of harmless error only addresses whether
the defendant prejudiced by the error, while in the context of a
broken plea agreement, there is at stake the honor of the
government, public confidence in the fair administration of
justice, and the efficient administration of justice. <u>People v.</u>
<u>Manceno</u>, (1982) 32 Cal.3d 85, 866. The reciprocal nature of a
plea bargain agreement mandate that either party to the agreement
is entitled to enforce the agreement in a situation where the
party to the agreement is deprived of the benefit of the bargain.
<u>People v. Collins</u>, (1996) 45 Cal.App.4th 849, 863. When a guilty
or nolo contendre plea is entered in exchange for specified
benefits such as the dismissal of other counts or an agreed
maximum punishment, both parties, including the State, must abide
by the terms of the agreement. (People v. Aparicio, (1994) 74
Cal.App.4th 286, 289.)

 Thus, where a defendant has given up a valuable
constitutional right or otherwise detrimentally relied upon the
promises made in the plea bargain and the agreement is violated
by the State, the defendant may elect to specifically enforce
that agreement. <u>People v. Leroy</u>, (1984) 55 Cal.App.3d 602, 606-
607; <u>People v. Rutledge</u>, (1982)140 Cal.App.3d 955, 963;
<u>Santobello v. New York</u>, (1971) 404 U.S. 2257, 263. The State,
(San Bernardino County District Attorney's Office) and the Board

29.

violated the plea bargain agreement (contract) when the Board
sent a "Notice of Hearing" to the San Bernardino District
Attorney's Office, and the district attorney opposed parole as a
response to the notice. Although the Board knew this case was a
plea bargain case, the Board proceeded to deny Petitioner parole
anyway, stating, "With regards to 3042 notices I indicated to you
obviously the District Attorney's Office from San Bernardino is
in opposition to parole ..." The San Bernardino District Attorney
violated the plea bargain agreement when it opposed parole.

Just as a contractual agreement bars the parties from
changing the agreed upon terms, any future tampering by either
party violates the agreement. Petitioner never foresaw that the
district attorney would entrap Petitioner, by agreeing to plea
bargain with Petitioner and then continuously keep opposing
parole to keep Petitioner incarcerated far beyond the term he
would become eligible for parole. Petitioner must receive
consideration of value. The mere opportunity to appear before a
second tribunal that historically maximizes punishment for 99% of
those under its jurisdiction is not actual consideration. It is
not the less severe punishment system lenience [or] lessened
punishment" owed by the state to Petitioner. (See Victoria v.
Supreme Court, (1985) 40 Cal.3d 638, 639, 645, noting that
"[h]however broad may be the terms of a contract, it extends only
to those things concerning what it appears that [both] the
parties intended to contract.") In U.S. v. De La Fuente, (9th
Cir. 1993) 8 F.3d 1333, 1337, the court noted that a plea
agreement is governed by the laws of contracts.

Furthermore, in <u>Shelton</u>, 37 Cal.4th at 344, a court must first look to the plain meaning of the agreement's language, if the language in the contract is ambiguous, "it must be interpreted in the sense in which the promisor believed, at the time of making it, that the promisee understood it" (Cal. CIV. CODE § 1649.) The inquiry considers not the subjective belief of the promisor but, rather, the "objectively reasonable" expectation of the promisee. <u>Bank of the West v. Superior Court</u>, 2 Cal.4th 1254, 1265 (1992) <u>Badie v. Band of Am.</u>, 67 Cal.App.4th 779,802 n. 9 (1998) "Although the intent of the parties determines the meaning of the contract, the relevant intent is objective - that is, the objective intent as evidenced by the words of the instrument, not a party's subjective intent." In the instant cause of action, the belief as the Petitioner understood it, was that after serving 15 to 21 years with good conduct credit applied, which Petitioner is over by 5 years.

In a recent decision in the Circuit, in <u>Buckley v. Terhune</u>, 2006 DJDAR 3235, p. 3239, it held that:

> The proper interpretation of the plea agreement
> becomes clear when we turn, as California law
> provides to § 1654 of the California Civil Code:
> "In cases of uncertainty not resolvoved by the
> preceding rules, the language of a contract
> should be interpreted most strongly against
> the party who caused the uncertainty to exist.
> ...Given the direct conflict in the terms of
> the plea agreement, we must adopt the
> construction of the agreement, that is most
> favorable to Buckley; a maximum prison sentence
> of fifteen years."

