GREGORY SANDERS
E-05222, 4N-09 LOW
SAN QUENTIN STATE PRISON
SAN QUENTIN, CA 94974

FILED

MAY 30 PM 3:58

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

# IN THE UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| **GREGORY SANDERS,** | Case No. C07-06007 TEH (PR) |
| Petitioner, | **TRAVERSE TO THE ANSWER TO PETITION FOR WRIT OF HABEAS CORPUS; MEMORANDUM OF POINTS AND AUTHORITIES** |
| v. | |
| **ROBERT AYERS, JR., Warden,** | Judge: The Honorable Thelton E. Henderson |
| Respondent. | |

As a Traverse to the Answer to the Petition for Writ of Habeas Corpus, Petitioner Gregory Sanders ("Petitioner"), alleges as follows:

1. Petitioner agrees with the allegations in Paragraph 1, but denies that as a result to the allegations set forth in the petition for writ of habeas corpus and this traverse, his continued incarceration is lawful.

2. Petitioner agrees with the allegation in Paragraph 2.

3. For the purpose of these proceedings, Petitioner agrees with the allegation in Paragraph 3, but denies that the Board's conclusion and findings had any

Petitioner's Traverse                   1.                   Sanders v. Ayers
                                                             C07-06007   TEH (PR)

evidentiary support that he currently poses an unreasonable threat to the public if released from prison.

4. Petitioner agrees with the allegations in Paragraph 4 but denies that the information relied upon by the Board was accurate in all its details, and pre-conviction behavior no longer provides any predictive value of current dangerousness. Petitioner also alleges that he has fulfilled the requirement of having realistic parole plans **or** a marketable skill. Petitioner has been allocated transitional housing that also deals with "issues" of concern – employment, counseling, and transition into society. Petitioner incorporates Contention III, pages 13 through 20 here.

5. Petitioner admits the allegations in Paragraph 5, but denies any assertion that the Superior Court's decision was reasonable or not contrary to established federal due process.

6. Petitioner admits to the allegation set forth in Paragraph 6 of the Answer.

7. Petitioner admits to the allegation set forth in Paragraph 7 of the Answer.

8. Petitioner admits to the allegation set forth in Paragraph 8 of the Answer, but denies that he has not exhausted his claims to the extent that they are more broadly interpreted to encompass any systematic issues beyond this particular review of parole denial.

9. Petitioner disagrees with Respondent's assertions in Paragraph 9 of the Answer. The Supreme Court has clearly established that a parole board's decision deprives a prisoner of due process with respect to his constitutionally protected liberty interest in a parole release date if the board's decision is not

supported by "some evidence in the record," or is "otherwise arbitrary." Sass v. California Bd. of Prison Terms, 461 F.3d 1123, 1128 (9th Cir. 2006) (citing Superintendent v. Hill, 472 U.S. 455, 457 (1985)).

10. Petitioner admits to the allegation set forth in Paragraph 10 of the Answer. Although only Supreme Court law is binding on the States, Ninth Circuit precedent remains relevant persuasive authority in determining whether a state court decision is objectively unreasonable. See Clark v. Murphy, 331 F.3d 1062, 1069 (9th Cir. 2003).

11. Petitioner asserts that he has a federally protected liberty interest in parole. See Sass v. Cal. Bd. of Prison Terms, 461 F.3d 1123, 1128 (9th Cir. 2006) Respondent's assertions and position in Paragraph 11 of the Answer have likewise been rejected by the Ninth Circuit, which held in Irons that a prisoner's due process rights are violated if the Board's decision is not supported by "some evidence" standard identified in thus clearly established federal law in the parole context for purposes of § 2254(d). See Sass, 461 F.3d 1128-1129.

