IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

GREGORY SANDERS,                             No. C-07-6007 TEH (PR)

        Petitioner,

    v.                                         ORDER DENYING PETITION FOR WRIT
                                             OF HABEAS CORPUS
ROBERT AYERS, Warden

        Respondent.
_____/

        Petitioner Gregory Sanders, a state prisoner incarcerated at San Quentin State Prison, seeks a writ of habeas corpus under 28 U.S.C. section 2254 challenging the California Board of Parole Hearings' ("BPH") September 21, 2006 decision to deny him parole, which, for the reasons that follow, the Court denies.

I

        At the time of the offense, Petitioner was separated from his estranged wife, who, along with her boyfriend, were staying with her mother at her mother's mobile home in San Bernardino County. Doc. #5-6 at 2. Petitioner also was staying at the mobile home with

his four year old son.  Id; Doc. #5-5 at 17.

On February 1, 1988, Petitioner and his son left the mobile home.  Doc. #5 at 2; Doc. #5-5 at 17, 57; Doc. #5-6 at 2.  Prior to their return, Petitioner noticed a "great big huge handprint" on his son's arm.  Doc. #5-5 at 18.  When Petitioner asked his son what had happened, he explained that his mother's boyfriend "had hurt him."  Id; see also id. at 79.

Petitioner became angry and when he returned to the mobile home, he went directly to the bedroom shared by his estranged wife and her boyfriend and shot both of them.  Doc. #5-5 at 79; Doc. #5-6 at 2.  When the mother of Petitioner's estranged wife heard the gunshots, she went to the bedroom and witnessed Petitioner shoot the boyfriend a second time and then shoot her daughter.  Petitioner fled the scene and was arrested later by the San Bernardino County Sheriff's helicopter crew.  The boyfriend died at the scene; Petitioner's estranged wife survived.  Doc. #5-6 at 2.

On November 9, 1988, Petitioner was sentenced to 16 years to life in state prison following his guilty plea to second degree murder with a special allegation that he was armed with a deadly weapon during the commission of the murder.  Doc. #5-2 at 2-4.  His minimum eligible parole date was October 1, 1998.  Doc. #5-5 at 4.

On September 21, 2006, Petitioner appeared before BPH for his sixth parole suitability hearing.  Doc. #5-5 at 2.  At that hearing, BPH found Petitioner "was not yet suitable for parole and . . . would pose an unreasonable risk of danger to society or a threat to public safety if released from prison."  Id. at 76.  BPH

2

cited several reasons to support its decision, including: (1) Petitioner's unrealistic parole plan; (2) the "specially cruel and callous" nature of the commitment offense, characterized as "an execution style murder" that "demonstrate[d] [an] exceptionally callous disregard for human suffering;" (3) a "very, very trivial" motive for the crime; and (4) that multiple victims were attacked. Id. at 76-78. Petitioner's parole was deferred for two years. Id. at 78.

Petitioner unsuccessfully challenged BPH's decision in the state superior and appellate courts. Doc. #5-7 at 2-5; Doc. #5-9 at 37. On October 24, 2007, the California Supreme Court summarily denied Petitioner's Petition for Review. Doc. #5-9 at 2. This federal Petition for a Writ of Habeas Corpus followed. Doc. #1.

Per order filed on March 27, 2008, the Court found Petitioner's claim that BPH violated his due process rights, when liberally construed, colorable under section 2254, and ordered Respondent to show cause why a writ of habeas corpus should not be granted. Doc. #4. Respondent has filed an Answer and Petitioner has filed a Traverse. Doc. ## 5 & 6.

II

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), codified under 28 U.S.C. section 2254, provides "the exclusive vehicle for a habeas petition by a state prisoner in custody pursuant to a state court judgment, even when the petitioner is not challenging his underlying state court conviction." White v.

3

1  <u>Lambert</u>, 370 F.3d 1002, 1009-10 (9th Cir. 2004).  Under AEDPA, this
2  Court may entertain a petition for habeas relief on behalf of a
3  California state inmate "only on the ground that he is in custody in
4  violation of the Constitution or laws or treaties of the United
5  States."  28 U.S.C. § 2254(a).