The Ninth Circuit further held that under <u>Santobello</u>, Buckley had a due process right to enforce the provision of his plea agreement, and that under <u>Ricketts v. Adamson</u>, 483 U.S. 1, 6

31.

n.3 (1987) found that "In [a] negotiated plea agreement is a form of contract, and it is interpreted according to general contract principals." Petitioner in this action plead guilty for a 15 years to life plus one year. The benefit to Petitioner granted by the state in exchange for his plea, was that he would be eligible for parole at his MEPD, (Minimum Eligible Release Date) which is set at 10 1/2 years. At the time Petitioner agreed to waive his rights, the finding of suitability for parole was not as stringent as it is today. At the time Petitioner plead guilty, about 15% of term to life prisoner who appeared before the Board were found suitable. At the present moment it is practically 0% of those who initially appear before the parole Board are found suitable for parole.

In the interest of justice, this Court should specifically enforce Petitioner's plea bargain, by ordering Petitioner's immediate release.

Dated:                              Respectfully submitted;

                                    *Gregory L. Sanders*
                                    Gregory Sanders
                                    Petitioner in Pro Se

# DECLARATION OF SERVICE BY MAIL

I, _Noel Valdivia Sr._____, the undersigned, declare:
    Printed Name of Declarant

I am over the age of 18 years, a citizen of the United States of America, and am not a party to the cause within.  My residence address is:

CDC No. _C-29917_____    Housing _3-N-21_____
San Quentin State Prison
San Quentin, CA 94974

On _August 21_____, _2007_, I served the following document(s):
    Month/Day            Year

    "Petition for Review" _____

_____

_____

_____

on the parties and at the addresses described below by placing the pleadings in a sealed envelope, with postage fully prepaid, and presented said item(s) to Corrections Department staff for mailing in the United States Mail as per the rules and regulations governing outgoing legal mail at San Quentin State Prison.

| | |
|---|---|
| DEPARTMENT OF JUSTICE | CALIFORNIA COURT OF APPEALS |
| OFFICE OF THE ATTORNEY GENERAL | FOURTH APPELLATE DISTRICT |
| 455 GOLDEN GATE AVE. SUITE 11000 | 70 B ST. #300 |
| SAN FRANCISCO, CA 94012-7004 | SAN DIEGO, CA 92101-8189 |
| | |
| | |

I swear under penalty of perjury that the foregoing is true of my own personal knowledge.  Executed on this _21_ day of _August_____, _2007_, at San Quentin, CA, County of Marin.

_Noel Valdivia Sr._
Signature of declarant

INDEX "1"

COURT OF APPEAL -- STATE OF CALIFORNIA
FOURTH DISTRICT
DIVISION TWO

**ORDER**


FILED
AUG 1 4 2007
COURT OF APPEAL FOURTH DISTRICT

In re                                                    E043750

    GREGORY SANDERS                          (Super.Ct.No. BCR1231)

       on Habeas Corpus.                    The County of San Bernardino

---

THE COURT

    The petition for writ of habeas corpus is DENIED.

**McKINSTER**

                                      Acting P. J.

cc:   See attached list



MAILING LIST FOR CASE: E043750
In re GREGORY SANDERS on Habeas Corpus


Superior Court Clerk
San Bernardino County
401 North Arrowhead Avenue
San Bernardino, CA 92415


Gregory Sanders
CDC:E05222
San Quentin State Prison
2N 190
San Quentin, CA 94974


Office Of The State Attorney General
P.O. Box 85266
San Diego CA 92186-5266


District Attorney
County of San Bernardino
Appellate Services Unit
412 Hospitality Lane, 1st Flr.
San Bernardino, CA 92415-0042

CLERK'S OFFICE
COURT OF APPEAL
FOURTH APPELLATE DISTRICT
DIVISION TWO
3389 TWELFTH STREET
RIVERSIDE, CA 92501

2-N-19

PETITIONER RECEIVED
APPELLATE COURT DENIAL
ON 8/17/07 AS Dated
Below

1 5 1    U.S. POSTAGE    0 2 2 2 2 2 7 6 2 *
8 1 3 3    $00.410    AUG 15 07 *
8 6 5 9    ZIP CODE    92501 *

— CONFIDENTIAL MAIL —
This letter was opened and searched in
the presence of the inmate addressee.
Delivered by : C.a. Scott
                                    Officer
Received by : _____

Date : 8-17-07
                    Inmate