12. Petitioner denied the allegations set forth in Paragraph 12 of the Answer. The purpose of parole is to "help individuals reintegrate into society as constructive individuals as soon as they are able, without being confined for the full term of the sentence imposed." (Morrissey v. Brewer (1972) 408 U.S. 471, 477.) The granting of parole is an essential part of our criminal justice system and is intended to assist those convicted of crime to integrate into society as a constructive individual as soon as possible and alleviate the cost

Petitioner's Traverse                         3.                    Sanders v. Ayers
                                                                    C07-06007 TEH (PR)

of maintaining them in custodial facilities. (Morrissey v. Brewer, supra, 408 U.S. at p. 477; People v. Vickers (1972) 8 Cal.3d 451, 455, 458.) Release on parole is said to be the rule, rather than the exception (In re Smith (2003) 114 Cal.App.4th 343, 351, citing Pen. Code, § 3041 subd. (a)) and the Board is required to set a release date unless it determines that " the gravity of the current convicted offense ... is such that consideration of the public safety requires a more lengthy period of incarceration ...." (Pen. Code, § 3041 subd. (b).)

13. Petitioner denies the allegation set forth in Paragraph 13 of the Answer.

14. Petitioner denies the allegations set forth in Paragraph 14 of the Answer.

15. Petitioner denies the assertion set forth in Paragraph 15 of the Answer. While a denial of parole by the Board in one case may appear reasonable when it cites standardized reasons for denying parole, when dozens of decisions are read in seriatim, it is apparent that the Board has an ultra vires policy of using the crime itself to deny parole to virtually every inmate serving a life-term for murder. Petitioner has a due process liberty interest in "not being denied parole for arbitrary or impermissible reasons" [Meachum v. Fano, 427 U.S. 215, 226 (1976)] or as a result or "flagrant or unauthorized action." [Monroe v. Thigpen, 932 F. 2d 1437, 1442 (11th Cir. 1991)] The Board fails to give individualized discretion to inmates serving life terms by invoking the crime itself to deny parole in virtually every case it considers. Petitioner is entitled to relief if the denial of the writ is (1) "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme

Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d). The San Bernardino County Superior Court's decision is the last reasoned decision to which § 2254 (d) applies. Federal habeas relief is proper under AEPDA.

16. Petitioner denies the allegation set forth in Paragraph 16 of the Answer. "...It is unreasonable and impermissible for the [Board] to base a decision to continue beyond the guidelines on the same factors that went into formulating the guidelines in the first place. No one disputes that this was a serious crime, but the factors of seriousness indicated by this record are included in the guidelines themselves. Thus, something more must be stated. The [Board] however, has failed to state any other basis that is supported by any evidence." Little v. Hadden, 504 F. Supp. 583, 564 (1980). In Santosky v. Kramer (1982) 455 U.S. 745, 767-769, 102 S. Ct. 1388, 71 L. Ed. 2d 599, the High Court explained: This Court has mandated an intermediate standard of proof-"clear and convincing evidence"-when the individual interest in a state proceeding are both "particularly important" and "more substantial than mere loss of money." "Addington v. Texas, 441 U.S., at 424, 99 S. ct., at 1808...the Court has deemed this level of certainty necessary to preserve fundamental fairness in a variety of government-initiated proceedings that threaten the individual involved with "a significant deprivation of liberty" or "stigma" [citations]...The extent to which procedural due process must be afforded the recipient is influenced by the extent to which he may be 'condemned to suffer

grievous loss'" Goldberg v. Kelly, 397 U.S. 254, 262-263, 90 S. Ct. 1011, 1017-18, 25 L. Ed. 2d 287 (1970), quoting Joint Anti-Fascist Refugee Committee v. McGrath, 341U.S. 123, 168, 71 S. Ct. 624, 646, 95 L. Ed. 817 (1951) (Frankfurter, J. concurring).

17. Petitioner denies the allegation set forth in Paragraph 17 of the Answer that the state courts decisions were not contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court. 28 U.S.C. § 2254(b).

18. Petitioner denies the allegation set forth in Paragraph 18 of the Answer. Petitioner asserts that he enjoys federal due process protections beyond the minimal protections due under Greenholtz. Petitioner asserts that numerous U.S. Supreme court cases require that a decision by a government official not be arbitrary or capricious. Moreover, the minimum standards for due process require more than compliance with the "some evidence" standard. See Edwards v. Balisok, 520 U.S. 641 (1997).