6       The writ may not be granted unless the state court's
7  adjudication of any claim on the merits:  "(1) resulted in a
8  decision that was contrary to, or involved an unreasonable
9  application of, clearly established Federal law, as determined by
10 the Supreme Court of the United States; or (2) resulted in a
11 decision that was based on an unreasonable determination of the
12 facts in light of the evidence presented in the State court
13 proceeding."  28 U.S.C. § 2254(d).  Under this deferential standard,
14 federal habeas relief will not be granted "simply because [this]
15 court concludes in its independent judgment that the relevant
16 state-court decision applied clearly established federal law
17 erroneously or incorrectly.  Rather, that application must also be
18 unreasonable."  <u>Williams v. Taylor</u>, 529 U.S. 362, 411 (2000).

19      While circuit law may provide persuasive authority in
20 determining whether the state court made an unreasonable application
21 of Supreme Court precedent, the only definitive source of clearly
22 established federal law under 28 U.S.C. section 2254(d) rests in the
23 holdings (as opposed to the dicta) of the Supreme Court as of the
24 time of the state court decision.  <u>Williams</u>, 529 U.S. at 412; <u>Clark
25 v. Murphy</u>, 331 F.3d 1062, 1069 (9th Cir. 2003).

4

**III**

Petitioner seeks federal habeas corpus relief from BPH's September 21, 2006 decision finding him unsuitable for parole and denying him a subsequent hearing for two years on the ground that the decision does not comport with due process.

**A**

Under California law, prisoners like Petitioner who are serving indeterminate life sentences for noncapital murders, i.e., those murders not punishable by death or life without the possibility of parole, become eligible for parole after serving minimum terms of confinement required by statute. In re Dannenberg, 34 Cal. 4th 1061, 1077-78 (2005). At that point, California's parole scheme provides that BPH "shall set a release date unless it determines that the gravity of the current convicted offense or offenses, or the timing and gravity of current or past convicted offense or offenses, is such that consideration of the public safety requires a more lengthy period of incarceration." Cal. Penal Code § 3041(b). Regardless of the length of the time served, "a life prisoner shall be found unsuitable for and denied parole if in the judgment of the panel the prisoner will pose an unreasonable risk of danger to society if released from prison." Cal. Code Regs. tit. 15, § 2402(a). In making this determination, BPH must consider various factors, including the prisoner's social history, past criminal history, and base and other commitment offense, including behavior before, during and after the crime. See Id. § 2402(b)-(d).

California's parole scheme "gives rise to a cognizable liberty interest in release on parole" that cannot be denied without adequate procedural due process protections." <u>Sass v. California Bd. of Prison Terms</u>, 461 F.3d 1123, 1128 (9th Cir. 2006); <u>McQuillion v. Duncan</u>, 306 F.3d 895, 902 (9th Cir. 2002). It matters not that a parole release date has not been set for the inmate because "[t]he liberty interest is created, not upon the grant of a parole date, but upon the incarceration of the inmate." <u>Biggs v. Terhune</u>, 334, F.3d 910, 915 (9th Cir. 2003).

Petitioner's due process rights require that "some evidence" support BPH's decision finding him unsuitable for parole. <u>Sass</u>, 461 F.3d at 1125. This "some evidence" standard is deferential, but ensures that "the record is not so devoid of evidence that the findings of [the board] were without support or otherwise arbitrary." <u>Superintendent v. Hill</u>, 472 U.S. 445, 457 (1985). Determining whether this requirement is satisfied "does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence." Id. at 455. Rather, "the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." Id. at 455-56.

Due process also requires that the evidence underlying BPH's decision have some indicium of reliability. <u>Biggs</u>, 334 F.3d at 915; <u>McQuillion</u>, 306 F.3d at 904. Relevant to this inquiry is whether the prisoner was afforded an opportunity to appear before, and present evidence to, BPH. See <u>Pedro v. Oregon Parole Bd.</u>, 825

6

F.2d 1396, 1399 (9th Cir. 1987).  If BPH's determination of parole unsuitability is to satisfy due process, there must be some reliable evidence to support the decision.  <u>Rosas v. Nielsen</u>, 428 F.3d 1229, 1232 (9th Cir. 2005).