19. Petitioner denies the allegation set forth in Paragraph 19 of the Answer.

20. Petitioner claims that an evidentiary hearing is necessary because there are factual findings in dispute and the State's factual findings are not binding on federal habeas corpus. See Taylor v. Maddox, 366, F. 3d 992, 1001 (9th Cir. 2004). Petitioner has established a colorable claim for relief in citing the Board's arbitrary practice of characterizing virtually every crime as exceptional. Earp. v. Ornoski, 432 F. 3d 1158, 1167 (9th Cir. 2005)

21. Petitioner agrees with the assertion in Paragraph 21 that the Petition is not barred by the non-retroactivity doctrine, but admits that he is not sure what this means.

22. Except as expressly admitted above, Petitioner denies generally and specifically each and every allegation in the Answer, and specifically asserts that his administrative, statutory and constitutional rights have been violated.

23. Petitioner denies that he has failed to state or establish any grounds for habeas corpus relief.

24. Petitioner incorporates the allegations and arguments here.

For the reasons stated in his Petition and other filings in this case, and in the following memorandum of Points and Authorities, the Court should grant the Petition.

## MEMORANDUM OF POINTS AND AUTHORITIES

### ARGUMENT

### THE HABEAS PETITION SHOULD BE GRANTED BECAUSE THE STATE COURT DECISION WAS CONTRARY TO, OR AN UNREASONABLE APPLICATION OF, CLEARLY ESTABLISHED FEDERAL LAW, OR BASED ON AN UNREASONABLE DETERMINATION OF THE FACTS

#### A. PETITIONER HAS A FEDERALLY PROTECTED LIBERTY INTEREST IN PAROLE AND A RIGHT TO A PAROLE HEARING THAT COMPLIES WITH DUE PROCESS.

It is appropriate to look to lower Federal Court decisions to determine what law has been "clearly established" by the Supreme Court and the reasonableness of a particular application of the law. See Duhaime v. Ducharme, 200 F. 3d 597, 598 (9th Cir. 1999)

The Ninth Circuit has held that California's parole scheme creates a cognizable liberty interest in parole because Penal Code Section 3041 uses mandatory language and

is similar to the Nebraska and Montana statutes addressed in Greenholtz and Allen respectively. [Greenholtz v. Inmates of Nebraska Penal, 442 U.S. 1, 7 (1979) and Board of Pardons v. Allen, 482 U.S. 369, 371 (1987)] As the Ninth Circuit has explained: "Section 3041 of the California Penal Code creates in every inmate a cognizable liberty interest in parole which is protected by the procedural safeguards of the Due Process," and that interest arises "upon the incarceration of the inmate." Biggs v. Terhune, 334 F. 3d 910, 914-915 (9th Cir. 2003). See Sass v. California Board of Prison Terms (9th Cir 2006) 451 F. 3d 1123.

The Board may not make a decision that is "otherwise arbitrary." Irons v. Carey, 479 F. 3d 657, 662 (9th Cir. 2007), citing Sass, 461 F. 3d at 1128-29 and Superintendent v. Hill, 472 U.S. 445, 457 (1985). Parole suitability is "framed by the statutes and regulations governing parole suitability determinations in the relevant state." The Court must "look to California law to determine the findings that are necessary to determine whether the state court decision holding that these findings were supported by 'some evidence'...constituted an unreasonable application of the 'some evidence' principle articulated in Hill." Irons, Id. "Some evidence" that an inmate is currently dangerous must support a decision to find an inmate is unsuitable for parole in accordance with California statutes and regulations.