### B

Petitioner claims that BPH's finding that he was unsuitable for parole violated his due process rights because:  (1) BPH's decision was not supported by some evidence, see Doc. #1 at 1-8 (Contention I), 13-20 (Contention III) & 21-23 (Contention IV); (2) BPH considered impermissible evidence in its decision; and (3) BPH's continuous denials of parole violate the terms of Petitioner's plea agreement.  Each of Petitioner's claims is analyzed below.

### 1

Petitioner claims BPH's finding that he was unsuitable for parole violated his due process rights because the decision was not supported by some evidence.  Specifically, in Contention I, Petitioner claims BPH's finding that he was unsuitable for parole violated his due process rights because "there is no . . . evidence to support the board's decision that Petitioner <u>currently</u> poses an unreasonable threat to public safety if released from prison."  Doc. #1 at 1, emphasis in original; see id. at 1-8.  In Contention III, Petitioner disputes the sufficiency of the evidence finding him unsuitable, rather than suitable, for parole, going through each of the specific factors set forth in California Code of Regulations,

7

Title 15, § 2402(b)-(d). Doc. #1 at 13-20. And in Contention IV, Petitioner claims the decision to deny him parole was not based on sufficient evidence, but rather was the result of a biased decision maker who predetermined his fate. Doc. #1 at 21-23.

As an initial matter, the Court notes that the record shows BPH afforded Petitioner and his counsel an opportunity to speak and present Petitioner's case at the hearing, gave them time to review documents relevant to Petitioner's case and provided them with a reasoned decision in denying parole. Doc #5-5 at 8-11, 14 & 76-89.

The record also shows that BPH relied on several circumstances tending to show unsuitability for parole and that these circumstances formed the basis for its conclusion that Petitioner posed "an unreasonable risk of danger to society or a threat to public safety if released from prison." Doc #5-5 at 76; see Cal. Code Regs. tit. 15, § 2402(a) (stating that a prisoner determined to be an unreasonable risk to society shall be denied parole).

First, BPH told Petitioner that he had "one of the more unrealistic set of parole plans," which referred to Petitioner's plan "to retire and go fishing and live off the generosity of [his] children for the rest of [his] life." Doc. #5-5 at 76-77; see also id. at 42-45, 58-60 & 84. During the hearing, when asked if he "perchance considered working" Petitioner responded, "[o]nly as a hobby." Id. at 45.

Second, BPH examined the commitment offense and found that

8

the offense:

> . . . was carried out in a specially cruel and callous manner. . . . Multiple victims were attacked. These were people that semi-trusted you, an estranged wife, her boyfriend, you'd been invited into the home. The offense was carried out in an execution style murder. You had a loaded gun. You walked into a room with the intent of killing somebody. You almost hit or injured a third person, a lady who cared for you, the mother. The offense was carried out in a manner which demonstrate[s] exceptionally callous disregard for human suffering and your motive for the crime was trivial, very, very trivial.

Doc. #5-5 at 77-78; see also id. at 86-87; see Cal Code Regs tit 15, § 2402(c)(1)(D) (listing "exceptionally callous disregard for human suffering" as factor tending to show unsuitability for parole).

Third, BPH noted that Petitioner had been in prison for 18 years and had "not yet developed a vocation." Doc. #5-5 at 80. Fourth and somewhat related, BPH expressed concern over Petitioner's "lack of specifically designed self-help programs for dealing with [his] issues with women," an apparent reference to Petitioner's domestic violence history. Id. at 81; see also id. at 87 & 52 (BPH noted that Petitioner "seem[s] to find [his] way to very hostile and aggressive and potentially murderous relationships with women[]" and "[found] it more than a coincidence that [Petitioner has been] married to three different women and all three of them . . . made some attempt at injuring . . . or killing [him]").

Fifth, BPH cited the psychological evaluation prepared in anticipation of Petitioner's parole suitability hearing, which noted Petitioner

9

> . . . <u>would</u> present a low risk of future violence . . . if he were able to have his psychological needs met. In an environment where he would have checks on his tendency to form intense volatile relationships he would be expected to do so well. His maladaptive personality traits contribute to his repeated selection of partners who are emotionally unstable, untrustworthy or exploitive. Until [Petitioner] understands himself better he is at risk of becoming involved with persons who will evoke maladaptive behaviors and/or emotional instability.