In In re Dannenberg (2007) 156 Cal. App. 4th 1387, Dannenberg "struck multiple blows to his wife's head with a pipe wrench. Bleeding profusely, she then 'fell or was pushed' into a bathtub full of water, where she drowned." (Id. at p. 1394.) The court acknowledged that second-degree murder demonstrated a callous disregard for human

suffering; yet, it concluded that the offense did not provide the requisite evidence that Dannenberg was presently dangerous. (Id. at p. 1398.)

The Court of Appeal found that "[n]o evidence in the record...supports a conclusion...that Dannenberg currently poses an unreasonable risk of danger to society if released." (In re Dannenberg, supra, 156 Cal. App. 4th at p.1391.)

This is also illustrated by Hayward v. Marshall (9th Cir. 2008) __ F. 3d __ [2008 WL 43716] In Hayward, the court ruled that the Governor's 2003 reversal of parole based on the gravity of the petitioner's 1978 second-degree murder violated due process. (2008 WL 43716 at *8.) Hayward demonstrated the Biggs warning that the parole authority's "continued indefinite reliance on an unchanging factor, such as the circumstances of the commitment offense, pre-conviction criminal history, or other past conduct," may ripen into a due process violation in the face of a longstanding showing of reform and rehabilitation. (2008 WL 43716 at *7.)

Similarly, when viewed fairly and in context, there is no evidence that supports a determination that petitioner's release would unreasonably endanger public safety.

### B. THE CALIFORNIA PAROLE SCHEME REQUIRES THAT PAROLE SHALL NORMALLY BE GRANTED

The California legislature has clearly expressed its intent that when murderers-who are the great majority of inmates serving indeterminate sentences-approach their minimum eligible parole date, the Board "shall normally set a parole release date." (Pen. Code Section 3041, subd. (a).)

Petitioner's Traverse        9.         Sanders v. Ayers
                                        C07-06007 TEH (PR)

The Board's authority to make an exception based on the gravity of a life term inmate's current or past offenses should not operate so as to swallow the rule that parole is "normally" to be granted."

In 2006, 4,657 parole hearings were conducted. Parole was granted to only 23 inmates. The Board of Parole Hearings combined with the governor rejected 99.5 per cent of lifer's applications for parole. [Source: California Department of Corrections and Rehabilitation; Governor's Office, as reported in San Francisco Chronicle]

Petitioner contends that as a matter of law and logic, a parole granting rate of one half of one per cent fails to comply with the mandate of Penal Code Section 3041 (a) which requires that parole is normally to be granted. Petitioner maintains that applying the exception of Section 3041 (b) to well over ninety percent of the applicants considered by the Board violates due process.

### C. THE "SOME EVIDENCE" STANDARD REQUIRES THAT THERE BE SOME EVIDENCE THAT IS PROBATIVE OF CURRENT DANGEROUSNESS. THE BOARD'S FINDINGS MUST BE SUPPORTED BY A PREPONDERANCE OF THE EVIDENCE

Parole unsuitability factors must be supported by a preponderance of the evidence. In re Rosenkrantz (2002), 29 Cal. 4th 616 at p. 670. The board failed to state that its findings were made in accordance with this burden of proof.

Court's reviewing the board's determinations have held that due process requires that "some evidence" support the board's determination and that the evidence relied upon must possess "some evidence of reliability." Caswell v. Calderon, 353 F. 3d 832, 839 (9th Cir. 2004). See Cass v. Woodford, 2006 WL 1304953 at *9 (S.D. Cal. 2006)

Petitioner's Traverse        10.        Sanders v. Ayers
C07-06007 TEH (PR)

It is not enough that there is some evidence to support the factors cited for denial of parole; that evidence must also rationally support the core determination required by the statute before parole can be denied, i.e. that a prisoner's release will unreasonably endanger public safety. In re Lee (2006) 143 Cal. App. 4th 1400, 1408.

Because the overarching consideration is public safety, the test in reviewing the Board's decision denying parole "is not whether some evidence supports the reasons [the board] cites for denying parole but whether some evidence indicates a parolee's release unreasonably endangers public safety." In re Barker (2007) 151 Cal. App. 4th 346, 366, italic omitted.)