Doc. #5-5 at 83, emphasis added.

BPH also considered other factors tending to support suitability for parole including: (1) Petitioner's lack of significant history of violent crime; (2) that Petitioner received at least 24 educational units through Patten University; (3) that Petitioner was a member of Vietnam Veterans of America; (4) that he had been working through the Prison Industry Authority, currently as a sergeant's clerk at the infirmary; and (5) that Petitioner had received no Rules Violation Reports under California Department of Corrections and Rehabilitation ("CDCR") Form 115(A), and received only one Custodial Counseling Chrono pursuant to CDCR Form 128-A in March 1991. See Cal. Code Regs. tit. 15, § 3312(a)(2)-(3). Doc. #5-5 at 79-80 & 86.

At the conclusion of the hearing, BPH cited specific areas in which Petitioner could improve:

> . . . And one [area] is a vocation. You need to develop something that will support yourself. You need to be able to do that. You know, you're 54 going on 55 and you're not going to get Social Security till you're 62 . . . Don't put all your eggs in one basket. You need to work on some insight issues. Also, . . . you're a little bit flip. You're affect is off and

10

> . . . you're defensive and avoidant in some arenas. . . . We talked about you need to deal with issues of volatile relationships and improve your parole plans, develop a vocation and do some more self-help, book reports for example, with regards to your relationships with women.

Doc. #5-5 at 88.

The state superior court affirmed the decision of BPH to deny Petitioner parole, finding that it was supported by "more than 'some evidence.'" Doc #5-7 at 5. Indeed, in addressing this claim, the superior court stated:

> The board found that the Petitioner was not yet ready for parole as he would pose an unreasonable risk to society. The board found that the Petitioner's parole plans were unrealistic in that he intended to retire and go fishing and live off his children. The board recommended that he develop some realistic parole plans and demonstrate that he would be able to support himself. The board further found that the offense was carried out in a cruel and callous manner and in this the court agrees. The court further agrees with the board in its classification of the killing as being an execution style murder.
>
> The board viewed the Petitioner's prison conduct and commended him for not receiving any CDC 115's and having received only one CDC 128 in March of 1991. The board was concerned that the Petitioner had been in prison for 18 years and had not developed any type of vocation. The board recommended that the Petitioner develop some skills. The board considered the psychological report . . . dated in March of 2006 and commented on the Petitioner's poor performance on his GAF [Global Assessment Functioning] test.
>
> [It] was obvious from a reading from the proceedings in the board's decision that the Petitioner did not make a good impression with the board and that the board considered his attitude to be somewhat flippant.

> This court finds that there was more than "some evidence" to justify the finding of unsuitability of Petitioner for parole and a two year denial on that finding.

Doc. #5-7 at 4-5.  The state appellate court summarily denied Petitioner's request for habeas corpus relief, Doc. #5-9 at 37, and the state supreme court summarily denied his Petition for Review.  Doc. #5-9 at 2.

On this record, the court finds that the state courts' rejection of Petitioner's due process claim that BPH's decision was not supported by "some evidence" was not contrary to, nor did it involve an unreasonable application of, clearly established federal law, and it was not based on an unreasonable determination of the facts.  See 28 U.S.C. § 2254(d); Williams, 529 U.S. at 409.

The record shows that BPH had some reliable evidence to support its finding of unsuitability.  BPH observed that Petitioner had unrealistic parole plans, failed to develop a vocation, failed to participate sufficiently in self-help programs addressing his domestic violence issues, and did not receive a psychological evaluation supportive of his parole.  Based on these failures, especially when viewed in conjunction with the nature of the commitment offense, this Court cannot say that BPH's finding that Petitioner was unsuitable for parole was "without support or otherwise arbitrary."  See Hill, 472 U.S. at 457.  On this record, BPH reasonably concluded that Petitioner was not yet suitable for parole.  See, e.g., Rosas, 428 F.3d at 1232-33 (upholding denial of parole based on gravity of offense and the petitioner's psychiatric