The Federal "Some Evidence" standard as applied in Rosenkrantz v. Marshall (C.D. Cal. 2006) 444 F. Supp. 2d 1063 and Martin v. Marshall (N.D. Cal. 2006) 431 F. Supp. 2d 1038 finds that an aging commitment offense falls short of providing "some evidence" sufficient to justify a denial of parole. See also, Willis v. Kane (N.D. Cal. 2007) 485 F. Supp. 2d 1126.

Petitioner asserts that the "some evidence "standard is not appropriate at the fact finding level but only suitable for use by an appellate court in the context of reviewing lower court decisions. The Supreme Court explained in a plurality opinion that it has utilized the "some evidence" standard not as a standard of proof, but rather as a standard of review when examining an administrative record developed in an adversarial proceeding. Hamdi v. Rumsfield, 542 U.S. 5507, 124 S. Ct. 2633, 2651, 159 L. Ed. 2d 578 (2004), n. 8.

The state courts that adopted Hill's some evidence standard to review parole decision held that prisoners did **not** have a due process liberty interest in parole. In re

Powell 45 Cal. 3d 894, 911 (1988) Because the contrary is now established (McQuillion, 306 F. 3d at 902; Rosenkrantz, 29 Cal. 4th at 621; see Sass, 461 F. 3d at 1128), due process certainly demands a finding of something more than "some" (any) evidence in the record to secure a vested liberty interest protected by the Due Process Clause.

No other state whose parole statutes provide a protected liberty interest in parole, or any defined liberty interest allow it to be extinguished by the mere presence of any evidence whatsoever. In Carrillo v. Fabian, 701 N.W. 2d 763 (2005), the Minnesota Supreme Court recently and explicitly held that the some evidence standard of review of a prison disciplinary action established in Hill is inapplicable to the review of a correctional agency's decision affecting an inmate's parole date in a state whose statutes provide a protected liberty interest in parole.

The court held, based on the tripartite test prescribed by the Supreme Court, that the "substantial evidence" standard of review is requisite to provide adequate due process protection.

In Santosky v. Kramer (1982) 455 U.S. 745, 767-769, 102 S. Ct. 1388, 71 L. Ed. 2d 599, the High Court explained:

> This Court has mandated an intermediate standard of proof-"clear and convincing evidence"-when the individual interest in a state proceeding are both "particularly important" and "more substantial than mere loss of money." "Addington v. Texas, 441 U.S., at 424, 99 S. ct., at 1808...the Court has deemed this level of certainty necessary to preserve fundamental fairness in a variety of government-initiated proceedings that threaten the individual involved with "a significant deprivation of liberty" of "stigma" [citations]...The extent to which procedural due process must be afforded the recipient is influenced by the extent to which he may be 'condemned to suffer grievous loss'" Goldberg v. Kelly, 397 U.S. 254, 262-263, 90 S. Ct. 1011, 1017-18, 25 L. Ed. 2d 287 (1970), quoting Joint Anti-Fascist

>Refugee Committee v. McGrath, 341U.S. 123, 168, 71 S. Ct. 624, 646, 95 L. Ed. 817 (1951) (Frankfurter, J. concurring).

Santosky v. Kramer, 455 U.S. 745, at 756, 758 (1982)

This Court should apply the clear and convincing or substantial evidence standard to adjudicate petitioner's constitutional claims.

## D. THE BOARD'S RELIANCE ON THE COMMITMENT OFFENSE AND IMMUTABLE PRE-CONVICTION FACTORS TO DENY PAROLE VIOLATES PETITIONER'S DUE PROCESS RIGHTS

In Biggs v. Terhune (9th Cir. 2003) 334 F. 3d 910 the Ninth Circuit cautioned that continued reliance on the circumstances of the offense could result in a due process violation if the prisoner continually demonstrates exemplary behavior and evidence of rehabilitation.