**12**

1  reports documenting his failure to complete programming while in
2  prison); <u>Biggs</u>, 334 F.3d at 916 (upholding denial of parole based on
3  gravity of offense and the petitioner's conduct prior to
4  imprisonment); <u>Morales v. California Dep't. of Corrections</u>, 16 F.3d
5  1001, 1005 (9th Cir. 1994), rev'd on other grounds, 514 U.S. 499
6  (1995) (upholding denial of parole based on the cruel nature of
7  offense, the petitioner's unstable and criminal history, and his
8  need for further psychiatric treatment).  It is not up to this
9  Court, as Petitioner urges in Contention III, see Doc. #1 at 13-20,
10 to "reweigh the evidence."  <u>Powell v. Gomez</u>, 33 F.3d 39, 42 (9th
11 Cir. 1994).

12         Petitioner in Contention IV attacks BPH's decision finding
13 him unsuitable for parole on the ground the decision was not based
14 on sufficient evidence, but rather was the result of a biased
15 decision maker who predetermined his fate.  Doc. #1 at 21-23.  In
16 support of this claim, Petitioner cites a comment made by one of the
17 BPH panel members, claiming she "chose to make the parole
18 consideration hearing personal, . . . when she stated:  'Also, you
19 know, your presentation today kind of got under my skin a little
20 bit.  Your [sic] a little bit flip.'"  Id. at 21.  Petitioner claims
21 this panel member "took it so personal, she even made an
22 unprofessional opinion when stating that Petitioner was a little bit
23 flip."  Id.  According to Petitioner, the result of his parole
24 suitability hearing "was predetermined as a result of [the panel
25 member's] admittance that she felt effected [sic] by Petitioner and
26 Petitioner's parole plans to possibly stay with and mooch from his

13

1   children until he got on his feet." Id. at 23.

2       Due process requires that a parole board charged with
3   determining whether or not a particular prisoner is suitable for
4   parole be "neutral and detached." <u>Morrissey v. Brewer</u>, 408 U.S.
5   471, 488-89; see also <u>O'Bremski v. Maass</u>, 915 F.2d 418, 422 (9th
6   Cir. 1990) (to satisfy due process, a prisoner "is entitled to have
7   his release date considered by a parole board that [is] free from
8   bias or prejudice").

9       Here, although the panel member's observation was an
10  honest, albeit perhaps a less than artful one, the Court disagrees
11  with Petitioner's claim that it demonstrates bias. Assuming for the
12  sake of argument, however, that the comment did demonstrate bias,
13  there is no evidence in the record indicating that this alleged bias
14  affected BPH's decision or served as the basis for finding
15  Petitioner unsuitable for parole. On the contrary, the transcript
16  from Petitioner's September 21, 2006 parole hearing demonstrates
17  that he received an individualized assessment of his potential
18  parole suitability. Doc #5-5 at 76-89. Further, as demonstrated
19  above, there was ample reliable evidence to support BPH's decision
20  to deny petitioner parole.

21      Under these circumstances, the state courts' rejections of
22  Petitioner's claim cannot be said to have been objectively
23  unreasonable. See 28 U.S.C. § 2254(d); <u>Williams</u>, 529 U.S. at 409.

**2**

26      Petitioner next claims that BPH considered impermissible

evidence at his parole suitability hearing in violation of his right to due process. According to Petitioner, it was improper for BPH to find that the commitment offense was "especially cruel," because that is an element of first degree murder, and he "was not convicted of having committed the commitment offense in a[n] 'especially cruel' manner." Doc. #1 at 9. Relying on <u>Cunningham v. California</u>, 549 U.S. 270 (2007), Petitioner claims that his minimum term of imprisonment was 16 years, and that "[i]n order for Petitioner's term to be set at life without the possibility of parole, the elements used to determine that finding must be found true by a jury." Id. at 11; see id. at 9-13.