The Board's decision to deny parole in this case relied on the commitment offense and petitioner's conduct prior to the commitment offense.
Petitioner is entitled to have his release date considered by a Board that is free from bias or prejudice. O'Bremski v. Maas, 915 F. 2d 418, 422 (9th Cir. 1990)

Petitioner was denied parole based on the gravity of the commitment crime, the circumstances of which can never change. Therefore, the Board's continued sole reliance on the commitment offense will essentially convert petitioner's sentence of life with the possibility of parole into a sentence of life without the possibility of parole. Petitioner has no chance of obtaining parole unless the Board holds that his crime was not serious enough to warrant a denial of parole. Irons v. Warden, (E.D. Cal. 2005) 358 F. Supp. 2d 936, 947.)

The Board cited the "gravity" of the commitment offense in denying parole. "[T]he measure of atrociousness is not general notions of common decency or social norms for by that yardstick all murders are atrocious." In re Lee (2006) 143 Cal. App. 4th 1400, 1401. Viewed under the appropriate guidelines, petitioner's crime does not qualify as unusually calculated, cruel or callous. He did not taunt the victim or gloat over his distress. See People v. Misa (2006) 140 Cal. App.4th 937. 842-843.

The California Court of Appeal in In re Elkins (2006) 144 Cal. App. 4th discussed the use of the gravity of the commitment offense to support a denial of parole:

> "Scott II summarizes the law in this situation. 'The Governor's assumption that a prisoner may be deemed unsuitable for release on the basis of the commitment offense 'alone' is correct [citation], but the proposition must be properly understood. The commitment offense is one of only two factors indicative of unsuitability a prisoner cannot change (the other being his 'Previous Record of Violence').
>
> Reliance on such an immutable factor 'without regard or consideration of subsequent circumstance' may be unfair [citation], and runs contrary to the rehabilitative goals espoused by the prison system and could result in a due process violation. [citation]
>
> The commitment offense can negate suitability only if circumstances of the crime reliably established by evidence in the record rationally indicate that the offender will present an unreasonable public safety risk if released from prison. Yet, the predictive value of the commitment offense may be very questionable after a long period of time. Thus, denial of release based solely on the basis of the gravity of the commitment offense warrants especially close scrutiny." (Scott II, supra, 133 Cal App. 4th at pp 594-595, fns. omitted.)

The Court of Appeal stated that "it violates due process to deny parole "where no circumstances of the offense reasonably could be considered more aggravated or violent than the minimum necessary to sustain a conviction for that offense." (Scott II, supra, 133 Cal. App 4th at p. 598)..."

The Court of Appeal in Elkins also observed: "We also take into account that whatever facts make a given offense aggravated or mitigated, compared to the hypothetical average are not overlooked or disregarded when the Board sets a release date…A release date is set by a calculation under matrixes Section 2403, subds. (b)-(f) that require the Board to weigh myriad facts of the offense that might be aggravating (Section 2404) or mitigating (Section 2405), including any factors that would have been considered by a judge in choosing a determinate sentence…Thus [the Board]…must remain focused not on circumstances that may be aggravating in the abstract but, rather, on facts indicating release currently poses "an unreasonable risk of danger to society." (Section 2402, subd. (a); accord, Pen. Code, Section 3041, subd. (b))."

The Board's reliance on Petitioner's commitment offense, which took place 20 years ago to deny parole, was unreasonable. A plethora of very recently issued California state and federal district court decisions uniformly holds that evidence of even particularly egregious facts of commitment offenses is not tantamount to evidence of undue current parole risk absent articulation of a nexus between those entities. Willis v. Kane, 485 F. Supp. 2d 1126, 1135 (N.D. Cal. 2007) ["Notwithstanding the terrible nature of the crime, the critical question the BPH was supposed to decide at the parole suitability hearing was whether 'consideration of the public safety requires a more lengthy period of incarceration for this individual'…Willis' 1983 crime did not provide sufficient evidence to find him unsuitable for parole in 2003."] Martin v. Marshall, 431 F. Supp. 2d 1038, 1049 (N.D. Cal. 2006);