In <u>Cunningham</u>, the United States Supreme Court held that California's Determinate Sentencing Law, which authorized a judge, rather than a jury, to find facts that exposed a defendant to an elevated upper term sentence, violated a defendant's Sixth Amendment right to a trial by jury. <u>Cunningham</u>, 549 U.S. at 293. <u>Cunningham</u> is the progeny of an earlier Supreme Court case, <u>Apprendi v. New Jersey</u>, 530 U.S. 466 (2000). In <u>Apprendi</u>, the Supreme Court held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." <u>Id.</u> at 490. The "statutory maximum" discussed in <u>Apprendi</u> is the maximum sentence a judge could impose based solely on the facts reflected in the jury verdict or admitted by the defendant; in other words, the relevant "statutory maximum" is not the sentence the judge could impose after finding additional facts, but rather

1 the maximum he could impose without any additional findings.
2 Blakely v. Washington, 542 U.S. 296, 303-04 (2004).

3      Cunningham involved a violation of a defendant's Sixth
4 Amendment right to a trial by jury with respect to sentencing under
5 the Determinate Sentencing Law, and did not address a petitioner's
6 rights at a parole suitability hearing, which is what Petitioner is
7 challenging.  Petitioner was not sentenced under California's
8 Determinate Sentencing Law; rather, he was sentenced to an
9 indeterminate life sentence following his guilty plea to second
10 degree murder with a special allegation that he was armed with a
11 deadly weapon during the commission of the murder.  Doc. #5-2 at 2-
12 4.  Given the inapplicability of Cunningham to Petitioner's
13 situation, the state courts' rejections of Petitioner's claim cannot
14 be said to have been objectively unreasonable.  See 28 U.S.C. §
15 2254(d); Williams, 529 U.S. at 409.

17                              3

18      Petitioner's final claim is that his continued
19 incarceration violates the terms of his plea agreement in that he is
20 being deprived of enforcement of the October 1, 1998 minimum
21 eligible parole date he bargained for when he entered a guilty plea
22 to the charged offense.  Doc. #1 at 23-28.  In addressing this
23 claim, the state superior court wrote:  "[a] review of the [plea]
24 agreement reveals that there was no specific term agreeing to the
25 consideration of a finding of suitability for parole at any
26 particular time in the future."  Doc. #5-7 at 3.

**16**

1  "[W]hen a plea rests in any significant degree on a
2 promise or agreement of the prosecutor, so that it can be said to be
3 a part of the inducement or consideration, such promise must be
4 fulfilled." Santobello v. New York, 404 U.S. 257, 262 (1971).  A
5 plea agreement containing a specific promise, such as when the
6 defendant will be paroled, is enforceable.  See Brown v. Poole, 337
7 F.3d 1155, 1161 (9th Cir. 2003) (that state prosecutor had no right
8 to offer deal defendant accepted in exchange for waiving her
9 constitutional rights may be a problem for state, but not
10 defendant).  But it is Petitioner who bears the burden of proving
11 any alleged promise made by the prosecution.  See Santobello, 404
12 U.S. at 261-62.  Petitioner makes no such showing.

13  Rather, the record shows that although Petitioner's
14 minimum sentence was 16 years, he potentially could serve the
15 maximum of life in prison.  Doc. #5-2 at 2-4.  Nothing in the record
16 indicates that Petitioner is entitled to release at any time prior
17 to a finding by BPH that he is suitable for parole.  Petitioner's
18 observation that "[a]t the time [he] agreed to waive his rights [and
19 plead guilty], the finding of suitability for parole was not as
20 stringent as it is today," Doc. #1 at 28, is of no import.  Cf.
21 Evenstad v. United States, 978 F.2d 1154, 1158-5 (9th Cir. 1992)
22 (change in the law regarding parole eligibility does not render an
23 earlier guilty plea involuntary).

24  Under these circumstances, the state courts' rejection of
25 Petitioner's breach of plea agreement claim cannot be said to be
26 objectively unreasonable.  See 28 U.S.C. § 2254(d); Williams, 529

U.S. at 409.

## IV

For the reasons set forth above, the Petition for a Writ of Habeas Corpus is DENIED.

The Clerk shall terminate any pending motions as moot, enter judgment in favor of Respondent and close the file.

IT IS SO ORDERED.

DATED  06/09/09

THELTON E. HENDERSON
United States District Judge

G:\PRO-SE\TEH\HC.07\Sanders-07-6007-bph denial.wpd