Blankenship v. Kane, 2007 WL 1113798 at *10 (N.D. Cal. 2007) ["…the California regulations require…some evidence that the prisoner poses a present danger to

C07-06007 TEH (PR)

society…continued reliance over time on an unchanging factor…the commitment offense…does not provide evidence of a present danger to society"]; Thomas v. Brown, 2006 WL 3783535 at *6 (N.D. Cal. 2006) ]; Rosenkrantz v. Marhsall, 444 F. Supp 3d. 1963, 1086 (C.D. Cal. 2006)

### E. THE BOARD'S DETERMINATION THAT A CRIME IS PARTIUCLARY CRUEL OR EGREGIOUS IS MADE IN AN ARBITRARY AND UNCONSTITUTIONAL MANNER

The Board's determination that petitioner's crime was especially cruel or egregious is unconstitutionally vague and standardless. See United States v. Doremus (9th Cir. 1989) 888 F. 2d 630, 634. The Board relies on any fact of the crime to bolster its conclusion that the crime is particularly egregious. The Board makes a determination that virtually ALL life crimes are particularly egregious.

The board's characterization of petitioner's crime as exceptional was arbitrary since the Board and governor routinely and invariably characterizes all offenses carrying life terms as exceptional. Petitioner asks this Court to take judicial notice of the order in **MIKE NGO On Habeas Corpus Superior Court of Santa Clara, No. 127611, August 30, 2007** where the Honorable Linda Condron found comprehensive evidence indicating that the state's Board of parole hearings completely disregards the detailed standards and criteria of the parole release statute, 15 CCR Section 2402 (c) and thereby denies prisoners' due process rights. The Honorable Judge Condron found:

> "In summary, when every single inmate is denied parole because his or her crime qualifies as a Section 2402(c) (1) exception to the rule that a parole date shall normally be set, then the exception has clearly swallowed the rule and the rule is being illegally interpreted and applied.
> When every single life crime that the Board examines is "particularly egregious" and "especially heinous, atrocious or cruel" it is obvious that the Board is operating without any limits and with unfettered discretion.
> "Based on the arbitrary characterization of every murder as being

>exceptional, the Board's decision denying parole for petitioner is per se invalid because he was denied his constitutional right to be heard by an impartial decision-maker. See Withrow v. Larkin, 421 U.S. 35, 47, 95 S. Ct. 1456, 43 L. Ed. 2d 712 (1975) ("Not only is a biased decision maker constitutionally unacceptable but "our system of law has always endeavored to prevent even the probability of unfairness.")

When an inmate is found suitable for parole, the Board does not deem the crime as particularly egregious. However, the governor when reviewing the Board's determination may disagree and consider the crime as particularly egregious and deny parole. At a subsequent hearing the Board may again classify the crime as particularly egregious.

The change in classification of the very same crime from being non-exceptional to particularly egregious demonstrates the arbitrariness of the classification process itself.

The Board's use of uncharged and unproven elements of his crime to continue denying parole violates petitioner's constitutional right to a jury trial. See Aprendi v. New Jersey, 530 U.S. 466, 490.

## G. CONTINUED RELIANCE ON THE COMMITMENT OFFENSE HAS DISTORTED THE BOARD'S DISCRETION

While a denial of parole by the Board in one case may appear reasonable when it cites standardized reasons for denying parole, when dozens of decisions are read in seriatim, it is apparent that the Board has an ultra vires policy of using the crime itself to deny parole to virtually every inmate serving a life-term for murder. Petitioner has a due process liberty interest in "not being denied parole for arbitrary or impermissible reasons" [Meachum v. Fano, 427 U.S. 215, 226 (19760] or as a result or "flagrant or unauthorized action." [Monroe v. Thigpen, 932 F. 2d 1437, 1442 (11th Cir. 1991)] The Board fails to give individualized discretion to inmates serving life terms by invoking the crime itself to deny parole in virtually every case it considers.

Petitioner's Traverse        17.        Sanders v. Ayers
                                        C07-06007 TEH (PR)

The commitment offense no longer supplies any evidence that petitioner posed a danger to public safety. The board failed to articulate a nexus between the commitment offense and a finding that petitioner still posed a danger to public safety.

Petitioner's commitment offense was not particularly egregious because there was no more than the minimum elements present necessary to convict petitioner of first-degree murder. Had the District Attorney believed that this case was "especially heinous, cruel, or atrocious," to preclude parole, he could have elected to charge Petitioner of the Special Circumstance and allow the jury to decide if this element is true. (Cal. Penal Code§ 190.2 sub.d (14) and § 190.4.) Instead, Petitioner was allowed to enter a plea to second-degree murder.

The Board's denial of parole suitability based upon the gravity of the commitment offense failed to consider that petitioner has reached the maximum eligible parole date for a first degree murder and failed to analyze the crime in light of that fact. The respondent's position that petitioner who was convicted of second -degree murder may forever be denied parole based on some modicum of evidence that the crime rose to the level of a first degree murder with special circumstances, without acknowledging the fact that petitioner has already served the time for the most heinous first-degree described in the Board's own guidelines that do not preclude parole, should be seen as so ridiculous that simply to state it is to refute it. In re Weider (2006) 145 Ca. App. 4th, 570, 582-583. The Board should have weighed petitioner's crime against instances of first-degree murder with special circumstances in assessing the applicability of any Section 2402(c)(1) criteria.

Petitioner's Traverse                                                          Sanders v. Ayers
                                                                               C07-06007 TEH (PR)

## CONCLUSION

The Board failed to articulate what it is about petitioner's crime that outweighs all the statutorily mandated parole release standards. The Board systematically uses the fact of a murder conviction, without more, to keep prisoners locked up for the rest of their lives. The role of the parole board is not to resentence the prisoner according to the personal opinions of its members as to the appropriate penalty for murder, but to determine whether as of this moment, given the statutory factors, he should be released.

The Board stated no justifiable reasons for denying parole. "The evidence must substantiate the ultimate conclusion that the prisoner's release currently poses an unreasonable risk of danger to the public. It violates a prisoner's right to due process when the Board or Governor attaches significance to evidence that forewarns no danger to the public or relies on an unsupported conclusion." In re Tripp (2007) 150 Cal. App. 4th 306, 313

DATED: 5/28/08

Respectfully submitted;

*Gregory L Sanders*
Gregory Sanders
Petitioner in Pro Se

# DECLARATION OF SERVICE BY MAIL

I, __Hector Oropeza__, the undersigned, declare:
　　　Printed Name of Declarant

I am over the age of 18 years, a citizen of the United States of America, and am not a party to the cause within. My residence address is:

　　　CDC No. __H-24646__   Housing __4N-924P__
　　　San Quentin State Prison
　　　San Quentin, CA 94974

On __May 28__, __2008__, I served the following document(s):
　　Month/Day　　Year

__TRAVERSE TO THE ANSWER TO PETITION FOR WRIT OF HABEAS CORPUS; MEMORANDUM OF POINTS AND AUTHORITIES__

on the parties and at the addresses described below by placing the pleadings in a sealed envelope, with postage fully prepaid, and presented said item(s) to Corrections Department staff for mailing in the United States Mail as per the rules and regulations governing outgoing legal mail at San Quentin State Prison.

__EDMUND G. BROWN JR.__
__ATTORNEY GENERAL OF CALIFORNIA__
__AMANDA J. MURRAY__
__DEPUTY ATTORNEY GENERAL__
__455 GOLDEN GATE AVENUE, SUITE 11000__
__SAN FRANCISCO, CA 94102-7004__

I swear under penalty of perjury that the foregoing is true of my own personal knowledge. Executed on this __28th__ day of __May__, __2008__, at San Quentin, CA, County of Marin.

　　　　　　　　　　　　　　　　　　　　　_____
　　　　　　　　　　　　　　　　　　　　　　　　Signature of declarant